## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| HUDSON 1701/1706, LLC, *et al.*,[1] | Case No. 25-11853 (KBO) |
| Debtors. | (Jointly Administered) |
| FIRST AMERICAN TITLE INSURANCE COMPANY, solely as Escrow Agent and not in its individual capacity, | |
| Plaintiff, | Adv. No. 25-52468-KBO |
| v. | |
| HUDSON 1701/1706, LLC, HUDSON 1702, LLC, ALBERTO SMEKE SABA, SALOMON SMEKE SABA, CSC HUDSON LLC, and PARKVIEW FINANCIAL REIT, LP, | **Hearing Date: January 13, 2026 at 1:00 p.m.** **Obj. Deadline: January 6, 2026 at 4:00 p.m.** |
| Defendants. | **RE: A.D.I. 12** |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO AUTHORIZE DEPOSIT OF INTERPLEADER FUNDS INTO THE REGISTRY OF THE COURT AND TO DISCHARGE PLAINTIFF FROM THE INTERPLEADER ACTION

---

[1] Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Hudson 1701/1706, LLC (0281) and Hudson 1702, LLC (0190).

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 1

II.   BACKGROUND ............................................................................................................ 1

      A.    The Settlement Agreement and the Parties ............................................................. 1

      B.    The Escrow Agreement ........................................................................................... 2

      C.    Commencement of the Chapter 11 Cases and Purported Claim Notice .................... 4

      D.    First American's Response to the Conflicting Demands ........................................... 5

      E.    Competing Dispute Notices from Lender and Guarantors ........................................ 6

      F.    Uncertainty as to First American's Obligations Under the Escrow Agreement ......... 8

      G.    Commencement of the Interpleader Action .............................................................. 9

III.  LEGAL STANDARDS ................................................................................................... 9

IV.   ARGUMENT ................................................................................................................. 10

      A.    The Court has Subject Matter Jurisdiction over this Interpleader Action ................ 11

      B.    The Remaining Threshold Requirements for an Interpleader Action are Met ......... 14

      C.    First American is Entitled to Deduct its Fees and Expenses ................................... 16

V.    CONCLUSION .............................................................................................................. 17

# TABLE OF AUTHORITIES

**CASES**

*CNA Ins. Co. v. Waters*, 926 F.2d 247 (3d Cir. 1991) ..............................................13, 14

*Com. Union Ins. Co. v. U.S.*, 999 F.2d 581 (D.C. Cir. 1993) ..........................................11

*Domus, Inc. v. Davis-Giovinazzo Const. Co.*, No. CIV.A. 10-1654, 2010 WL 328298 (E.D. Pa. Aug. 19, 2010) .............................................................................................................13

*In re Kwok*, 663 B.R. 386 (Bankr. D. Conn. 2023) .............................................. 10, 16

*JPMorgan Chase Bank, N.A. v. Neu*, No. CV 17-3475, 2017 WL 2290142 (D.N.J. May 24, 2017) ...........................................................................................................................11, 16

*Lexington Ins. Co. v. Jacobs Indus. Maint. Co.*, LLC, 435 F. App'x 144 (3d Cir. 2011)..............14

*Metro Life Ins. Co. v. Price*, 501 F.3d 271 (3d Cir. 2007)..........................................10, 11

*Metro. Life Ins. Co. v. Kubichek*, 83 F. App'x 425 (3d Cir. 2003)................................16

*Midland Nat'l Life Ins. Co. v. Rivas*, 318 F.R.D. 303 (E.D. Pa. 2016) .........................15

*NYLife Distribs., Inc. v. Adherence Group, Inc.*, 72 F.3d 371 (3d Cir. 1995)................11

*Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258 (3d Cir. 2009) ....................10, 14, 16

*State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967)....13

*Stonebridge Life Ins. Co. v. Kissinger*, 89 F. Supp. 3d 622 (D.N.J. 2015)....................17

*Sun Life Assur. Co. of Canada v. Diaz*, No. 3:14-CV-01685-VAB, 2015 WL 1826088 (D. Conn. Apr. 22, 2015)...................................................................................................10, 16

*The Prudential Ins. Co. of Am. v. Payne*, No. 20-CV-03683(JS)(JMW), 2021 WL 3023236 (E.D.N.Y. July 16, 2021) ..........................................................................................10, 16

*Travelers Ins. Co. v. Johnson*, 579 F. Supp. 1457 (D.N.J. 1984) ..................................14

*U.S. Fire Ins. Co. v. Asbestospray, Inc.*, 182 F.3d 201 (3d Cir. 1999).........................13

*U.S. Life Ins. Co. in City of New York v. Holtzman*, 723 F. App'x 141 (3d Cir. 2018) ................13

**STATUTES**

28 U.S.C. § 1334................................................................................................3, 12

28 U.S.C. § 1335............................................................................................... passim

28 U.S.C. § 1409..........................................................................................................3

28 U.S.C. § 157..................................................................................................3, 12

**RULES**

FED. R. BANKR. P. 7022 ...........................................................................................1, 9

FED. R. BANKR. P. 7067 ...........................................................................................1, 9

FED. R. CIV. P. 22 ...............................................................................................1, 9, 11

FED. R. CIV. P. 67 ...............................................................................................1, 9, 14

## I.    INTRODUCTION

Pursuant to Rule 67 of the Federal Rules of Civil Procedure, as made applicable herein by Rule 7067 of the Federal Rules of Bankruptcy Procedure, and 28 U.S.C. § 1335 and/or Rule 22 of the Federal Rules of Civil Procedure, as made applicable herein by Rule 7022 of the Federal Rules of Bankruptcy Procedure, Plaintiff First American Title Insurance Company, as escrow agent ("First American" or "Plaintiff"), respectfully submits this memorandum of law (the "Memorandum of Law") in support of *Plaintiff's Motion to Authorize Deposit of Interpleader Funds into the Registry of the Court and to Discharge Plaintiff from the Interpleader Action* (the "Motion").

As set forth more fully in the Motion and herein, First American respectfully requests that the Court issue an order, *inter alia*, authorizing and directing First American to deposit certain funds into the Registry of the Court and discharging First American from the above-captioned interpleader action (the "Interpleader Action"). In support of its Motion and Memorandum of Law, First American relies on the Declaration of Elizabeth T. Ferrick, counsel for First American, (the "Ferrick Declaration"), which is attached hereto as **Exhibit A**.

## II.    BACKGROUND

### A.    The Settlement Agreement and the Parties

On August 7, 2025, Parkview Financial REIT, LP (the "Lender" or "Administrative Agent"), Hudson 1701/1706, LLC and Hudson 1702, LLC (together, the "Debtors"), CSC Hudson LLC ("Holdings"), Alberto Smeke Saba and Salomon Smeke Saba (together, the "Guarantors") entered into a *Settlement and Release Agreement* [Adversary Proceeding Docket No. 1-1] (the "Settlement Agreement"). *See* Ferrick Declaration, ¶ 4 and Ex. 1.

The Lender is a Delaware limited partnership. The Debtors are Delaware limited liability companies. The sole member of the Debtors is PV Hudson LLC, a Delaware limited liability

company. Similarly, Holdings is a Delaware limited liability company. The sole members of Holdings are believed to be the Guarantors. In turn, the Guarantors are citizens of the State of New York.

### B.    The Escrow Agreement

On August 7, 2025, in conjunction with the Settlement Agreement, the Debtors, Guarantors, Holdings, Lender and First American entered into an *Escrow Agreement* [Adversary Proceeding Docket No. 1-2] (the "Escrow Agreement"), under which First American acts as escrow agent. *See* Ferrick Declaration, ¶ 5 and Ex. 2.

Pursuant to the Settlement Agreement, the sum of $4,637,500.00 was wired to an account maintained by First American (the "Escrow Funds"). *See* Ferrick Declaration, ¶ 6. Upon execution of the Settlement Agreement, First American delivered $3,000,000.00 of the Escrow Funds to the Guarantors in accordance with section 4 of the Escrow Agreement. *See id.* at ¶ 7.

Section 4 of the Escrow Agreement provides the conditions upon which First American may disburse the Escrow Funds. *See* Ferrick Declaration, Ex. 2, § 4. Section 4(c) provides that First American shall disburse the Escrow Funds, or a portion thereof, upon receipt of a joint written direction signed by the Administrative Agent and Guarantor. *See id.* at § 4(c). Section 4(d) also allows Guarantors to submit a "Claim Notice" to First American asserting their entitlement to the Escrow Funds. In relevant part, section 4(d) provides:

> If Guarantor is entitled to receive the remainder of the Escrow Funds or a portion thereof pursuant to the Settlement Agreement, Guarantor (in such capacity, the "Requesting Party") may provide written notice to Escrow Agent that Guarantor is entitled to receive the Escrow Funds or a portion thereof pursuant to the Settlement Agreement (such notice the "Claim Notice") and that the Escrow Funds (or portions thereof) be distributed in accordance with the instructions given in such Claim Notice.

*See id.* at § 4(d).

However, if another party to the Escrow Agreement disputes that the Requesting Party is entitled to receive the Escrow Funds, Section 4(d)(i) requires the submission of a "Dispute Notice" to First American. *See id.* at § 4(d)(i). In relevant part, upon timely receipt of a Dispute Notice, Section 4(d)(i) provides that:

> Escrow Agent shall deliver a copy of such Dispute Notice to each of the other Parties and shall retain the Escrow Funds in the Escrow Account pending receipt of a joint written direction signed by each of Administrative Agent and Guarantor authorizing the disbursement of the Escrow Funds, or a copy of a final decision of an arbitrator or final unappealable order of a court of competent jurisdiction with respect to distribution of the Escrow Funds.

*Id.* Alternatively, Section 4(d)(i) allows First American, upon receipt of contrary written directions, to "deposit the Escrow Funds with any court of competent jurisdiction in New York[2] and interplead Administrative Agent and Guarantor," and provides that, in such an event, First American "shall be released from all liability under this Agreement regarding the Escrow Funds, except as otherwise expressly provided in this Agreement." *Id.*

Finally, pursuant to section 5 of the Escrow Agreement, First American is entitled to reimbursement for any fees, costs, and expenses[3] with respect to the Escrow Agreement. *See id.* at § 5. Pursuant to section 7(d) of the Escrow Agreement, First American is also entitled to reimbursement for any actual, third-party out-of-pocket costs or expenses hereunder, including, without limitation, costs of First American. *See id.* at § 7.

---

[2]    As set forth more fully below, First American has appropriately filed this Interpleader Action to deposit the Escrow Funds with the Bankruptcy Court pursuant to 28 U.S.C. §§ 157, 1334, 1335, and 1409.

[3]    Subject to attorney client protections, First American is prepared to submit invoices and/or other business records reflecting its current reasonable fees and expenses to the parties to the Escrow Agreement upon request. Likewise, as provided in the Proposed Order, in the event the Motion is granted, First American is prepared to submit to the parties to the Escrow Agreement and the Court invoices and/or other business records reflecting its total unpaid fees and expenses prior to final disposition of the Interpleader Funds.

### C.       Commencement of the Chapter 11 Cases and Purported Claim Notice

On October 22, 2025 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware, the Honorable Karen B. Owens presiding (the "Bankruptcy Court"), Case Nos. 25-11853 and 25-11854 (the "Chapter 11 Cases").

On November 3, 2025, Neal Kronley of DLA Piper LLP (US), on behalf of the Debtors, wrote a letter to First American [Adversary Proceeding Docket No. 1-3] (the "November 3 DLA Letter"). *See* Ferrick Declaration, ¶ 9 and Ex. 3. In relevant part, the November 3 DLA Letter notified First American of the Debtors' Chapter 11 Cases and demanded that First American refrain from disbursing any Escrow Funds currently being held by First American until receipt of joint written instructions to do so from all parties to the Escrow Agreement. *See* Ferrick Declaration, Ex. 3. Significantly, the November 3 DLA Letter stated that Section 108(b) of the Bankruptcy Code operated to toll the time periods in the Escrow Agreement on behalf of the Debtors. *See id.* at p. 3.

On November 14, 2025, Robert Salame of Vedder Price P.C., on behalf of the Guarantors, wrote a letter to First American [Adversary Proceeding Docket No. 1-4] (the "November 14 Vedder Letter"). *See* Ferrick Declaration, ¶ 10 and Ex. 4. In relevant part, without referencing the Settlement Agreement, the November 14 Vedder Letter purports to be a Claim Notice by the Guarantors, within the meaning of section 4(d) of the Escrow Agreement, demanding that First American release the remaining Escrow Funds in the amount of $1,637,500.00 to the Guarantors. *See* Ferrick Declaration, Ex. 4.

### D.    First American's Response to the Conflicting Demands

Based on First American's review, the November 3 DLA Letter and the November 14 Vedder Letter arguably presented conflicting directions for the Escrow Funds pursuant to section 4(d)(i) of the Escrow Agreement. Accordingly, on December 4, 2025, First American wrote a letter to the Lender, Debtors, Holdings, and Guarantors [Adversary Proceeding Docket No. 1-5] (the "December 4 First American Letter"). *See* Ferrick Declaration, ¶ 11 and Ex. 5. In relevant part, the December 4 First American Letter advised that First American "shall not release any Escrow Funds until Escrow Agent has received joint written instructions as stated in Section 4(c) of the Escrow Agreement; provided, however, as also stated in Section 4(d)(i), Escrow Agent may release the Escrow Funds upon receipt of a court order and *may* deposit the funds in a court of competent jurisdiction in New York." *See* Ferrick Declaration, Ex. 5, p. 3 (emphasis added).

Likewise, on December 9, 2025, First American wrote a letter to counsel for the Debtors [Adversary Proceeding Docket No. 1-6] (the "December 9 First American Letter") which was disseminated to counsel for the Lender, Debtors, Holdings, and Guarantors. *See* Ferrick Declaration, ¶ 12 and Ex. 6. In relevant part, the December 9 First American Letter requested that:

> [Y]ou, as Proposed Special Corporate and Litigation Counsel to the [Debtors], state in writing for all recipients [Debtors'] position concerning the disposition of the Escrow Funds post-filing of the Bankruptcy Petition and the possibility of resolving the dispute among the Guarantor[s] and the [Debtors] within the parameters of the Escrow Agreement, including: (i) the consummation of a joint written direction from the Guarantor[s] and the [Lender] as permitted pursuant to Section 4(c) of the Escrow Agreement with the consent of the [Debtors]; or (ii) the initiation of a proceeding before the Bankruptcy Court as a court of competent jurisdiction requesting resolution of the dispute, as soon as possible, pursuant to Section 4(d)(i) of the Escrow Agreement. *Please be advised that if such a mutual resolution is not sought within a commercially reasonable time as the Escrow Agent deems necessary in its sole discretion, the Escrow Agent reserves all rights to seek redress in a court of competent jurisdiction, including the right to seek relief from the Bankruptcy Court regarding the dispute.*

Ferrick Declaration, Ex. 6, p. 3 (emphasis added).

On December 11, 2025, the Guarantors, by and through counsel, presumably responded to the December 9 First American Letter via email directed to counsel for the Debtors [Adversary Proceeding Docket No. 1-7] (the "December 11 Vedder Email"). *See* Ferrick Declaration, ¶ 13 and Ex. 7. In relevant part, the December 11 Vedder Email reiterated the Guarantors' position that the Debtors are not parties under the Escrow Agreement and have no interest in the Escrow Funds, and stated, absent an immediate resolution, that the Guarantors would bring the dispute to the attention of the Bankruptcy Court and seek appropriate relief. *See* Ferrick Declaration, Ex. 7.

### E.      Competing Dispute Notices from Lender and Guarantors

On December 12, 2025, David Simonds of Hogan Lovells US LLP, on behalf of the Lender, wrote a letter to First American [Adversary Proceeding Docket No. 1-8] (the "December 12 Hogan Letter"). *See* Ferrick Declaration, ¶ 14 and Ex. 8. In relevant part, the December 12 Hogan Letter, which is designated as a Dispute Notice, notified First American of the Lender's position that the Guarantors and Holdings had failed to comply with their material obligations under the Settlement Agreement, and, in light of the alleged breach, directed First American not to disburse any of the Escrow Funds absent joint written instructions from all parties or a final, unappealable order of a court of competent jurisdiction. *See* Ferrick Declaration, Ex. 8.

On December 15, 2025, the Debtors, through their counsel, wrote a letter to counsel for First American and counsel for the Guarantors in response to the December 9 First American Letter and the December 11 Vedder Email [Adversary Proceeding Docket No. 1-9] (the "December 15 DLA Letter"). *See* Ferrick Declaration, ¶ 15 and Ex. 9. In relevant part, the December 15 DLA Letter, which is designated as a Dispute Notice, reiterated the Debtors'

position that (i) they are parties under the Escrow Agreement, (ii) efforts by the Guarantors and Holdings to interfere with the Debtors' rights are in violation of the automatic stay in the Chapter 11 Cases, (iii) Section 108(b) was implicated, and (iv) that any *ex parte* communications between First American, the Guarantors, and Holdings must cease and desist. *See* Ferrick Declaration, Ex. 9.

On December 16, 2025, the Guarantors, through their counsel, wrote a letter to counsel for the Debtors [Adversary Proceeding Docket No. 1-10] (the "December 16 Vedder Letter"). *See* Ferrick Declaration, ¶ 16 and Ex. 10. In relevant part, the December 16 Vedder Letter reiterated the position of the Guarantors that the Debtors are not parties to the Escrow Agreement and have no interest in the Escrow Funds, such that the automatic stay in the Chapter 11 Cases is inapplicable, and explained that communications between First American and the Guarantors and Holdings are neither improper nor *ex parte*. *See* Ferrick Declaration, Ex. 10.

On December 16, 2025, the Guarantors, through their counsel also wrote a letter to counsel for the Lender [Adversary Proceeding Docket No. 1-11] (the "Second December 16 Vedder Letter"). *See* Ferrick Declaration, ¶ 17 and Ex. 11. In relevant part, the Second December 16 Vedder Letter demands immediate release of the Escrow Funds and further states that, unless the Guarantors receive confirmation in writing no later than 5:00 p.m. (ET) on December 18, 2025, that the Lender has withdrawn all objections and has authorized First American to release the Escrow Funds, the Guarantors will seek relief from the Bankruptcy Court, including release of the Escrow Funds. *See* Ferrick Declaration, Ex. 11.

On December 20, 2025, Lender, through its counsel, wrote a letter to counsel for Guarantors in response to the Second December 16 Vedder Letter (the "December 20 Hogan Letter"). *See* Ferrick Declaration, ¶ 19 and Ex. 13. In relevant part, the December 20 Hogan

7

Letter reiterated the Lender's position that it is not obligated to authorize the release of the Escrow Funds due to the Guarantors' alleged breach of the Settlement Agreement. *See* Ferrick Declaration, Ex. 13. The December 20 Hogan Letter further provided that the Lender delivered its Dispute Notice pursuant to Section 4(d)(i) of the Escrow Agreement in order to preserve its rights and "ensure that any unresolved issues are subject to judicial determination[.]" *Id.* at p. 3; *see also* Ferrick Declaration, Ex. 8, p. 2 ("Re: *August 7 Escrow Agreement* – DISPUTE NOTICE").

### F.    Uncertainty as to First American's Obligations Under the Escrow Agreement

The letters from counsel for the Debtors, the Guarantors, and the Lender contain contradictory directions as to the disposition of the Escrow Funds, and it is apparent that a dispute exists regarding the disbursement of the Escrow Funds. Given those circumstances, on December 17, 2025, First American sent a letter to the Debtors, the Guarantors, and Lender declaring that a dispute exists pursuant to section 4(d)(i) of the Escrow Agreement [Adversary Proceeding Docket No. 1-12] ("December 17 First American Letter"). *See* Ferrick Declaration, ¶ 18 and Ex. 12.

Pursuant to sections 4(c) and 4(d)(i) of the Escrow Agreement, First American cannot release the Escrow Funds until it receives a joint written direction from the Lender and the Guarantors or a copy of a final, unappealable order of a court of competent jurisdiction with respect to the distribution of the Escrow Funds. *See* Ferrick Declaration, ¶ 20 and Ex. 2, §§ 4(c), 4(d)(i). To date, First American has not received either. *See* Ferrick Declaration, ¶ 20. Thus, in light of the Chapter 11 Cases, the conflicting interests at stake, and the Debtors', Guarantors', and Lender's conscious and voluntary submission to the jurisdiction of this Court to date in these proceedings, First American seeks an order from this Court pursuant to the provisions of 28

8

U.S.C. § 1335 and/or Rule 22 of the Federal Rules of Civil Procedure, as made applicable herein by Rule 7022 of the Federal Rules of Bankruptcy Procedure.

### G.    Commencement of the Interpleader Action

Given the conflicting instructions and existence of a dispute, uncertainty exists as to First American's proper actions with respect to its obligations under the Escrow Agreement.

Accordingly, on December 18, 2025, First American commenced the Interpleader Action by filing the *Complaint for Interpleader* [Adversary Proceeding Docket No. 1] (the "Complaint") against the Debtors, Guarantors, Holdings, and Lender to ensure that the Escrow Funds are properly distributed and to remove itself from the dispute. *See* Ferrick Declaration, ¶ 23. Thereafter, on December 18, 2025, summonses were issued by the Court to each Defendant. [Adversary Proceeding Docket Nos. 3-8].

As of December 30, 2025, the Escrow Funds, in the amount of $1,637,500.00, continue to be held by First American in an escrow account. *See* Ferrick Declaration, ¶ 24. First American is ready and willing to tender the Escrow Funds, less fees and expenses due to First American, (the "Interpleader Funds") into the Court and to abide the judgment to be made and entered herein. *See id.* at ¶ 26.

### III.    LEGAL STANDARDS

In accordance with Rule 67 of the Federal Rules of Civil Procedure, deposits of money subject to interpleader actions are often made into federal courts. *See* FED. R. CIV. P. 67. That rule, as made applicable herein by Rule 7067 of the Federal Rules of Bankruptcy Procedure, provides:

(a) Depositing Property. If any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing, a party—on notice to every other party and by leave of court—may deposit with the court all or part of the money or thing, whether or not that party claims any of it. The depositing party must deliver to the clerk a copy of the order permitting deposit.

(b) Investing and Withdrawing Funds. Money paid into court under this rule must be deposited and withdrawn in accordance with 28 U.S.C. §§ 2041 and 2042 and any like statute. The money must be deposited in an interest-bearing account or invested in a court-approved, interest-bearing instrument.

*Id.* Indeed, in interpleader actions brought pursuant to 28 U.S.C. § 1335, such deposits are required. *See* 28 U.S.C. § 1335.

## IV.    ARGUMENT

Generally, upon an interpleader plaintiff's satisfaction of the applicable jurisdictional and threshold requirements in an interpleader action, courts will authorize the interpleader plaintiff to deposit the interpleader funds with the court, discharge the interpleader plaintiff from liability, and dismiss the interpleader plaintiff from the case. *See, e.g.*, *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 262 (3d Cir. 2009) (quoting *Metro Life Ins. Co. v. Price*, 501 F.3d 271, 275 (3d Cir. 2007)); *The Prudential Ins. Co. of Am. v. Payne*, No. 20-CV-03683(JS)(JMW), 2021 WL 3023236, at *2-4 (E.D.N.Y. July 16, 2021) (allowing plaintiff to deposit funds with the court and be discharged from the case after finding that the jurisdictional and threshold requirements of interpleader were met); *Sun Life Assur. Co. of Canada v. Diaz*, No. 3:14-CV-01685-VAB, 2015 WL 1826088, at *4 (D. Conn. Apr. 22, 2015) (same). Specifically, bankruptcy courts have allowed escrow agents in similar circumstances to deposit interpleader funds with the court and have discharged such escrow agents from liability, dismissing them from the case. *See, e.g.*, *In re Kwok*, 663 B.R. 386, 392 (Bankr. D. Conn. 2023).

As set forth below, First American has satisfied all the threshold requirements of an interpleader action. Accordingly, First American requests the Court enter an order, *inter alia*,

authorizing and directing First American to deposit the Interpleader Funds with the Court, discharging First American from liability, and dismissing First American from the Interpleader Action.

### A.    The Court has Subject Matter Jurisdiction over this Interpleader Action

There are two ways a federal court may acquire subject matter jurisdiction over an interpleader action: rule interpleader and statutory interpleader. *See Price*, 501 F.3d at 276. The first, rule interpleader, relies upon Federal Rule of Civil Procedure 22. *Id.*; *see also* FED. R. CIV. P. 22. Rule interpleader, which is "no more than a procedural device," requires the interpleader plaintiff to "plead and prove an independent basis for subject matter jurisdiction." *Id.* (citing *NYLife Distribs., Inc. v. Adherence Grp., Inc.*, 72 F.3d 371, 372 n.1 (3d Cir. 1995); *Com. Union Ins. Co. v. U.S.*, 999 F.2d 581, 584 (D.C. Cir. 1993)). Statutory interpleader, on the other hand, is based on 28 U.S.C. § 1335. 28 U.S.C. § 1335 confers subject matter jurisdiction in cases where the following requirements are met: (1) the property at issue is $500 or more; (2) two or more adverse claimants of diverse citizenship claim, or may claim, to be entitled to the property at issue, and (3) the plaintiff has deposited the subject property into the registry of the court or has given a bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper. *See NYLife Distribs.*, 72 F.3d at 374 (citing 28 U.S.C. § 1335); *see also JPMorgan Chase Bank, N.A. v. Neu*, No. CV 17-3475, 2017 WL 2290142, at *2 (D.N.J. May 24, 2017). As explained further below, this Court has subject matter jurisdiction over this Interpleader Action pursuant to the standards of both rule and statutory interpleader.

### 1.    Rule Interpleader

First, this Interpleader Action may proceed as a rule interpleader action because the Court has independent subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), including, but not limited to, this matter arising in and being related to the Bankruptcy Case.[4]

This Interpleader Action clearly arises in and relates to the Bankruptcy Case as a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (M), and/or (O). Further, Defendants, particularly the Guarantors, have voluntarily submitted themselves and the dispute over the Escrow Funds to the Bankruptcy Court by their strident participation in the Bankruptcy Case and referencing the Escrow and Settlement Agreements in their pleadings. *See, e.g.*, *Objection by Alberto Smeke Saba and Salomon Smeke Saba to Debtors' Application to Employ DLA Piper LLP (US) as Special Counsel, Effective as of the Petition Date* [Chapter 11 Cases Docket No. 123-1]. The Debtors have also listed the Settlement Agreement in their schedules and statements of financial affairs. [Chapter 11 Cases Docket No. 164, Page 77, Item 2.38]; [Chapter 11 Cases Docket No. 165, Page 20, Item 4.1; Page 42]; [Chapter 11 Cases Docket No. 166, Page 76, Item 2.38]; [Chapter 11 Cases Docket No. 167, Page 20, Item 4.1].

### 2. Statutory Interpleader

Alternatively, this Interpleader Action may proceed as a "statutory interpleader" action under 28 U.S.C. § 1335 because the Interpleader Funds are in excess of $500, there is minimal diversity, and, upon entry of the order granting this Motion, First American will satisfy the final requirement by depositing the Interpleader Funds into the Registry of the Court.

First, as set forth above, as of December 30, 2025, the Interpleader Funds reflect the Escrow Funds in the amount of $1,637,500.00, less unpaid fees and expenses due to First American. This is well in excess of the $500 threshold requirement under 28 U.S.C. § 1335.

---

[4]   The Court has authority to hear and determine this matter pursuant to 28 U.S.C. § 157(a), section 105 of the Bankruptcy Code, and the Amended Standing Order of Reference of the United States District Court for the District of Delaware dated February 29, 2012.

Second, there is diversity of citizenship between at least two claimants to the Interpleader Funds. 28 U.S.C. § 1335 "has been uniformly construed to require only 'minimal diversity,' that is, diversity of citizenship between two or more claimants, without regard to the circumstance that other rival claimants may be co-citizens." *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1967). The Debtors are Delaware limited liability companies. On the other hand, the Guarantors are citizens of the State of New York. This is sufficient to meet the "minimal diversity" standard of 28 U.S.C. § 1335. *See, e.g.*, *CNA Ins. Co. v. Waters*, 926 F.2d 247, 249 n.5 (3d Cir. 1991) (finding diversity of citizenship requirements were met where one claimant was alleged to be Delaware citizen and the remainder of the claimants were alleged to be citizens of Pennsylvania because "statutory interpleader requires only minimal diversity (at least two claimants must be diverse, but citizenship of stakeholder is irrelevant)."); *see also Domus, Inc. v. Davis-Giovinazzo Const. Co.*, No. CIV.A. 10-1654, 2010 WL 3282983, at *1 (E.D. Pa. Aug. 19, 2010) (finding minimal diversity was met where most of the claimants were alleged to be citizens of Pennsylvania, but one defendant was alleged to be a citizen of Florida).

Third, upon entry of an order granting this Motion, First American will deposit the Interpleader Funds into the Registry of the Court and, thus, satisfy the final requirement to establish subject matter jurisdiction. Generally, "[a] proper deposit or bond is a jurisdictional prerequisite to bringing an interpleader." *U.S. Fire Ins. Co. v. Asbestospray, Inc.*, 182 F.3d 201, 210 (3d Cir. 1999). However, where a court order is required for a plaintiff to deposit the funds, the Third Circuit has explained that subject matter jurisdiction may be established after the interpleader is filed at the time the plaintiff deposits the funds pursuant to a court order. *See U.S. Life Ins. Co. in City of New York v. Holtzman*, 723 F. App'x 141, 145 (3d Cir. 2018) (explaining that once the plaintiff responded to the district court's order to deposit the funds into the registry

13

of the court, the district court had subject matter jurisdiction); *see also CNA*, 926 F.2d at 249 n.6 (permitting a plaintiff to cure the defect in statutory interpleader jurisdiction caused by its failure to deposit the full amount of interpleader funds by making an additional deposit with the court registry). Here, Federal Rule of Civil Procedure 67 requires that an order permitting deposit be submitted alongside the deposit with the clerk of court. *See* FED. R. CIV. P. 67(a) ("[A] party--on notice to every other party **and by leave of court**--may deposit with the court all or part of the money or thing, whether or not that party claims any of it. **The depositing party must deliver to the clerk a copy of the order permitting deposit**.") (emphasis added).

Although First American has not yet deposited the Interpleader Funds with the Court, the very purpose of this Motion is to obtain authorization to do so. Further, any jurisdictional defect relating to this proceeding that may exist before the Interpleader Funds are deposited with the Court will be cured *nunc pro tunc* once the deposit is made. Accordingly, the Interpleader Action meets the jurisdictional requirements to proceed as a "statutory interpleader" action under 28 U.S.C. § 1335.

### B.     The Remaining Threshold Requirements for an Interpleader Action are Met

After subject matter jurisdiction is established, a Court must determine whether an interpleader action is appropriate. *See Hovis*, 553 F.3d at 262 (citations omitted). "The test for determining whether it is proper to interplead the adverse claimants and discharge the stakeholder is 'whether the stakeholder legitimately fears multiple vexation directed against a single fund.'" *Travelers Ins. Co. v. Johnson*, 579 F. Supp. 1457, 1460 (D.N.J. 1984) (citing Wright & Miller, Fed. Prac. and Proc.: Civ. § 1704). Notably, "jurisdiction in interpleader is not dependent upon the merits of the claims of the parties interpleaded, and a plaintiff can maintain the action even though he believes that one of the claims is valid and the other, or others, without merit." *Lexington Ins. Co. v. Jacobs Indus. Maint. Co., LLC*, 435 F. App'x 144, 147 (3d Cir.

2011). Thus, an interpleader plaintiff is "not obliged at his peril to determine which claimant has the better claim," and only needs "some real and reasonable fear of exposure to double liability or the vexation of conflicting claims to justify interpleader[.]" *Midland Nat'l Life Ins. Co. v. Rivas*, 318 F.R.D. 303, 307 (E.D. Pa. 2016).

Here, First American has a good faith concern about duplicative litigation and multiple liability if it responds to the requests of certain claimants and not to others. As set forth in the November 3 DLA Letter and December 15 DLA Letter, the Debtors have made repeated claims that section 108(b) of the Bankruptcy Code operated to toll the time periods in the Escrow Agreement on behalf of the Debtors and demanded that First American refrain from disbursing the Escrow Funds until receipt of joint written instructions to do so from all parties to the Escrow Agreement. *See* Ferrick Declaration, Ex. 3 and Ex. 9. In the December 12 and December 20 Hogan Letters, the Lender similarly asserts that First American must not disburse any of the Escrow Funds absent joint written instructions from all parties or a final, unappealable order of a court of competent jurisdiction. *See* Ferrick Declaration, Ex. 8 and Ex. 13. By contrast, the Guarantors, as set forth in the November 14 Vedder Letter, December 11 Vedder Email, and the two December 16 Vedder Letters, have repeatedly demanded immediate release of the Escrow Funds to Guarantors. *See* Ferrick Declaration, Ex. 4, Ex. 7, Ex. 10, and Ex. 11.

Regardless of the merits of any of Defendants' claims, given the conflicting instructions and the existence of a dispute, uncertainty exists as to First American's proper actions with respect to its obligations under the Escrow Agreement. Unless these conflicting and adverse claims to the Escrow Funds are disposed of in a single proceeding, First American fears it may be potentially subjected to multiple litigations and is at a substantial risk of suffering duplicate or inconsistent rulings on liability. *See* Ferrick Declaration, ¶ 22. Interpleader actions are designed

for this very purpose: "to allow 'a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding.'" *Hovis*, 553 F.3d at 262 (citation omitted).

Other than the unpaid fees and expenses owed to it under the Escrow Agreement, including those incurred with respect to this interpleader action, First American claims no beneficial interest in the Escrow Funds. *See* Ferrick Declaration, ¶ 25. Therefore, the Court should authorize First American to deposit the Interpleader Funds into the Registry of the Court and discharge the Escrow Agent from the Interpleader Action. *See, e.g.*, *Neu*, 2017 WL 2290142, at *6; *Payne*, 2021 WL 3023236, at *2-4; *Sun Life*, 2015 WL 1826088, at *4; *In re Kwok*, 663 B.R. at 392.

### C.    First American is Entitled to Deduct its Fees and Expenses

First American respectfully requests authorization to deduct from the Escrow Funds the amount of its unpaid fees and expenses. First American further requests that it be awarded any additional unpaid costs and attorneys' fees incurred in this action.

Here, section 5 of the Escrow Agreement provides that First American is entitled to reimbursement for any fees, costs, and expenses with respect to the Escrow Agreement. *See* Ferrick Declaration, Ex. 2, § 5. Additionally, under section 7(d) of the Escrow Agreement, First American is entitled to reimbursement for any actual, third-party out-of-pocket costs or expenses hereunder, including, without limitation, costs of First American. *See id.* at § 7(d). Moreover, the Third Circuit has held that an award of costs and fees to an interpleader plaintiff may be appropriate where the plaintiff is "(1) a disinterested stakeholder, (2) who had conceded liability, (3) has deposited the disputed funds with the court, and (4) has sought a discharge from liability." *Metro. Life Ins. Co. v. Kubichek*, 83 F. App'x 425, 431 (3d Cir. 2003) (citations

omitted). Here, First American is a disinterested stakeholder who has conceded the risk of liability, who will deposit the Interpleader Funds into the registry of the Court, and who has sought a discharge of liability. Accordingly, First American is entitled to deduct the amount of its unpaid fees and expenses from the Escrow Funds and apply the amount to said unpaid fees and expenses and to recover any additional unpaid costs and attorneys' fees incurred in this action under the terms of the Escrow Agreement and should be granted relief for the same. *See, e.g.*, *Stonebridge Life Ins. Co. v. Kissinger*, 89 F. Supp. 3d 622, 626-29 (D.N.J. 2015).

## V.     CONCLUSION

For the foregoing reasons, and for the reasons asserted in the Motion, First American respectfully requests that the Court issue an order, *inter alia*, authorizing First American to deposit the Interpleader Funds into the Registry of the Court and discharging First American from this action.

Dated:  December 30, 2025

**BENESCH, FRIEDLANDER,
   COPLAN & ARONOFF LLP**

/s/ *Jennifer R. Hoover*
Jennifer R. Hoover, Esq. (DE No. 5111)
Juan E. Martinez, Esq. (DE No. 6863)
1313 North Market Street, Suite 1201
Wilmington, DE 19801
Telephone: (302) 442-7006
Email: jhoover@beneschlaw.com
        jmartinez@beneschlaw.com

-and-

**DENTONS US LLP**

Lynn P. Harrison III, Esq. (*pro hac vice*
forthcoming)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 768-6700
Facsimile:  (212) 768-6800
Email: lynn.harrisoniii@dentons.com

17

Elizabeth T. Ferrick, Esq. (*pro hac vice*)
101 South Hanley Road
Suite 600
St. Louis, Missouri 63105
Telephone: (314) 259-5910
Email: elizabeth.ferrick@dentons.com

*Counsel to First American Title Insurance Company*