# Exhibit A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| HUDSON 1701/1706, LLC, *et al.*,[1] | Case No. 25-11853 (KBO) |
| Debtors. | (Jointly Administered) |
| FIRST AMERICAN TITLE INSURANCE COMPANY, solely as Escrow Agent and not in its individual capacity, | |
| Plaintiff, | Adv. No. 25-52468-KBO |
| v. | |
| HUDSON 1701/1706, LLC, HUDSON 1702, LLC, ALBERTO SMEKE SABA, SALOMON SMEKE SABA, CSC HUDSON LLC, and PARKVIEW FINANCIAL REIT, LP, | |
| Defendants. | **Hearing Date: January 13, 2026 at 1:00 p.m.**<br>**Obj. Deadline: January 6, 2026 at 4:00 p.m.** |

**DECLARATION OF ELIZABETH T. FERRICK IN SUPPORT OF PLAINTIFF'S
MOTION TO AUTHORIZE DEPOSIT OF INTERPLEADER FUNDS INTO THE
REGISTRY OF COURT AND TO DISCHARGE PLAINTIFF FROM
THE INTERPLEADER ACTION**

Elizabeth T. Ferrick declares under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1.      I am counsel for First American Title Insurance Company ("First American") in the above captioned action (the "Interpleader Action"). I respectfully submit this declaration in support of *Plaintiff's Motion to Authorize Deposit of Interpleader Funds into the Registry of the Court and to Discharge Plaintiff from the Interpleader Action* (the "Motion").

---

[1]      Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Hudson 1701/1706, LLC (0281) and Hudson 1702, LLC (0190).

2.    I am fully familiar with the facts and circumstances as set forth below.

3.    Attached hereto are true and correct copies of the following documents:

| Ex. | Description of Exhibit |
|---|---|
| 1 | That certain Settlement and Release Agreement dated August 7, 2025 by and among Parkview Financial REIT, LP ("Lender"), Hudson 1701/1706, LLC and Hudson 1702, LLC (collectively, "Debtors"), CSC Hudson LLC ("Holdings"), and Alberto Smeke Saba and Salomon Smeke Saba (collectively, "Guarantors"). |
| 2 | That certain Escrow Agreement dated August 7, 2025 by and among the Lender, Debtors, Holdings, Guarantors, and First American, as escrow agent. |
| 3 | November 3, 2025 letter from Neal Kronley of DLA Piper LLP (US), as counsel for the Debtors, to Elizabeth T. Ferrick, of Dentons US LLP, as counsel for First American. |
| 4 | November 14, 2025 letter from Robert Salame of Vedder Price P.C., as counsel for the Guarantors, to counsel for First American. |
| 5 | December 4, 2025 letter from First American, through its counsel, to the Lender, the Debtors, Holdings, and the Guarantors. |
| 6 | December 9, 2025 letter from First American, through its counsel, to counsel for the Debtors. |
| 7 | December 11, 2025 email from counsel for the Guarantors directed to counsel for the Debtors. |
| 8 | December 12, 2025 letter from David Simonds of Hogan Lovells US LLP, as counsel for the Lender, to counsel for First American. |
| 9 | December 15, 2025 letter from the Debtors, through their counsel, to counsel for First American and counsel for the Guarantors. |
| 10 | December 16, 2025 letter from the Guarantors, through their counsel, to counsel for the Debtors. |
| 11 | December 16, 2025 letter from the Guarantors, through their counsel, to counsel for the Lender. |
| 12 | December 17, 2025, letter from First American, through its counsel, to the Debtors, the Guarantors and Lender. |
| 13 | December 20, 2025 letter from the Lender, through its counsel, to counsel for the Guarantors. |

4.      On or about August 7, 2025, the Debtors, Guarantors, Holdings, and Lender entered into a Settlement and Release Agreement (the "<u>Settlement Agreement</u>"). A true and correct copy of the Settlement Agreement is attached hereto as **<u>Exhibit 1</u>**.

5.      On or about August 7, 2025, the Debtors, Guarantors, Holdings, Lender and First American entered into an Escrow Agreement (the "<u>Escrow Agreement</u>"), under which First American acts as escrow agent. A true and correct copy of the Escrow Agreement is attached hereto as **<u>Exhibit 2</u>**.

6.      Pursuant to the Settlement Agreement, the sum of $4,637,500.00 was wired to an account maintained by First American (the "<u>Escrow Funds</u>").

7.      Pursuant to section 4(b) of the Escrow Agreement, First American delivered $3,000,000.00 of the Escrow Funds to the Guarantors upon execution of the Settlement Agreement.

8.      The remaining Escrow Funds have been and continue to be held by First American in an escrow account in accordance with the terms of the Escrow Agreement.

9.      On November 3, 2025, First American received a letter from Neal Kronley of DLA Piper LLP (US), on behalf of the Debtors (the "<u>November 3 DLA Letter</u>"). A true and correct copy of the November 3 DLA Letter is attached hereto as **<u>Exhibit 3</u>**.

10.     On November 14, 2025, First American received a letter from Robert Salame of Vedder Price P.C., on behalf of the Guarantors (the "<u>November 14 Vedder Letter</u>"). A true and correct copy of the November 14 Vedder Letter is attached hereto as **<u>Exhibit 4</u>**.

11.     On December 4, 2025, I wrote a letter on behalf of First American to the Lender, Debtors, Holdings, and Guarantors (the "<u>December 4 First American Letter</u>"). A true and correct copy of the December 4 First American Letter is attached hereto as **<u>Exhibit 5</u>**.

12.     On December 9, 2025, I wrote a letter on behalf of First American to counsel for the Debtors (the "December 9 First American Letter") which was disseminated to counsel for the Lender, Debtors, Holdings and Guarantors. A true and correct copy of the December 9 First American Letter is attached hereto as **Exhibit 6**.

13.     On December 11, 2025, I received an email from counsel for the Guarantors, responding, in part, to the December 9 First American Letter, directed to counsel for the Debtors (the "December 11 Vedder Email"). A true and correct copy of the December 11 Vedder Email is attached hereto as **Exhibit 7**.

14.     On December 12, 2025, I received a letter directed to First American from David Simonds of Hogan Lovells US LLP, on behalf of the Lender, (the "December 12 Hogan Letter"). A true and correct copy of the December 12 Hogan Letter is attached hereto as **Exhibit 8**.

15.     On December 15, 2025, I received a letter from the Debtors, through their counsel, directed to First American and counsel for the Guarantors in response to the December 9 First American Letter and the December 11 Vedder Email (the "December 15 DLA Letter"). A true and correct copy of the December 15 DLA Letter is attached hereto as **Exhibit 9**.

16.     On December 16, 2025, I received a letter on behalf of First American from Guarantors, through their counsel, directed to counsel for the Debtors (the "December 16 Vedder Letter"). A true and correct copy of the December 16 Vedder Letter is attached hereto as **Exhibit 10**.

17.     On December 16, 2025, I received another letter on behalf of First American from the Guarantors, through their counsel, directed to counsel for the Lender (the "Second December 16 Vedder Letter"). A true and correct copy of the Second December 16 Vedder Letter is attached hereto as **Exhibit 11.**

18.     On December 17, 2025, I sent a letter on behalf of First American to the Debtors, the Guarantors and Lender declaring that a dispute exists pursuant to section 4(d)(i) of the Escrow Agreement ("<u>December 17 First American Letter</u>"). A true and correct copy of the December 17 First American Letter is attached as **<u>Exhibit 12</u>**.

19.     On December 20, 2025, I received a letter on behalf of First American from the Lender, through its counsel, directed to counsel for the Guarantors in response to the Second December 16 Vedder Letter (the "<u>December 20 Hogan Letter</u>"). A true and correct copy of the December 20 Hogan Letter is attached hereto as **<u>Exhibit 13</u>**.

20.     Pursuant to sections 4(c) and 4(d)(i) of the Escrow Agreement, First American cannot release the Escrow Funds until it receives a joint written direction from the Lender and the Guarantors or a copy of a final unappealable order of a court of competent jurisdiction with respect to the distribution of the Escrow Funds. To date, First American has not received either.

21.     The letters from counsel for the Debtors, the Guarantors, and the Lender contain contradictory directions as to the disposition of the Escrow Funds, and it is apparent that a dispute exists regarding the disbursement of the Escrow Funds.

22.     Unless these conflicting and adverse claims to the Escrow Funds are disposed of in a single proceeding, First American  may be potentially subjected to multiple litigations and is at a substantial risk of suffering duplicate or inconsistent rulings on liability.

23.     Accordingly, on December 18, 2025, First American commenced the Interpleader Action to ensure that the Escrow Funds are properly distributed and to remove itself from the dispute.

24.     As of December 30, 2025, the Escrow Funds, in the amount of $1,637,500.00, continue to be held by First American in an escrow account. First American is ready and willing

to tender the Escrow Funds, less fees and expenses[2] due to First American, (the "<u>Interpleader Funds</u>") into the Court and to abide the judgment to be made and entered herein.

26.     Other than the unpaid fees and expenses owed to it under the Escrow Agreement, including those incurred with respect to this Interpleader Action, First American claims no beneficial interest in the Escrow Funds.

26.     First American offers, and is ready and willing, to tender the Interpleader Funds into the Court and to abide by the judgment to be made and entered herein.


*[Remainder of Page Intentionally Left Blank]*

---

[2]    Subject to attorney client protections, First American is prepared to submit invoices and/or other business records reflecting its current reasonable fees and expenses to the parties to the Escrow Agreement upon request. Likewise, as provided in the Proposed Order, in the event the Motion is granted, First American is prepared to submit to the parties to the Escrow Agreement and the Court invoices and/or other business records reflecting its total unpaid fees and expenses prior to final disposition of the Interpleader Funds.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on this 30th day of December 2025.

 /s/ Elizabeth T. Ferrick
Elizabeth T. Ferrick
*Counsel for First American Title Insurance Company*

## Exhibit 1

**Settlement Agreement**

# SETTLEMENT AND RELEASE AGREEMENT

**THIS SETTLEMENT AND RELEASE AGREEMENT** (this "**Agreement**"), dated August 7, 2025 (the "**Effective Date**") is entered into by and among (I) PARKVIEW FINANCIAL REIT, LP, a Delaware limited partnership having an office at 11440 San Vicente Boulevard, 2nd Floor, Los Angeles, California 90049, as administrative agent (in such capacity, together with its successors and assigns, "**Administrative Agent**") for itself (in such capacity as a Lender, the "**Parkview Lender**") and the other lenders from time to time a party to the Loan Documents (collectively, together with their successors and assigns, "**Lender**" or "**Lenders**"), (II) HUDSON 1702, LLC and HUDSON 1701/1706, LLC, each a Delaware limited liability company, having an office at 11440 San Vicente Boulevard, 2nd Floor, Los Angeles, California 90049 (collectively, "**Borrower**"), (III) CSC HUDSON LLC, a Delaware limited liability company having an office at c/o CSC RE, 459 Columbus Avenue, Unit #1082, New York, New York 10024 ("**Holdings**"), and (IV) ALBERTO SMEKE SABA and SALOMON SMEKE SABA, each a natural person (individually and collectively, as the context may require, and jointly and severally, "**Guarantor**" and Holdings and Guarantor, collectively, the "**Guarantor Parties**").

**WHEREAS**, Borrower, Lenders and Guarantor Parties (collectively, the "**Parties**"), as applicable, are parties to certain loan documents set forth on Exhibit A hereto (the "**Loan Documents**");

**WHEREAS**, the Parties have agreed to settle their respective claims upon the terms and conditions set forth herein, in order to avoid lengthy, costly, and time-consuming litigation and, and without any admission by any Party of liability or fault, or payment, whatsoever.

**NOW, THEREFORE**, in consideration of the foregoing, the mutual covenants and obligations contained herein and in exchange for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the Parties agree as follows:

1. **Capitalized Terms**. Capitalized terms not otherwise set forth herein have the meaning ascribed such terms in the Loan Documents.

2. **Covenants**.

a)        Within two (2) business days of the Effective Date (the "**Escrow Date**"), Guarantors and Lender shall deliver to First American Title Insurance Company (the "**Escrow Agent**") and to Lender and Guarantors, respectively, a copy of the escrow agreement in the form attached hereto as Exhibit "B" (the "**Escrow Agreement**") duly executed by such Party.

b)        Within two (2) business days of the Escrow Date, Guarantors shall deliver, or cause to be delivered, to the Escrow Agent four (4) duly executed and notarized counterpart signature pages from Hudson 1705, LLC, a Delaware limited liability company, together with an irrevocable authorization in favor of Administrative Agent and Borrower, in each case in form and substance attached hereto as Exhibit "C" (the "**Executed Counterparts**"), for Lender's and/or Borrower's attachment to a Waiver of Execution and Subordination to Cure Agreement (and to amendments thereto) to be submitted in connection with obtaining the Cure Approval and Lifting of the Stop Work Order (as such term is defined below) and shall deliver to Lender a copy of such Executed

Counterparts marked "draft". Such Executed Counterparts shall be held pursuant to the Escrow Agreement.

      c)      No later than two (2) business days following notice from the Escrow Agent confirming that Escrow Agent has received the Executed Counterparts, together with a copy of the Escrow Agreement executed by the Guarantors, Lender shall deposit an amount equal to $4,637,500.00 (the "**Cure Delivery Fee**") into the escrow account of the Escrow Agent in accordance with the wire instructions attached to the Escrow Agreement. Such Cure Delivery Fee shall be held pursuant to the Escrow Agreement. If Lender does not so deposit the Cure Delivery Fee into such escrow account by such date, the Escrow Agent shall return the Executed Counterparts to the Guarantors who shall return them to Hudson 1705, LLC, a Delaware limited liability company.

      d)      The Escrow Agreement shall provide that, within two (2) business days of the deposit of the Cure Delivery Fee into the escrow account, (x) the original Executed Counterparts shall be delivered to Lender, and (y) $3,000,000.00 of the Cure Delivery Fee shall be delivered to the Guarantors. The Escrow Agreement will further provide that, provided the Guarantors have not breached this Agreement as determined by a court of competent jurisdiction, the remainder of the Cure Delivery Fee shall be delivered to the Guarantors within five (5) business days of the earlier to occur of (x) receipt by Borrower of the Cure Approval and Lifting of the Stop Work Order and the New York City Department of Buildings (the "Department of Buildings") and each applicable agency, including the New York City Department of Buildings, granting all approvals, permits and licenses required to complete the construction and development of the Project, including, without limitation, giving effect to the J-1 Unit Zoning Conversion and (y) the date that is ninety (90) days after the Effective Date.

      As used herein the term "Cure Approval and Lifting of the Stop Work Order" means an agreement with New York City Department of Housing Preservation and Development ("HPD"), HPD's Inclusionary Housing Unit (the "IH Unit") and/or any other applicable authority, in such form as Administrative Agent shall approve, that cures the public record of any "Finding of Harassment" and that stipulates satisfaction of an "Affordability Requirement" that requires that a specified percentage of the residential or hotel floor area of the Project be rented to individuals earning at or below a specified percentage of the Area Median Income in perpetuity, and the term "J-1 Unit Zoning Conversion" means the issuance by the Department of Buildings and each other applicable agency, pursuant to applicable required documentation, of all required permits to permit construction of the Project with all of the non-SRO Units in the Property classified as "J-1" for purposes of Title 27 of the New York City Building Code (the "J-1 Zoned Units") being converted to residential apartment units classified as "R2" units for purposes of Title 27 of the New York City Building Code.

      e)      No later than ten days after the Effective Date, Guarantors shall deliver to Administrative Agent any and all drawings, plans, warranties, licenses, permits, approvals, registrations and other authorizations and similar or related documentation for the use, development or operation of the Property.

      f)      Guarantors agree to cooperate, as reasonably requested by Administrative Agent or Lender, including, without limitation by executing and delivering such instruments or documents, and taking such other action, as the Administrative Agent or Lender may reasonably request, in

connection with the transactions contemplated by this Agreement including, without limitation, obtaining the Cure Approval and Lifting of the Stop Work Order and obtaining the J-1 Unit Zoning Conversion.

**3.      Certain Additional Fees.**    Guarantors shall have the right, on behalf of the Borrower, for a period of ninety (90) days after the Effective Date, to negotiate and settle amounts claimed as payable to third parties relating to the Property and set forth on Exhibit "D" hereto (the "**Existing Obligations**"). Provided Guarantors comply in full with their obligations hereunder, including, without limitation, complying with the obligations set forth in Section 2 of this Agreement, then within ten (10) business days following the expiration of such ninety (90)-day period, fifty percent (50%) of agreed reductions in the Existing Obligations, as evidenced by binding settlement agreements releasing the applicable claims or liens, and removing the liens, if applicable, in form and substance reasonably acceptable to the Administrative Agent and, with respect to the removal of liens, the Title Insurer, executed and delivered by the applicable claimants on or prior to the expiration of such ninety (90)-day period, will be paid to Guarantors. For the avoidance of doubt, the Parties acknowledge and agree that the total amount of the Existing Obligations is the amounts listed in the column titled "Lien Amount" on the table included in Exhibit "D" and that reductions in the Existing Obligations shall be measured against such aggregate number (for the avoidance of doubt, no amounts listed in the column titled "Draw 3&5 Balance" on the table included as Exhibit "D" shall be included in such Existing Obligations).

**4.      Development Agreement.** Lender agrees that Guarantors may make a proposal for the terms and conditions of a "Property Management Agreement" and "Development Agreement" on which an affiliate of Guarantors would agree to manage the development of the Property, and Lender will review such proposal with proposals made by other parties to manage the development of the Property provided, however, that it is understood and agreed that in their sole discretion none of Administrative Agent, Lender or Borrower shall be under any obligation to select such affiliate of the Guarantors to manage the development of the Property or to negotiate, or enter into, the terms of any such Property Management Agreement or Development Agreement with Guarantors or any affiliate of the Guarantors.

**5.      Mutual Release.**

a)      Except for the agreements, obligations and covenants arising under this Agreement, effective upon the delivery by Lender to the Escrow Agent of the Cure Delivery Fee and a copy of the Escrow Agreement signed by Administrative Agent, the Guarantor Parties hereby release, waive, and forever discharge the Lender Parties and their successors in interest, and all past, present, and future assigns, officers, directors, employees, subsidiaries, affiliates, partners (known or unknown), insurers, underwriters, and attorneys, from any and all claims, demands, damages, losses, costs, expenses, fees, actions, agreements, promises, and debts, of every kind and character, whether asserted or unasserted, known or unknown, suspected or unsuspected, in law or in equity, for or by reason of any matter, cause, or thing whatsoever from the beginning of time related to the Loan Documents. In addition, nothing herein shall be deemed to be or operate as a discharge, waiver or release of a claim against any Lender for any damages arising from any fraud, misrepresentation or breach of this Agreement by Lender.

b)      Except for the agreements, obligations and covenants arising under this Agreement, effective upon the delivery by Guarantors to the Escrow Agent of the Executed Counterparts and

a copy of the Escrow Agreement signed by Guarantors, the Lenders hereby release, waive, and forever discharge the Guarantor Parties and their successors in interest, and all past, present, and future assigns, officers, directors, employees, subsidiaries, affiliates, partners (known or unknown), insurers, underwriters, and attorneys, from any and all claims, demands, damages, losses, costs, expenses, fees, actions, agreements, promises, and debts, of every kind and character, whether asserted or unasserted, known or unknown, suspected or unsuspected, in law or in equity, for or by reason of any matter, cause, or thing whatsoever from the beginning of time related to the Loan Documents. For the avoidance of doubt, any guarantees executed in connection with the Loan Documents shall be deemed terminated and of no further force or effect. Notwithstanding the foregoing, the Mortgage shall remain as a good and valid mortgage lien and it is agreed that the indebtedness of the Borrower has not been, nor shall it be deemed, cancelled or paid until such time as the Mortgage is released of record.  Notwithstanding the foregoing or any other provision in this Agreement to the contrary, in the event (A) Holdings or any Guarantor becomes the subject of any bankruptcy proceeding and such proceeding affects any of Administrative Agent's or any Lender's rights under this Agreement, (B) a court of competent jurisdiction determines that the Holdings or the Guarantor has perpetrated any fraud upon the Administrative Agent or Lenders or made any misrepresentation in this Agreement, or (C) the Holdings or any Guarantor breaches or defaults under this Agreement, then the release and covenants in this  Section 5(b) shall be null and void and of no further force or effect, and the Administrative Agent and Lenders shall have all rights at law or in equity with respect to each of  the guarantees executed in connection with the Loan Documents. In addition, nothing herein shall be deemed to be or operate as a discharge, waiver or release of a claim against any particular Guarantor for any damages arising from any fraud, misrepresentation or breach of this Agreement by any Guarantor.

6. **Mutual Non-Disparagement.**

a.      The Guarantor Parties agree that they will refrain from directly or indirectly making, causing to be made, publishing, ratifying, or endorsing any and all public disparaging remarks, derogatory statements, or comments with respect to Administrative Agent or  any of the Lenders.

b.      The Lenders agree that they will refrain from directly or indirectly making, causing to be made, publishing, ratifying, or endorsing any and all public disparaging remarks, derogatory statements, or comments with respect to any of the Guarantor Parties.

7.      **No Admission of Liability.** This Agreement shall not be construed as an admission of liability by any Party, and is limited to the terms and conditions contained in this Agreement.

8.      **Other Terms:**

a.      **Entire Agreement**.  This Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and there are no inducements, representations, warranties, or understandings that do not appear within the terms and provisions of this Agreement. This Agreement may be modified only by a writing signed by all Parties.

b.      **Joint Contribution and Drafting.** Each term of this Agreement is deemed to have been drafted jointly by the Parties and any uncertainty or ambiguity shall not be construed for or against either Party.

c.       **Costs and Attorneys' Fees.** Each party hereto shall pay its own costs and expenses, including legal fees, including, but not limited to, those incurred in negotiation, preparation and execution of this Agreement.

d.       **Severability**.  If any provision of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid, or unenforceable, the remaining provisions shall remain in full force and effect.

e.       **Counterparts.** This Agreement may be executed in any number of separate counterparts, each of which shall be deemed an original, but all of which, when taken together, shall constitute one agreement, which shall be binding upon and effective as to all of the parties. Signatures communicated electronically or by facsimile are permissible and enforceable.

f.       **No Waiver.** No waiver of any breach of any term or provision of this Agreement shall be construed to be, or shall be, a waiver of any other breach of this Agreement. No waiver shall be binding unless in writing and signed by the party or parties waiving the breach.

g.       **Section Headings.** The paragraph, section and article headings used in this Agreement are intended solely for convenience and reference and shall not in any manner amend, limit, modify, or otherwise be used in the interpretation of any of the provisions of this Agreement.

h.       **Successors.** This Agreement, along with its terms and conditions, shall be binding on and shall inure to the benefit of each of the parties and to their heirs, executors, administrators, successors-in-interest, assigns, directors, officers, employees, agents, partners, consultants, representatives, attorneys, insurers, and licensees, and shall survive any reorganization of any party.

i.       **Governing Law; Venue.** This Agreement shall be governed by and construed in accordance with the laws of the state of New York applicable to contracts to be wholly performed therein. The exclusive forum for any disputes arising out of or relating to this Agreement shall be an appropriate state or federal court situated in the state of New York.

[Signature Page to Follow]

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized, as of the date first above written.

BORROWER:

HUDSON 1702, LLC,
a Delaware limited liability company

By_____
    Name:   Ted Jung
    Title:    Authorized Signatory


HUDSON 1701/1706, LLC,
a Delaware limited liability company

By_____
    Name:   Ted Jung
    Title:    Authorized Signatory


HOLDINGS:

CSC HUDSON LLC,
a Delaware limited liability company

By_____
    Name:
    Title:

6

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized, as of the date first above written.

BORROWER:                                HUDSON 1702, LLC,
                                         a Delaware limited liability company


                                         By_____
                                             Name:
                                             Title:


                                         HUDSON 1701/1706, LLC,
                                         a Delaware limited liability company


                                         By_____
                                             Name:
                                             Title:


HOLDINGS:                                CSC HUDSON LLC,
                                         a Delaware limited liability company


                                         By_____
                                             Name:  **Alberto Smeke**
                                             Title: **Authorized Signatory**

GUARANTORS:

_____
ALBERTO SMEKE SABA

_____
SALOMON SMEKE SABA

## EXHIBIT A

### (List of Loan Documents)

Unless otherwise defined, capitalized terms have the definition ascribed such terms in the Loan Documents.

1.  Building Loan Agreement, dated as of May 4, 2022 (the "**Closing Date**"), by and among Borrower, Administrative Agent and Lender, as amended by Amendment to Building Loan Agreement dated as of May 1, 2023, the hereafter defined First Omnibus Amendment, the hereafter defined Second Omnibus Amendment, and the hereafter defined Third Omnibus Amendment, by and between Borrower and Administrative Agent (collectively, as so amended, the "**Building Loan Agreement**"),

2.  Building Loan Mortgage Note, dated as of the Closing Date, as amended, made by Borrower in favor of Parkview Financial REIT, LP, as a Lender and secured by that certain Building Leasehold Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing, dated as of the Closing Date and recorded on June 15, 2022 in the Office of the City Register of the City of New York under CRFN 2022000240500, as amended, by Borrower in favor of Administrative Agent for the benefit of Lenders (as so amended, the "**Building Loan Mortgage**")

3.  Project Loan Agreement, dated as of the Closing Date, as amended, by and among Borrower, Administrative Agent and  Lender, as amended by the hereinafter defined First Omnibus Amendment, and as further amended by the hereafter defined Second Omnibus Amendment, and the hereafter defined Third Omnibus Amendment (collectively, as so amended, the "**Project Loan Agreement**" and, together with the Building Loan Agreement, each individually a "**Loan Agreement**" and collectively, the "**Loan Agreements**

4.  Project Leasehold Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing, dated as of the Closing Date and recorded on June 15, 2022, in the Office of the City Register of the City of New York under CRFN 2022000240501, as amended, by Borrower in favor of Administrative Agent for the benefit of Lenders (the "**Project Loan Mortgage**" and, together with the Building Loan Mortgage, the "**Mortgages**").

5.  In connection with the Building Loan and Project Loan, Guarantor executed in favor of Administrative Agent for the benefit of Lenders a certain Guaranty, a certain Completion Guaranty and, together with Borrower, a certain Environmental Indemnity Agreement, each dated as of the Closing Date (each, a "**Guaranty**", and collectively, the "**Guaranties**").

6.  Pursuant to that certain Omnibus Amendment to Loan Documents dated as of May 1, 2023 among Administrative Agent, Lender, Borrower and Guarantor (the "**First Omnibus Amendment**"), the original Building Loan Mortgage Note was replaced by the Building Loan Note A and the Building Loan Note B (collectively, the "**Building Loan Note**"), as more particularly provided in the First Omnibus Amendment.

7.  Pursuant to the First Omnibus Amendment, the original Project Loan Mortgage Note was replaced by the Project Loan Note A and the Project Loan Note B (collectively, the "**Project Loan Note**" and, together with the Building Loan Note, the "**Notes**" and each, a "**Note**"), as more particularly provided in the First Omnibus Amendment

8.  Second Omnibus Amendment to Loan Documents dated as of May 10, 2024 (the "Second Omnibus Amendment").

9.  Third Omnibus Amendment to Loan Documents dated as of June 5, 2024 (the "Third Omnibus Amendment").

10. Agreement, dated as of April 10, 2025 (the "**Financial Agreement**"),  made and entered by and among  Administrative Agent, Lenders, Borrower, Holdings, Guarantor and, for the specified purposes set forth therein, 356W58 Ground Lessor LLC.

11. The Loan Agreements, the Notes, the Mortgages, the Guaranties, and the Financial Agreement together with the documents included within the definition of Loan Documents (as such term is defined in the Loan Agreement) are collectively referred to as the "Loan Documents".

**<u>Exhibit 2</u>**

**Escrow Agreement**

## ESCROW AGREEMENT

THIS ESCROW AGREEMENT (this "<u>Agreement</u>") is made and entered into as of this 7th day of August, 2025  (the "<u>Effective Date</u>"), by and among PARKVIEW FINANCIAL REIT, LP, a Delaware limited partnership, as administrative agent (in such capacity, together with its successors and assigns, "<u>Administrative Agent</u>") for itself and the other lenders from time to time  party to the Loan Documents (as such term is defined in that certain Building Loan Agreement, dated as of May 4, 2022, as amended, by and among Borrower, Administrative Agent and the Lenders)  (collectively, together with their successors and assigns, "<u>Lenders</u>"), Hudson 1702, LLC and Hudson 1701/1706, LLC, each a Delaware limited liability company (collectively, "<u>Borrower</u>"), CSC HUDSON LLC, a Delaware limited liability company having an office at c/o CSC RE, 459 Columbus Avenue, Unit #1082, New York, New York 10024 ("<u>Holdings</u>"), Alberto Smeke Saba and Salomon Smeke Saba, each a natural person (individually and collectively, as the context may require, and jointly and severally, "<u>Guarantor</u>"; and together with Holdings, individually and collectively as the context may require, "<u>Guarantor Parties</u>"), and FIRST AMERICAN TITLE INSURANCE COMPANY, as escrow agent (the "<u>Escrow Agent</u>"; and, together with each of Administrative Agent and the Guarantor Parties, each, a "<u>Party</u>").

## RECITALS

WHEREAS, Administrative Agent,  Borrower and Guarantor Parties are parties to that certain Settlement and Release Agreement, dated as of the Effective Date (the "<u>Settlement Agreement</u>") (All initial capitalized terms used, but not defined, in this Agreement shall have the meanings set forth in the Settlement Agreement);

WHEREAS, the Settlement Agreement provides *inter alia*, that the Guarantor shall deliver into escrow with the Escrow Agent four (4) executed counterpart signature pages (the "<u>Executed Counterparts</u>"), from Hudson 1705, LLC, a Delaware limited liability company, together with an irrevocable authorization in favor of Administration Agent, in each case in form and substance attached as Exhibit "C" to the Settlement Agreement for Lender's and/or Borrower's attachment to a Waiver of Execution and Subordination to Cure Agreement, and amendments thereto,  and that such Executed Counterparts shall be held and disbursed in accordance with the terms hereof;

WHEREAS, pursuant to Section 2(c) of the Settlement Agreement, following Guarantor's delivery of the Executed Counterparts to the Escrow Agent and the delivery of a copy of the Executed Counterparts to the Administrative Agent marked "draft", Administrative Agent shall deposit an amount equal to $4,637,500.00 (the "Escrow Funds") into the escrow account of the Escrow Agent  in accordance with the wire instructions attached hereto, and that such escrowed amount shall be held and disbursed in accordance with the terms hereof;

WHEREAS, Escrow Agent is willing to hold and disburse such Executed Counterparts and Escrow Funds pursuant to the terms of this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants set forth in this Agreement and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto hereby agree as follows:

1.    <u>Deposit of Executed Counterparts and Escrow Funds; Appointment of Escrow Agent; Escrow Account.</u>

(a)     By its execution and delivery of this Agreement to the other Parties, Guarantor hereby agrees that, within two (2) business days of the Effective Date, Guarantor will deliver to Escrow Agent four (4) Executed Counterparts (including, for the avoidance of doubt the irrevocable authorization attached thereto) to be held pursuant to the terms of this Agreement and Guarantor shall also deliver to Lender copies of the Executed Counterparts marked "draft".  Upon receipt of the Executed Counterparts, Escrow Agent will send to Guarantor and Administrative Agent by email scanned copies of the documents received by the Escrow Agent (such scanned copies of such documents to be marked "Draft-Not For Use" by the Escrow Agent) to confirm that such documents constitute the Executed Counterparts that Guarantor is required to deliver pursuant to this Agreement.  Within two (2) business days of receipt of such scanned documents, Administrative Agent will reply to such email and confirm whether or not such documents constitute the Executed Counterparts that Guarantor is required to deliver pursuant to this Agreement.  If Administrative Agent shall state that such documents do not constitute the Executed Counterparts that Guarantor is required to deliver pursuant to this Agreement, Guarantor shall deliver to Escrow Agent four (4) Executed Counterparts (including, for the avoidance of doubt the irrevocable authorization attached thereto) required to be delivered hereunder to be held pursuant to the terms of this Agreement and Guarantor shall also deliver to Lender copies of the Executed Counterparts marked "draft", and the forgoing approval process shall be repeated until Administrative Agent does confirm that the documents delivered to the Escrow Agent the Executed Counterparts that Guarantor is required to deliver pursuant to this Agreement.

(b)     By its execution and delivery of this Agreement to the other Parties, Administrative Agent hereby agrees that, within two (2) business days after Administrative Agent has confirmed that the documents received by the Escrow Agent (and the copies thereof received by the Administrative Agent marked "draft") constitute the Executed Counterparts required to be delivered by the Guarantor to the Escrow Agent pursuant to this Agreement, Lender shall deposit the Escrow Funds into the escrow account of the Escrow Agent  in accordance with the wire instructions attached hereto. Such Escrow Funds shall be held pursuant to this Agreement. If Lender does not so deposit the Escrow Funds into such escrow account by such date, the Escrow Agent shall return the Executed Counterparts to the Guarantors. Upon written request by a Party at any time not more than once per month, Escrow Agent shall confirm via email only to all Parties the amount of Escrow Funds then on deposit with Escrow Agent pursuant to this Agreement.

(c)     Administrative Agent, Lender Borrower, and Guarantor Parties each hereby appoint Escrow Agent as the escrow agent pursuant to the terms of this Agreement and Escrow Agent hereby accepts said appointment pursuant to the express terms, conditions and provisions of this Agreement and agrees to act in accordance with such terms, conditions and provisions of this Agreement with respect to the Escrow.

(d)     Upon the receipt by Escrow Agent of Borrower's W9, Escrow Agent shall hold the Escrow Funds in a separate escrow account at Bank of America, N.A. (the "Escrow Account"), and shall not commingle the Escrow Funds with any other third-party deposits or its own funds. The Party providing the W9 shall receive a 1099 for the interest regardless of which Party actually receives the interest.

2.      Investment of Escrow Funds. All interest and other amounts earned on the Escrow Funds, or portion thereof, shall be paid to Borrower.

3.      Term.

(a)    The obligations of Escrow Agent under this Agreement shall terminate on the complete disbursement of the Escrow Funds in accordance with the terms of this Agreement

(b)    Upon the termination of this Agreement, in accordance with this Section 3, Escrow Agent shall be relieved from all duties, obligations, liabilities and responsibilities hereunder other than those that accrued prior to such termination.

4.    Delivery of Executed Counterparts; Disbursement of Escrow Funds.

(a)    Delivery of Executed Counterparts. No later than two (2) business days following deposit of the Escrow Funds with the Escrow Agent, Escrow Agent shall, without any further action by any Party being required, deliver all the Executed Counterparts to Administrative Agent.

(b)    Initial Disbursement of Escrow Funds. Within two (2) business days following delivery of the Executed Counterparts to Lender, a portion of the Escrow Funds equal to $3,000,000.00 shall be disbursed to the Guarantors.

(c)    Disbursement Pursuant to Joint Instructions. If at any time Escrow Agent shall receive (x) a joint written direction signed by Administrative Agent and Guarantor authorizing and directing disbursement of the Escrow Funds or any portion, Escrow Agent shall disburse the Escrow Funds (or such portion thereof) as so directed within one (1) business day of receipt of such joint written direction.

(d)    Disbursement Pursuant to a Claim Notice from Guarantor. If Guarantor is entitled to receive the remainder of the Escrow Funds or a portion thereof pursuant to the Settlement Agreement, Guarantor (in such capacity, the "Requesting Party") may provide written notice to Escrow Agent that Guarantor is entitled to receive the Escrow Funds or a portion thereof pursuant to the Settlement Agreement (such notice the "Claim Notice") and that the Escrow Funds (or portions thereof) be distributed in accordance with the instructions given in such Claim Notice. Escrow Agent shall provide written notice (the "Receipt Notice") to the other Parties (each, a "Confirming Party") of its receipt of such Claim Notice (together with a copy of the Claim Notice) no later than one (1) business day after its receipt of such Claim Notice, provided such written notice may be delivered to the Parties via email in accordance with Section 9(b).

(i)    If any Confirming Party disputes that the Requesting Party is entitled to receive the Escrow Funds or the portion thereof so requested, the Confirming Party shall provide written notice to Escrow Agent within ten (10) business days after its receipt of the Receipt Notice disputing that the Requesting Party is entitled to receive the Escrow Funds (a "Dispute Notice"). For the avoidance of doubt, any delivery of a notice that Guarantor has breached the Settlement Agreement shall be deemed delivery of a Dispute Notice in accordance with this Section 4(d)(i). If Escrow Agent has not received a Dispute Notice from any Confirming Party within such ten (10) business day period, Escrow Agent shall deliver a second Receipt Notice to the Parties (which second Receipt Notice shall state at the top thereof, in bold and capitalized letters, "EACH PARTY'S FAILURE TO RESPOND TO THIS NOTICE MAY RESULT IN A DEEMED APPROVAL OF DISBURSEMENT OF ESCROW FUNDS") and if each Confirming Party fails to respond to such second Receipt Notice within five (5) business days after receipt of such second Receipt Notice, each Confirming Party shall be deemed to have authorized the disbursement set forth in the Claim Notice, and Escrow Agent shall disburse the Escrow Funds (or the portion thereof so requested) pursuant to the instructions set forth in the Claim Notice. If Escrow Agent receives a Dispute Notice within such ten (10) business day period (or the additional five (5) business day period following delivery of a second Receipt Notice), Escrow Agent shall deliver a copy of such Dispute Notice to each of the other Parties and shall retain the Escrow Funds in the Escrow Account pending receipt of a joint written

3

direction signed by each of Administrative Agent and Guarantor authorizing the disbursement of the Escrow Funds, or a copy of a final decision of an arbitrator or final unappealable order of a court of competent jurisdiction with respect to distribution of the Escrow Funds. Notwithstanding the foregoing, if Escrow Agent receives contrary written directions from Administrative Agent or Guarantor or no written directions by the Termination Date, Escrow Agent shall have the right to deposit the Escrow Funds with any court of competent jurisdiction in New York and interplead Administrative Agent and Guarantor. Upon depositing the Escrow Funds and filing its complaint in interpleader, Escrow Agent shall be released from all liability under this Agreement regarding the Escrow Funds, except as otherwise expressly provided in this Agreement.

5.    Escrow Fees. All fees, costs and expenses of the Escrow Agent with respect to the escrow established pursuant to this Agreement (if any, the "Escrow Fees") shall be shared equally between Administrative Agent and Guarantor. All such Escrow Fees shall be due and payable upon the initial deposit of any Escrow Funds with Escrow Agent pursuant to this Agreement. Escrow Agent's fee is $1,500.

6.    Compliance with Court Orders. Each of the Parties hereby acknowledges that Escrow Agent may accept, obey and comply with any and all writs, orders, judgments or decrees issued or entered by any court with or without jurisdiction (a "Court Order"), in which case, notwithstanding anything to the contrary in this Agreement, Escrow Agent shall not be liable to any Party by reason of such acceptance, obedience or compliance, regardless of whether such Court Order is subsequently reversed, modified, annulled, set aside or vacated.

7.    Release and Indemnification.

(a)    The Parties hereby release Escrow Agent and its officers, managers, employees and agents (each, an "Escrow Agent Party"), for any liability, damage, loss, cost or expense incurred by such Escrow Agent Party to the extent resulting from (i) any action taken or not taken in good faith upon advice of Escrow Agent's counsel given with respect to any questions relating to its obligations under this Agreement, or (ii) any action taken or not taken in reliance upon any document, including any written notice provided to Escrow Agent pursuant to this Agreement, as to the due execution and the validity and effectiveness of such document, and the truth and accuracy of any information contained therein, which such Escrow Agent Party in good faith believes to be genuine, to have been signed or presented by a duly authorized person or persons and to comply with the terms of the Settlement Agreement and this Agreement, except to the extent resulting from the gross negligence, willful default or intentional misconduct by any Escrow Agent Party. Administrative Agent, Borrower, Holdings and Guarantor, jointly and severally, shall indemnify and hold harmless any Escrow Agent Party against any liability, damage, loss, cost or expense, including, without limitation, reasonable attorneys' fees and court costs, incurred by such Escrow Agent Party to the extent resulting from the performance by any Escrow Agent Party of Escrow Agent's obligations under this Agreement, except to the extent resulting from the gross negligence, willful default or intentional misconduct by such Escrow Agent Party.

(b)    It is agreed by and among the Parties that:

(i)    the duties of Escrow Agent are only as herein specifically provided and are purely ministerial in nature, and Escrow Agent shall incur no liability whatever except for willful misconduct (including, without limitation, willful disregard of the terms of this Agreement) or gross negligence, as long as Escrow Agent has acted in good faith;

(ii)    in the performance of its duties hereunder, Escrow Agent shall be entitled to rely upon any document, instrument or signature believed by it to be genuine and signed by Landlord, Tenant or their respective successors;

4

(iii)    Escrow Agent may assume that any person on behalf of any Party purporting to give any notice of instructions in accordance with the provisions hereof has been duly authorized to do so;

(iv)    Escrow Agent shall not be bound by any modification, cancellation or rescission of this Agreement unless in writing and signed by it and the Parties;

(v)    Escrow Agent is acting as a stake-holder only with respect to the Escrow. Upon making delivery of all of the Escrow in the manner provided in this Agreement, Escrow Agent shall have no further liability hereunder, except from any claims arising out of the gross negligence or willful misconduct (including, without limitation, willful disregard of the terms of this Agreement) by Escrow Agent in the performance of its duties hereunder.

(c)    By execution of this Agreement, Escrow Agent hereby acknowledges and agrees that notwithstanding anything to the contrary contained in this Agreement, Escrow Agent shall not release any Escrow Funds except in accordance with the express provisions of this Agreement.

(d)    In addition to any other indemnification of Escrow Agent contained herein, in the event that Escrow Agent incurs any actual, third-party out-of-pocket costs or expenses hereunder, including, without limitation, costs of Escrow Agent, then Escrow Agent shall be entitled to reimbursement for such costs from the Tenant Parties within thirty (30) days after receipt of demand from Escrow Agent (provided that Escrow Agent shall provide the Tenant Parties copies of bills, invoices, receipts or other documentation that evidences the reimbursement amount).

8.    <u>Relationship of Parties</u>. Administrative Agent and Guarantor Parties acknowledge and agree that Escrow Agent is acting solely as a stakeholder at their request, and that Escrow Agent shall not be deemed to be the agent of any of Administrative Agent or any Guarantor Party.

9.    <u>Notices</u>.  Except as otherwise provided for herein, all notices, approvals, consents and other communications required or permitted hereunder shall be in writing and shall be deemed to have been duly given or sent (a) upon the date delivered, if delivered by hand, or (b) upon the date of delivery, if delivered by electronic mail (provided that, within three (3) business days after delivery by electronic mail, the Party delivering the notice sends a copy of such notice by at least one other method of delivery set forth in this paragraph), or (c) one (1) business day after deposit with a nationally recognized overnight courier service with next business day delivery specified and requires delivery confirmation, in each case to the party intended at its address as follows (or at such other address as may hereafter be specified by such party from time to time by like notice):

If to Administrative Agent or Lender:

Parkview Financial REIT, LP
11440 San Vicente Boulevard, 2nd Floor
Los Angeles, CA 90049
Attention:  Paul Rahimian and Ted Jung
Email: paul@parkviewfinancial.com
      ted@ parkviewfinancial.com

With a copy to:    DLA Piper LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, New York 10020
Attention:  Neal E. Kronley, Esq.

1622241653.7

E-mail: Neal.Kronley@us.dlapiper.com

| | |
|---|---|
| If to Borrower: | Hudson 1702, LLC<br>Hudson1701/1706,LLC<br>c/o Parkview Financial REIT, LP<br>11440 San Vicente Boulevard, 2nd Floor<br>Los Angeles, CA 90049<br>Attention: Paul Rahimian and Ted Jung<br>Email: paul@parkviewfinancial.com<br>          ted@ parkviewfinancial.com |
| With a copy to: | DLA Piper LLP (US)<br>1251 Avenue of the Americas, 27th Floor<br>New York, New York 10020<br>Attention: Neal E. Kronley, Esq.<br>E-mail: Neal.Kronley@us.dlapiper.com |
| If to Holdings: | CSC Hudson LLC<br>459 Columbus Avenue, Unit #1082<br>New York, New York 10024<br>Attention: Alberto Smeke Saba and Salomon Smeke Saba<br>Email: as@cscre.us and ss@cscre.us |
| With a copy to: | Vedder Price P.C.<br>1633 Broadway, 31st Floor<br>New York, New York 10019<br>Attention: Robert Salame, Esq.<br>Email: rsalame@vedderprice.com |
| If to Guarantor: | Alberto Smeke Saba<br>Salomon Smeke Saba<br>459 Columbus Avenue, Unit #1082<br>New York, New York 10024<br>Attention: Alberto Smeke Saba and Salomon Smeke Saba<br>Email: as@cscre.us and ss@cscre.us |
| With a copy to: | Vedder Price P.C.<br>1633 Broadway, 31st Floor<br>New York, New York 10019<br>Attention: Robert Salame, Esq.<br>Email: rsalame@vedderprice.com |
| If to Escrow Agent: | First American Title Insurance Company<br>666 Third Avenue<br>New York, NY 10017<br>Attention: Andrew Jaeger<br>Email: ajaeger@firstam.com<br>Tel: 212-551-9433<br>Reference Number: 1272624 |

6

The giving of any notice required hereunder may be waived in writing by the Party entitled to receive such notice. No failure or delay in the routing of any such notice, demand, request, consent, approval, declaration or other communication within any organization to the individual designated to receive the same or a copy thereof shall in any way qualify the effectiveness of such notice, demand, request, consent, approval, declaration or other communication.

10.     Assignment. None of Administrative Agent, Borrower, Holdings or Guarantor shall assign any of its rights, or delegate any of its obligations, in this Agreement, without the prior written consent of the other Party. Escrow Agent shall not, directly or indirectly, assign any of its rights, or delegate any of its obligations, in this Agreement, without the prior written consent of each other Party hereto.

11.     Successors and Assigns; Third Party Beneficiaries. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns pursuant to this Section 11. This Agreement shall not confer any rights or remedies upon any Person other than the Parties any their respective successors and permitted assigns pursuant to Section 11.

12.     Conflict with Settlement Agreement. If any of the terms or provisions of this Agreement conflict with, or are inconsistent with, any terms or provisions of the Settlement Agreement, the terms and provisions of this Agreement shall control.

13.     Governing Law; Severability. This Agreement shall be governed by the laws of the State of New York. If any term or provision of this Agreement is held to be or rendered invalid or unenforceable at any time in any jurisdiction, such term or provision shall not affect the validity or enforceability of any other terms or provisions of this Agreement, or the validity or enforceability of such affected terms or provisions at any other time or in any other jurisdiction.

14.     Jurisdiction; Venue. Any litigation or other court action regarding this Agreement shall be conducted in the New York State Supreme Court in New York County or the United States District Court for the Southern District of New York, in the State of New York, and each Party hereby submits to jurisdiction and consents to venue in such courts.

15.     Waiver of Trial by Jury. Each Party hereby waives its right to a trial by jury in any action or proceeding by any Party against any other Party with respect to any matter arising from or in connection with this Agreement.

16.     Prevailing Party. If any litigation or other court action, arbitration or similar adjudicatory proceeding is undertaken by any Party to enforce its rights under this Agreement, all fees, costs and expenses, including, without limitation, reasonable attorneys' fees and court costs, of the prevailing Party in such action, suit or proceeding shall be reimbursed or paid by the Party against whose interest the judgment or decision is rendered. This Section 16 shall survive the termination of this Agreement. This Section 16 shall not apply to Escrow Agent.

17.     Recitals. The recitals to this Agreement are incorporated herein by such reference and made a part of this Agreement.

18.     Entire Agreement; Amendments to Agreement. This Agreement sets forth the entire understanding and agreement of the Parties hereto, and shall supersede any other agreements and understandings (written or oral) between or among the Parties on or prior to the date of this Agreement with respect to the transaction contemplated in this Agreement. No amendment or modification to any terms of this Agreement, waiver of any covenant, obligation, breach or default under this Agreement or termination of this Agreement (other

7

than as expressly provided in this Agreement), shall be valid unless in writing and executed and delivered by each of the Parties.

19.     PDF; Counterparts. A Party may deliver executed signature pages to this Agreement by e-mail transmission of a PDF file containing such pages to any other Parties, which PDF copy shall be deemed to be an original executed signature page. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which counterparts together shall constitute one agreement with the same effect as if the Parties had signed the same signature page.

*[Remainder of page intentionally left blank;*
*signatures on following pages.]*

8

IN WITNESS WHEREOF, Administrative Agent, Borrower, Holdings. Guarantor and Escrow Agent have caused this Agreement to be executed and delivered in their names by their respective duly authorized officers or representatives as of the Effective Date.

ADMINISTRATIVE AGENT:
PARKVIEW FINANCIAL REIT, LP,
a Delaware limited partnership

By:   Parkview Financial Fund GP, Inc.,
      a California corporation,
      its general partner

      By: _____
      Name:   Ted Jung
      Title:   Chief Credit Officer

BORROWER:

HUDSON 1702, LLC,
a Delaware limited liability company

By:_____
   Name:   Ted Jung
   Title:   Authorized Signatory

HUDSON 1701/1706, LLC,
a Delaware limited liability company

By:_____
   Name:   Ted Jung
   Title:   Authorized Signatory

8

HOLDINGS:

CSC HUDSON LLC,
a Delaware limited liability company

By_____

   Name: **Alberto Smeke**
   Title: **Authorized Signatory**

GUARANTORS:

_____
ALBERTO SMEKE SABA

_____
SALOMON SMEKE SABA

9

ESCROW AGENT:

FIRST AMERICAN TITLE INSURANCE COMPANY

By: _____

Name: Andrew D. Jaeger
Title:  Vice President

11

<u>Exhibit A</u>

<u>Wire Instructions</u>



First American Title Insurance
Company National Commercial
Services
666 Third Avenue, 5th Floor
New York, NY 10017

# INCOMING WIRE INSTRUCTIONS

**BENEFICIARY NAME:**     First American Title Insurance Company National Commercial Services
**BENEFICIARY ADDRESS:** 666 Third Avenue, 5th Floor, New York, NY 10017
**BANK NAME:**            First American Trust-Santa Ana
**ADDRESS:**              5 First American Way, Santa Ana, CA 92707
**BANK ACCOUNT NO.:**     3023140000
**ROUTING NUMBER:**       122241255
**SWIFT Code:**           FATUUS66

PLEASE REFERENCE THE FOLLOWING:
**PROPERTY:**       Hudson Hotel,  New York, NY
**FILE NUMBER:**    3020-1272624 ()

## Failure to reference all of the above information may result in a delay of your funds being applied to your file.

**PLEASE NOTE:** With cybercrimes on the increase, it is important to be ever vigilant. If you receive an e-mail or any other communication that appears to be generated from a First American employee that contains new, revised or altered bank wire instructions, consider it suspect and call our office at a number you trust. Our bank wire instructions rarely change.

**If funds are coming from other than buyer, seller or Lender please contact your Escrow Officer before remitting for additional requirements**

**ACH Transfers are NOT wire transfers:** An ACH transfer is not immediately available funds and requires additional time for clearance. An ACH transfer cannot be confirmed for earnest money, additional funds due in connection with your transaction or closing funds until the ten business day clearance period has expired. The acceptance of ACH transfers is subject to state law.

Contact our office at ,  before remitting such a transfer for more details.

Contact our office at ,  when funds are sent.

**In the event funds are received after 2:30 PM (Pacific Time), we cannot guarantee funding by close of business that day. The Company will not be responsible for additional interest, penalties, fees, or charges that may be due.**

<u>**Exhibit 3**</u>

**November 3 DLA Letter**



**DLA Piper LLP (US)**
1251 Avenue of the Americas
27th Floor
New York, New York 10020-1104
www.dlapiper.com

Neal Kronley
Neal.Kronley@us.dlapiper.com
T   212.335.4584
F   917.778.8584

November 3, 2025

*VIA OVERNIGHT MAIL AND EMAIL*

**First American Title Insurance Company**
666 Third Avenue
New York, New York 10017
Attention: Andrew Jaeger
Email:   ajaeger@firstam.com

Re:      **August 7, 2025 Escrow Agreement – Hudson Hotel**

Dear Mr. Jaeger:

On October 22, 2025, Hudson 1701/1706, LLC and Hudson 1702, LLC (each, a "Debtor" and together, the "Debtors") filed voluntary petitions for relief (each such voluntary petition concerning a "Chapter 11 Case" and, collectively, the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code, 11. U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware.  This firm is proposed special litigation and corporate counsel to the Debtors.

Reference is made to that certain *Escrow Agreement* dated August 7, 2025 (the "Escrow Agreement"), by and among Parkview Financial REIT, LP ("Administrative Agent" or "Lender"), Debtors, CSC Hudson LLC ("Holdings"), Alberto Smeke Saba and Salomon Smeke Saba (collectively, "Guarantor"), and First American Title Insurance Company ("Escrow Agent"). The Escrow Agreement was made in conjunction with that certain *Settlement and Release Agreement* dated August 7, 2025, by and among Administrative Agent, Debtors, Holdings, and Guarantor (the "Settlement Agreement").[1]

Pursuant to Section 2(c) of the Settlement Agreement, Lender deposited $4,637,500 (the "Cure Delivery Fee") into the escrow account of the Escrow Agreement. Escrow Agent was directed to deliver $3,000,000 of the Cure Delivery Fee upon execution of the Settlement and Release Agreement. Section 2(d) provides that the remainder of the Cure Delivery Fee is to be disbursed as follows:

---

[1] Capitalized terms not otherwise defined have the meaning provided to them in the Settlement and Release Agreement.



November 3, 2025
Page Two

> The Escrow Agreement will further provide that, provided the Guarantors have not breached this Agreement as determined by a court of competent jurisdiction, the remainder of the Cure Delivery Fee shall be delivered to the Guarantors within five (5) business days of the earlier to occur of (x) receipt by [Debtors] of the Cure Approval and Lifting of the Stop Work Order and the New York City Department of Buildings (the "Department of Buildings") and each applicable agency including the New York City Department of Buildings, granting all approvals, permits and licenses required to complete the construction and development of the Project, including, without limitation, giving effect to the J-1 Unit Zoning Conversion and (y) the date that is ninety (90) days after the Effective Date.

Pursuant to Section 4(d)(i) a Confirming Party (including, Debtors), has ten (10) business days after receipt of a Receipt Notice from Escrow Agent that it is in receipt of a Claim Notice from a Requesting Party, to deliver a Dispute Notice to Escrow Agent. If Escrow Agent does not receive a Dispute Notice in that period, it is required to deliver a second Receipt Notice. A Confirming Party has five (5) business days after receipt of such Second Notice to submit a Dispute Notice. Otherwise, the Claim Notice is deemed authorized by the Confirming Parties and Escrow Agent shall disburse the Escrow Funds (or portion thereof requested).

Pursuant to Section 108(b) of the of the Bankruptcy Code (11 U.S.C. § 108), if an agreement fixes a time period within which the debtor "may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure or perform, as the case may be, before the later of—(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) 60 days after the order for relief."

PLEASE TAKE NOTICE that Section 108(b) operates to toll the time periods in the Escrow Agreement under which the Debtors are required to submit a Dispute Notice after receipt of the original or second Receipt Notice, as such time periods were not expired prior to October 22, 2025.

PLEASE TAKE FURTHER NOTICE that Debtors hereby instruct Escrow Agent to refrain from disbursing any Escrow Funds whether or not it is in receipt of a Claim Notice or Dispute Notice unless and until it receives joint written instructions to do so from all Parties to the Escrow Agreement.



November 3, 2025
Page Three

Debtors reserve all rights, remedies, and cause of action under the Settlement Agreement and Escrow Agreement and waive none. We are available to discuss if you have any questions.

Sincerely,

**DLA Piper LLP (US)**

**Proposed Special Corporate and Litigation Counsel to the Debtors**

Neal Kronley

NK


CC:

Pual Rahimian – paul@parkviewfinancial.com
Ted Jung – ted@parkviewfinancial.com
Stuart Brown – stuart.brown@us.dlapiper.com
Alberto Smeke Saba – as@cscre.us
Salomon Smeke Saba – ss@cscre.us
Roberto Salame – rsalame@vedderprice.com
Alan Tantleff – alan.tantleff@fticonsulting.com
Rick Wynne – richard.wynne@hoganlovells.com

**Exhibit 4**

**November 14 Vedder Letter**



November 14, 2025

**BY E-MAIL AND FEDERAL EXPRESS OVERNIGHT DELIVERY**

**FIRST AMERICAN TITLE INSURANCE COMPANY**
666 Third Avenue
New York, New York 10017
Attention: Andrew Jaeger
Email: ajaeger@firstam.com
Reference Number: 1272624

Re:  Claim Notice – Reference Number 1272624

Dear Mr. Jaeger:

This letter is being sent on behalf of Salomon Smeke Saba and Alberto Smeke Saba, each a natural person (individually and collectively, as the context may require, the "Guarantor"), in connection with that certain Escrow Agreement dated August 7th, 2025, made by and among PARKVIEW FINANCIAL REIT, LP, a Delaware limited partnership, as administrative agent (in such capacity, together with its successors and assigns, "Administrative Agent") for itself and the other lenders from time to time party to the Loan Documents (as such term is defined in that certain Building Loan Agreement, dated as of May 4, 2022, as amended, by and among Borrower, Administrative Agent and the Lenders) (collectively, together with their successors and assigns, "Lenders"), Hudson 1702, LLC and Hudson 1701/1706, LLC, each a Delaware limited liability company (collectively, "Borrower"), CSC HUDSON LLC, a Delaware limited liability company having an office at c/o CSC RE, 459 Columbus Avenue, Unit #1082, New York, New York 10024 ("Holdings"), and Guarantor (Guarantor, together with Holdings, individually and collectively as the context may require, "Guarantor Parties"), and FIRST AMERICAN TITLE INSURANCE COMPANY, as escrow agent (the "Escrow Agent"; and, together with each of Administrative Agent and the Guarantor Parties, each, a "Party").

Please be advised that the Guarantor is entitled to receive the remainder of the Escrow Funds (i.e., $1,637,500.00). Please distribute the Escrow Funds to the Guarantor pursuant to the wiring instructions attached hereto as Exhibit A..

Nothing contained herein shall be deemed or construed as a waiver, release, modification, compromise, admission, or limitation of any of the Guarantor's rights, claims, remedies, or defenses, whether legal or equitable, all of which are expressly preserved and fully reserved.

Sincerely,

Vedder Price P.C.

By:    /s/ Robert Salame
            Robert Salame

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, Vedder Price Pte. Ltd., which operates in Singapore, and Vedder Price (FL) LLP, which operates in Florida.
VP/#72893490.1



## <u>EXHIBIT A</u>

- Bank: JP Morgan Chase Bank, N.A
- Account Number: 519737297
- Routing Number: 021000021
- Account Address: 6 Saint Johns Ln, New York, NY, 10013-2115

1633 Broadway, 31st Floor  | New York, New York 10019  |  T +1 212 407 7700  |  F +1 212 407 7799

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, Vedder Price Pte. Ltd., which operates in Singapore, and Vedder Price (FL) LLP, which operates in Florida.
VP/#72893490.1

## <u>Exhibit 5</u>

**December 4 First American Letter**

**DENTONS**

**Elizabeth Teutenberg Ferrick**

elizabeth.ferrick@dentons.com
D    +1 314-259-5910

Dentons US LLP
101 South Hanley Road
Suite 600
St. Louis, MO  63105-3435
United States

dentons.com

December 4, 2025

Parkview Financial REIT, LP
11440 San Vicente Boulevard, 2nd Floor
Los Angeles, CA 90049
Attention: Paul Rahimian and Ted Jung

Hudson 1702, LLC
Hudson 1701/1706, LLC
c/o Parkview Financial REIT, LP
11440 San Vicente Boulevard, 2nd Floor
Los Angeles, CA 90049
Attention: Paul Rahimian and Ted Jung

CSC Hudson LLC
459 Columbus Avenue, Unit #1082
New York, New York 10024
Attention: Alberto Smeke Saba and Salomon Smeke Saba

Alberto Smeke Saba
Salomon Smeke Saba
459 Columbus Avenue, Unit #1082
New York, New York 10024
Attention: Alberto Smeke Saba and Salomon Smeke Saba

Re:       **Notice Pursuant to August 7, 2025 Escrow Agreement**

Dear Messrs. Rahimian, Jung, Smeke Saba, and Smeke Saba:

Reference is made herein to (i) that certain Escrow Agreement dated August 7, 2025 (the "Escrow Agreement"), by and among Parkview Financial REIT, LP ("Administrative Agent" or "Lender"), Hudson 1701/1706, LLC and Hudson 1702, LLC (collectively, "Borrower"), CSC Hudson LLC ("Holdings"), Alberto Smeke Saba and Salomon Smeke Saba (collectively, "Guarantor"), and First American Title Insurance Company ("Escrow Agent"); (ii) Letter dated November 3, 2025 from Neal Kronley of DLA Piper LLP (US) on behalf of Borrower (the "DLA Letter"); and (iii) Letter dated November 14, 2025 from Robert Salame of Vedder Price P.C. on behalf of Guarantor (the "Vedder Letter"). Copies of the Escrow Agreement, the DLA Letter and Vedder Letter are attached hereto as Exhibits A, B, and C.

**DENTONS**

dentons.com

December 4, 2025
Page 2

Pursuant to Section 4(d) of the Escrow Agreement:

> If Guarantor is entitled to receive the remainder of the Escrow Funds or a portion thereof pursuant to the Settlement Agreement, Guarantor (in such capacity, the "Requesting Party") may provide written notice to Escrow Agent that Guarantor is entitled to receive the Escrow Funds or a portion thereof pursuant to the Settlement Agreement (such notice, the "Claim Notice") and that the Escrow Funds (or portions thereof) be distributed in accordance with the instructions given in such Claim Notice.

The Vedder Letter purports to be a Claim Notice by Guarantor demanding that the Escrow Agent release the remaining Escrow Funds in the amount of one million six hundred thirty-seven thousand five hundred dollars ($1,637,500.00) to Guarantor pursuant to Section 4(d) of the Escrow Agreement.

However, the DLA Letter, which predates the Vedder letter, previously notified Escrow Agent that Borrower filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Petition"). As a result of the bankruptcy, the DLA Letter demands that Escrow Agent refrain from disbursing any Escrow Funds currently being held by Escrow Agent until receipt of joint written instructions to do so from all parties to the Escrow Agreement.

Based on Escrow Agents review, the DLA Letter and Vedder Letter present conflicting directions for the Escrow Funds pursuant to Section 4(d)(i) of the Escrow Agreement. Therefore, please consider this letter notice (the "Notice") that Escrow Agent shall not release any Escrow Funds until Escrow Agent has received joint written instructions as stated in Section 4(c) of the Escrow Agreement; provided, however, as also stated in Section 4(d)(i), Escrow Agent may release the Escrow Funds upon receipt of a court order and may deposit the funds in a court of competent jurisdiction in New York. Notwithstanding the foregoing, and to the extent applicable, this Notice shall also serve as Receipt Notice pursuant to Section 4(d).

Please be advised that this Notice is for informational purposes only pursuant to the terms of the Escrow Agreement and is not intended as a demand for payment or an attempt to collect a debt. Moreover, this Notice does not constitute an admission on the part of the Escrow Agent that the Escrow Funds are: (i) due and owing to any party, (ii) subject to the automatic stay by virtue of the Bankruptcy Petition or (iii) deemed property of the estate of the Borrower under the provisions of the U.S. Bankruptcy Code. The Escrow Agent is simply providing this information to you solely in the ordinary course of business and to comply with the Escrow Agent's ministerial duties under Section 7(b)(i) of the Escrow Agreement.

**DENTONS**

dentons.com

**December 4, 2025**
Page 3

Very truly yours,

Dentons US LLP
Counsel for First American Title Insurance
Company


Elizabeth Teutenberg Ferrick

Attachments


cc:     DLA Piper LLP (US)
        1251 Avenue of the Americas, 27th Floor
        New York, New York 10020
        Attention: Neal E. Kronley, Esq.
        *neal.kronley@us.dlapiper.com*

        Vedder Price P.C.
        1633 Broadway, 31st Floor
        New York, New York 10019
        Attention: Robert Salame, Esq.
        *rsalame@vedderprice.com*

# Exhibit A

## ESCROW AGREEMENT

THIS ESCROW AGREEMENT (this "Agreement") is made and entered into as of this 7th day of August, 2025  (the "Effective Date"), by and among PARKVIEW FINANCIAL REIT, LP, a Delaware limited partnership, as administrative agent (in such capacity, together with its successors and assigns, "Administrative Agent") for itself and the other lenders from time to time  party to the Loan Documents (as such term is defined in that certain Building Loan Agreement, dated as of May 4, 2022, as amended, by and among Borrower, Administrative Agent and the Lenders)  (collectively, together with their successors and assigns, "Lenders"), Hudson 1702, LLC and Hudson 1701/1706, LLC, each a Delaware limited liability company (collectively, "Borrower"), CSC HUDSON LLC, a Delaware limited liability company having an office at c/o CSC RE, 459 Columbus Avenue, Unit #1082, New York, New York 10024 ("Holdings"), Alberto Smeke Saba and Salomon Smeke Saba, each a natural person (individually and collectively, as the context may require, and jointly and severally, "Guarantor"; and together with Holdings, individually and collectively as the context may require, "Guarantor Parties"), and FIRST AMERICAN TITLE INSURANCE COMPANY, as escrow agent (the "Escrow Agent"; and, together with each of Administrative Agent and the Guarantor Parties, each, a "Party").

## RECITALS

WHEREAS, Administrative Agent,  Borrower and Guarantor Parties are parties to that certain Settlement and Release Agreement, dated as of the Effective Date (the "Settlement Agreement") (All initial capitalized terms used, but not defined, in this Agreement shall have the meanings set forth in the Settlement Agreement);

WHEREAS, the Settlement Agreement provides *inter alia*, that the Guarantor shall deliver into escrow with the Escrow Agent four (4) executed counterpart signature pages (the "Executed Counterparts"), from Hudson 1705, LLC, a Delaware limited liability company, together with an irrevocable authorization in favor of Administration Agent, in each case in form and substance attached as Exhibit "C" to the Settlement Agreement for Lender's and/or Borrower's attachment to a Waiver of Execution and Subordination to Cure Agreement, and amendments thereto,  and that such Executed Counterparts shall be held and disbursed in accordance with the terms hereof;

WHEREAS, pursuant to Section 2(c) of the Settlement Agreement, following Guarantor's delivery of the Executed Counterparts to the Escrow Agent and the delivery of a copy of the Executed Counterparts to the Administrative Agent marked "draft", Administrative Agent shall deposit an amount equal to $4,637,500.00 (the "Escrow Funds") into the escrow account of the Escrow Agent  in accordance with the wire instructions attached hereto, and that such escrowed amount shall be held and disbursed in accordance with the terms hereof;

WHEREAS, Escrow Agent is willing to hold and disburse such Executed Counterparts and Escrow Funds pursuant to the terms of this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants set forth in this Agreement and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto hereby agree as follows:

1.      Deposit of Executed Counterparts and Escrow Funds; Appointment of Escrow Agent; Escrow Account.

(a)    By its execution and delivery of this Agreement to the other Parties, Guarantor hereby agrees that, within two (2) business days of the Effective Date, Guarantor will deliver to Escrow Agent four (4) Executed Counterparts (including, for the avoidance of doubt the irrevocable authorization attached thereto) to be held pursuant to the terms of this Agreement and Guarantor shall also deliver to Lender copies of the Executed Counterparts marked "draft".  Upon receipt of the Executed Counterparts, Escrow Agent will send to Guarantor and Administrative Agent by email scanned copies of the documents received by the Escrow Agent (such scanned copies of such documents to be marked "Draft-Not For Use" by the Escrow Agent) to confirm that such documents constitute the Executed Counterparts that Guarantor is required to deliver pursuant to this Agreement.  Within two (2) business days of receipt of such scanned documents, Administrative Agent will reply to such email and confirm whether or not such documents constitute the Executed Counterparts that Guarantor is required to deliver pursuant to this Agreement.  If Administrative Agent shall state that such documents do not constitute the Executed Counterparts that Guarantor is required to deliver pursuant to this Agreement, Guarantor shall deliver to Escrow Agent four (4) Executed Counterparts (including, for the avoidance of doubt the irrevocable authorization attached thereto) required to be delivered hereunder to be held pursuant to the terms of this Agreement and Guarantor shall also deliver to Lender copies of the Executed Counterparts marked "draft", and the forgoing approval process shall be repeated until Administrative Agent does confirm that the documents delivered to the Escrow Agent the Executed Counterparts that Guarantor is required to deliver pursuant to this Agreement.

(b)    By its execution and delivery of this Agreement to the other Parties, Administrative Agent hereby agrees that, within two (2) business days after Administrative Agent has confirmed that the documents received by the Escrow Agent (and the copies thereof received by the Administrative Agent marked "draft") constitute the Executed Counterparts required to be delivered by the Guarantor to the Escrow Agent pursuant to this Agreement, Lender shall deposit the Escrow Funds into the escrow account of the Escrow Agent  in accordance with the wire instructions attached hereto. Such Escrow Funds shall be held pursuant to this Agreement. If Lender does not so deposit the Escrow Funds into such escrow account by such date, the Escrow Agent shall return the Executed Counterparts to the Guarantors. Upon written request by a Party at any time not more than once per month, Escrow Agent shall confirm via email only to all Parties the amount of Escrow Funds then on deposit with Escrow Agent pursuant to this Agreement.

(c)    Administrative Agent, Lender Borrower, and Guarantor Parties each hereby appoint Escrow Agent as the escrow agent pursuant to the terms of this Agreement and Escrow Agent hereby accepts said appointment pursuant to the express terms, conditions and provisions of this Agreement and agrees to act in accordance with such terms, conditions and provisions of this Agreement with respect to the Escrow.

(d)    Upon the receipt by Escrow Agent of Borrower's W9, Escrow Agent shall hold the Escrow Funds in a separate escrow account at Bank of America, N.A. (the "Escrow Account"), and shall not commingle the Escrow Funds with any other third-party deposits or its own funds. The Party providing the W9 shall receive a 1099 for the interest regardless of which Party actually receives the interest.

2.    Investment of Escrow Funds. All interest and other amounts earned on the Escrow Funds, or portion thereof, shall be paid to Borrower.

3.    Term.

(a)    The obligations of Escrow Agent under this Agreement shall terminate on the complete disbursement of the Escrow Funds in accordance with the terms of this Agreement

(b)    Upon the termination of this Agreement, in accordance with this Section 3, Escrow Agent shall be relieved from all duties, obligations, liabilities and responsibilities hereunder other than those that accrued prior to such termination.

4.    Delivery of Executed Counterparts; Disbursement of Escrow Funds.

(a)    Delivery of Executed Counterparts. No later than two (2) business days following deposit of the Escrow Funds with the Escrow Agent, Escrow Agent shall, without any further action by any Party being required, deliver all the Executed Counterparts to Administrative Agent.

(b)    Initial Disbursement of Escrow Funds. Within two (2) business days following delivery of the Executed Counterparts to Lender, a portion of the Escrow Funds equal to $3,000,000.00 shall be disbursed to the Guarantors.

(c)    Disbursement Pursuant to Joint Instructions. If at any time Escrow Agent shall receive (x) a joint written direction signed by Administrative Agent and Guarantor authorizing and directing disbursement of the Escrow Funds or any portion, Escrow Agent shall disburse the Escrow Funds (or such portion thereof) as so directed within one (1) business day of receipt of such joint written direction.

(d)    Disbursement Pursuant to a Claim Notice from Guarantor. If Guarantor is entitled to receive the remainder of the Escrow Funds or a portion thereof pursuant to the Settlement Agreement, Guarantor (in such capacity, the "Requesting Party") may provide written notice to Escrow Agent that Guarantor is entitled to receive the Escrow Funds or a portion thereof pursuant to the Settlement Agreement (such notice the "Claim Notice") and that the Escrow Funds (or portions thereof) be distributed in accordance with the instructions given in such Claim Notice. Escrow Agent shall provide written notice (the "Receipt Notice") to the other Parties (each, a "Confirming Party") of its receipt of such Claim Notice (together with a copy of the Claim Notice) no later than one (1) business day after its receipt of such Claim Notice, provided such written notice may be delivered to the Parties via email in accordance with Section 9(b).

(i)    If any Confirming Party disputes that the Requesting Party is entitled to receive the Escrow Funds or the portion thereof so requested, the Confirming Party shall provide written notice to Escrow Agent within ten (10) business days after its receipt of the Receipt Notice disputing that the Requesting Party is entitled to receive the Escrow Funds (a "Dispute Notice"). For the avoidance of doubt, any delivery of a notice that Guarantor has breached the Settlement Agreement shall be deemed delivery of a Dispute Notice in accordance with this Section 4(d)(i). If Escrow Agent has not received a Dispute Notice from any Confirming Party within such ten (10) business day period, Escrow Agent shall deliver a second Receipt Notice to the Parties (which second Receipt Notice shall state at the top thereof, in bold and capitalized letters, "EACH PARTY'S FAILURE TO RESPOND TO THIS NOTICE MAY RESULT IN A DEEMED APPROVAL OF DISBURSEMENT OF ESCROW FUNDS") and if each Confirming Party fails to respond to such second Receipt Notice within five (5) business days after receipt of such second Receipt Notice, each Confirming Party shall be deemed to have authorized the disbursement set forth in the Claim Notice, and Escrow Agent shall disburse the Escrow Funds (or the portion thereof so requested) pursuant to the instructions set forth in the Claim Notice. If Escrow Agent receives a Dispute Notice within such ten (10) business day period (or the additional five (5) business day period following delivery of a second Receipt Notice), Escrow Agent shall deliver a copy of such Dispute Notice to each of the other Parties and shall retain the Escrow Funds in the Escrow Account pending receipt of a joint written

direction signed by each of Administrative Agent and Guarantor authorizing the disbursement of the Escrow Funds, or a copy of a final decision of an arbitrator or final unappealable order of a court of competent jurisdiction with respect to distribution of the Escrow Funds. Notwithstanding the foregoing, if Escrow Agent receives contrary written directions from Administrative Agent or Guarantor or no written directions by the Termination Date, Escrow Agent shall have the right to deposit the Escrow Funds with any court of competent jurisdiction in New York and interplead Administrative Agent and Guarantor. Upon depositing the Escrow Funds and filing its complaint in interpleader, Escrow Agent shall be released from all liability under this Agreement regarding the Escrow Funds, except as otherwise expressly provided in this Agreement.

5.    Escrow Fees. All fees, costs and expenses of the Escrow Agent with respect to the escrow established pursuant to this Agreement (if any, the "Escrow Fees") shall be shared equally between Administrative Agent and Guarantor. All such Escrow Fees shall be due and payable upon the initial deposit of any Escrow Funds with Escrow Agent pursuant to this Agreement. Escrow Agent's fee is $1,500.

6.    Compliance with Court Orders. Each of the Parties hereby acknowledges that Escrow Agent may accept, obey and comply with any and all writs, orders, judgments or decrees issued or entered by any court with or without jurisdiction (a "Court Order"), in which case, notwithstanding anything to the contrary in this Agreement, Escrow Agent shall not be liable to any Party by reason of such acceptance, obedience or compliance, regardless of whether such Court Order is subsequently reversed, modified, annulled, set aside or vacated.

7.    Release and Indemnification.

(a)    The Parties hereby release Escrow Agent and its officers, managers, employees and agents (each, an "Escrow Agent Party"), for any liability, damage, loss, cost or expense incurred by such Escrow Agent Party to the extent resulting from (i) any action taken or not taken in good faith upon advice of Escrow Agent's counsel given with respect to any questions relating to its obligations under this Agreement, or (ii) any action taken or not taken in reliance upon any document, including any written notice provided to Escrow Agent pursuant to this Agreement, as to the due execution and the validity and effectiveness of such document, and the truth and accuracy of any information contained therein, which such Escrow Agent Party in good faith believes to be genuine, to have been signed or presented by a duly authorized person or persons and to comply with the terms of the Settlement Agreement and this Agreement, except to the extent resulting from the gross negligence, willful default or intentional misconduct by any Escrow Agent Party. Administrative Agent, Borrower, Holdings and Guarantor, jointly and severally, shall indemnify and hold harmless any Escrow Agent Party against any liability, damage, loss, cost or expense, including, without limitation, reasonable attorneys' fees and court costs, incurred by such Escrow Agent Party to the extent resulting from the performance by any Escrow Agent Party of Escrow Agent's obligations under this Agreement, except to the extent resulting from the gross negligence, willful default or intentional misconduct by such Escrow Agent Party.

(b)    It is agreed by and among the Parties that:

(i)    the duties of Escrow Agent are only as herein specifically provided and are purely ministerial in nature, and Escrow Agent shall incur no liability whatever except for willful misconduct (including, without limitation, willful disregard of the terms of this Agreement) or gross negligence, as long as Escrow Agent has acted in good faith;

(ii)    in the performance of its duties hereunder, Escrow Agent shall be entitled to rely upon any document, instrument or signature believed by it to be genuine and signed by Landlord, Tenant or their respective successors;

4

(iii)    Escrow Agent may assume that any person on behalf of any Party purporting to give any notice of instructions in accordance with the provisions hereof has been duly authorized to do so;

(iv)    Escrow Agent shall not be bound by any modification, cancellation or rescission of this Agreement unless in writing and signed by it and the Parties;

(v)    Escrow Agent is acting as a stake-holder only with respect to the Escrow. Upon making delivery of all of the Escrow in the manner provided in this Agreement, Escrow Agent shall have no further liability hereunder, except from any claims arising out of the gross negligence or willful misconduct (including, without limitation, willful disregard of the terms of this Agreement) by Escrow Agent in the performance of its duties hereunder.

(c)    By execution of this Agreement, Escrow Agent hereby acknowledges and agrees that notwithstanding anything to the contrary contained in this Agreement, Escrow Agent shall not release any Escrow Funds except in accordance with the express provisions of this Agreement.

(d)    In addition to any other indemnification of Escrow Agent contained herein, in the event that Escrow Agent incurs any actual, third-party out-of-pocket costs or expenses hereunder, including, without limitation, costs of Escrow Agent, then Escrow Agent shall be entitled to reimbursement for such costs from the Tenant Parties within thirty (30) days after receipt of demand from Escrow Agent (provided that Escrow Agent shall provide the Tenant Parties copies of bills, invoices, receipts or other documentation that evidences the reimbursement amount).

8.    Relationship of Parties. Administrative Agent and Guarantor Parties acknowledge and agree that Escrow Agent is acting solely as a stakeholder at their request, and that Escrow Agent shall not be deemed to be the agent of any of Administrative Agent or any Guarantor Party.

9.    Notices. Except as otherwise provided for herein, all notices, approvals, consents and other communications required or permitted hereunder shall be in writing and shall be deemed to have been duly given or sent (a) upon the date delivered, if delivered by hand, or (b) upon the date of delivery, if delivered by electronic mail (provided that, within three (3) business days after delivery by electronic mail, the Party delivering the notice sends a copy of such notice by at least one other method of delivery set forth in this paragraph), or (c) one (1) business day after deposit with a nationally recognized overnight courier service with next business day delivery specified and requires delivery confirmation, in each case to the party intended at its address as follows (or at such other address as may hereafter be specified by such party from time to time by like notice):

If to Administrative Agent or Lender:

Parkview Financial REIT, LP
11440 San Vicente Boulevard, 2nd Floor
Los Angeles, CA 90049
Attention:  Paul Rahimian and Ted Jung
Email: paul@parkviewfinancial.com
ted@parkviewfinancial.com

With a copy to:                    DLA Piper LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, New York 10020
Attention:  Neal E. Kronley, Esq.

1622241653.7

E-mail: Neal.Kronley@us.dlapiper.com

| | |
|---|---|
| If to Borrower: | Hudson 1702, LLC<br>Hudson1701/1706,LLC<br>c/o Parkview Financial REIT, LP<br>11440 San Vicente Boulevard, 2nd Floor<br>Los Angeles, CA 90049<br>Attention:  Paul Rahimian and Ted Jung<br>Email: paul@parkviewfinancial.com<br>        ted@ parkviewfinancial.com |
| With a copy to: | DLA Piper LLP (US)<br>1251 Avenue of the Americas, 27th Floor<br>New York, New York 10020<br>Attention:  Neal E. Kronley, Esq.<br>E-mail: Neal.Kronley@us.dlapiper.com |
| If to Holdings: | CSC Hudson LLC<br>459 Columbus Avenue, Unit #1082<br>New York, New York 10024<br>Attention: Alberto Smeke Saba and Salomon Smeke Saba<br>Email: as@cscre.us and ss@cscre.us |
| With a copy to: | Vedder Price P.C.<br>1633 Broadway, 31st Floor<br>New York, New York 10019<br>Attention:  Robert Salame, Esq.<br>Email: rsalame@vedderprice.com |
| If to Guarantor: | Alberto Smeke Saba<br>Salomon Smeke Saba<br>459 Columbus Avenue, Unit #1082<br>New York, New York 10024<br>Attention: Alberto Smeke Saba and Salomon Smeke Saba<br>Email: as@cscre.us and ss@cscre.us |
| With a copy to: | Vedder Price P.C.<br>1633 Broadway, 31st Floor<br>New York, New York 10019<br>Attention:  Robert Salame, Esq.<br>Email: rsalame@vedderprice.com |
| If to Escrow Agent: | First American Title Insurance Company<br>666 Third Avenue<br>New York, NY 10017<br>Attention:  Andrew Jaeger<br>Email: ajaeger@firstam.com<br>Tel:  212-551-9433<br>Reference Number: 1272624 |

6

The giving of any notice required hereunder may be waived in writing by the Party entitled to receive such notice. No failure or delay in the routing of any such notice, demand, request, consent, approval, declaration or other communication within any organization to the individual designated to receive the same or a copy thereof shall in any way qualify the effectiveness of such notice, demand, request, consent, approval, declaration or other communication.

10.     <u>Assignment</u>. None of Administrative Agent, Borrower, Holdings or Guarantor shall assign any of its rights, or delegate any of its obligations, in this Agreement, without the prior written consent of the other Party. Escrow Agent shall not, directly or indirectly, assign any of its rights, or delegate any of its obligations, in this Agreement, without the prior written consent of each other Party hereto.

11.     <u>Successors and Assigns; Third Party Beneficiaries</u>. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns pursuant to this <u>Section 11</u>. This Agreement shall not confer any rights or remedies upon any Person other than the Parties any their respective successors and permitted assigns pursuant to <u>Section 11</u>.

12.     <u>Conflict with Settlement Agreement</u>. If any of the terms or provisions of this Agreement conflict with, or are inconsistent with, any terms or provisions of the Settlement Agreement, the terms and provisions of this Agreement shall control.

13.     <u>Governing Law; Severability</u>. This Agreement shall be governed by the laws of the State of New York. If any term or provision of this Agreement is held to be or rendered invalid or unenforceable at any time in any jurisdiction, such term or provision shall not affect the validity or enforceability of any other terms or provisions of this Agreement, or the validity or enforceability of such affected terms or provisions at any other time or in any other jurisdiction.

14.     <u>Jurisdiction; Venue</u>. Any litigation or other court action regarding this Agreement shall be conducted in the New York State Supreme Court in New York County or the United States District Court for the Southern District of New York, in the State of New York, and each Party hereby submits to jurisdiction and consents to venue in such courts.

15.     <u>Waiver of Trial by Jury</u>. Each Party hereby waives its right to a trial by jury in any action or proceeding by any Party against any other Party with respect to any matter arising from or in connection with this Agreement.

16.     <u>Prevailing Party</u>. If any litigation or other court action, arbitration or similar adjudicatory proceeding is undertaken by any Party to enforce its rights under this Agreement, all fees, costs and expenses, including, without limitation, reasonable attorneys' fees and court costs, of the prevailing Party in such action, suit or proceeding shall be reimbursed or paid by the Party against whose interest the judgment or decision is rendered. This Section 16 shall survive the termination of this Agreement. This <u>Section 16</u> shall not apply to Escrow Agent.

17.     <u>Recitals</u>. The recitals to this Agreement are incorporated herein by such reference and made a part of this Agreement.

18.     <u>Entire Agreement; Amendments to Agreement</u>. This Agreement sets forth the entire understanding and agreement of the Parties hereto, and shall supersede any other agreements and understandings (written or oral) between or among the Parties on or prior to the date of this Agreement with respect to the transaction contemplated in this Agreement. No amendment or modification to any terms of this Agreement, waiver of any covenant, obligation, breach or default under this Agreement or termination of this Agreement (other

7

than as expressly provided in this Agreement), shall be valid unless in writing and executed and delivered by each of the Parties.

19.     _PDF; Counterparts_. A Party may deliver executed signature pages to this Agreement by e-mail transmission of a PDF file containing such pages to any other Parties, which PDF copy shall be deemed to be an original executed signature page. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which counterparts together shall constitute one agreement with the same effect as if the Parties had signed the same signature page.

*[Remainder of page intentionally left blank; signatures on following pages.]*

1622241653.7

IN WITNESS WHEREOF, Administrative Agent, Borrower, Holdings. Guarantor and Escrow Agent have caused this Agreement to be executed and delivered in their names by their respective duly authorized officers or representatives as of the Effective Date.

ADMINISTRATIVE AGENT:
PARKVIEW FINANCIAL REIT, LP,
a Delaware limited partnership

By:     Parkview Financial Fund GP, Inc.,
        a California corporation,
        its general partner

        By: _____
        Name:    Ted Jung
        Title:    Chief Credit Officer

BORROWER:

HUDSON 1702, LLC,
a Delaware limited liability company

By: _____
    Name:    Ted Jung
    Title:    Authorized Signatory

HUDSON 1701/1706, LLC,
a Delaware limited liability company

By: _____
    Name:    Ted Jung
    Title:    Authorized Signatory

8

HOLDINGS:

CSC HUDSON LLC,
a Delaware limited liability company

By
   Name: **Alberto Smeke**
   Title: **Authorized Signatory**

GUARANTORS:

ALBERTO SMEKE SABA

SALOMON SMEKE SABA

9

ESCROW AGENT:

FIRST AMERICAN TITLE INSURANCE COMPANY

By: _____

Name: **Andrew D. Jaeger**
Title:  **Vice President**

11

<u>Exhibit A</u>

<u>Wire Instructions</u>



First American Title Insurance
Company National Commercial
Services
666 Third Avenue, 5th Floor
New York, NY 10017

# INCOMING WIRE INSTRUCTIONS

**BENEFICIARY NAME:**    First American Title Insurance Company National Commercial Services
**BENEFICIARY ADDRESS:** 666 Third Avenue, 5th Floor, New York, NY 10017
**BANK NAME:**           First American Trust-Santa Ana
**ADDRESS:**             5 First American Way, Santa Ana, CA 92707
**BANK ACCOUNT NO.:**    3023140000
**ROUTING NUMBER:**      122241255
**SWIFT Code:**          FATUUS66

PLEASE REFERENCE THE FOLLOWING:
**PROPERTY:**            Hudson Hotel,  New York, NY
**FILE NUMBER:**         3020-1272624 ()

## Failure to reference all of the above information may result in a delay of your funds being applied to your file.

**PLEASE NOTE:** With cybercrimes on the increase, it is important to be ever vigilant. If you receive an e-mail or any other communication that appears to be generated from a First American employee that contains new, revised or altered bank wire instructions, consider it suspect and call our office at a number you trust. Our bank wire instructions rarely change.

**If funds are coming from other than buyer, seller or Lender please contact your Escrow Officer before remitting for additional requirements**

**ACH Transfers are NOT wire transfers:** An ACH transfer is not immediately available funds and requires additional time for clearance. An ACH transfer cannot be confirmed for earnest money, additional funds due in connection with your transaction or closing funds until the ten business day clearance period has expired. The acceptance of ACH transfers is subject to state law.

Contact our office at ,  before remitting such a transfer for more details.

Contact our office at ,  when funds are sent.

**In the event funds are received after 2:30 PM (Pacific Time), we cannot guarantee funding by close of business that day. The Company will not be responsible for additional interest, penalties, fees, or charges that may be due.**

# Exhibit B



**DLA Piper LLP (US)**
1251 Avenue of the Americas
27th Floor
New York, New York 10020-1104
www.dlapiper.com

Neal Kronley
Neal.Kronley@us.dlapiper.com
T   212.335.4584
F   917.778.8584

November 3, 2025

*VIA OVERNIGHT MAIL AND EMAIL*

**First American Title Insurance Company**
666 Third Avenue
New York, New York 10017
Attention: Andrew Jaeger
Email:   ajaeger@firstam.com

Re:      August 7, 2025 Escrow Agreement – Hudson Hotel

Dear Mr. Jaeger:

On October 22, 2025, Hudson 1701/1706, LLC and Hudson 1702, LLC (each, a "Debtor" and together, the "Debtors") filed voluntary petitions for relief (each such voluntary petition concerning a "Chapter 11 Case" and, collectively, the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code, 11. U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware.  This firm is proposed special litigation and corporate counsel to the Debtors.

Reference is made to that certain *Escrow Agreement* dated August 7, 2025 (the "Escrow Agreement"), by and among Parkview Financial REIT, LP ("Administrative Agent" or "Lender"), Debtors, CSC Hudson LLC ("Holdings"), Alberto Smeke Saba and Salomon Smeke Saba (collectively, "Guarantor"), and First American Title Insurance Company ("Escrow Agent"). The Escrow Agreement was made in conjunction with that certain *Settlement and Release Agreement* dated August 7, 2025, by and among Administrative Agent, Debtors, Holdings, and Guarantor (the "Settlement Agreement").[1]

Pursuant to Section 2(c) of the Settlement Agreement, Lender deposited $4,637,500 (the "Cure Delivery Fee") into the escrow account of the Escrow Agreement. Escrow Agent was directed to deliver $3,000,000 of the Cure Delivery Fee upon execution of the Settlement and Release Agreement. Section 2(d) provides that the remainder of the Cure Delivery Fee is to be disbursed as follows:

---

[1] Capitalized terms not otherwise defined have the meaning provided to them in the Settlement and Release Agreement.



November 3, 2025
Page Two

> The Escrow Agreement will further provide that, provided the Guarantors have not breached this Agreement as determined by a court of competent jurisdiction, the remainder of the Cure Delivery Fee shall be delivered to the Guarantors within five (5) business days of the earlier to occur of (x) receipt by [Debtors] of the Cure Approval and Lifting of the Stop Work Order and the New York City Department of Buildings (the "Department of Buildings") and each applicable agency including the New York City Department of Buildings, granting all approvals, permits and licenses required to complete the construction and development of the Project, including, without limitation, giving effect to the J-1 Unit Zoning Conversion and (y) the date that is ninety (90) days after the Effective Date.

Pursuant to Section 4(d)(i) a Confirming Party (including, Debtors), has ten (10) business days after receipt of a Receipt Notice from Escrow Agent that it is in receipt of a Claim Notice from a Requesting Party, to deliver a Dispute Notice to Escrow Agent. If Escrow Agent does not receive a Dispute Notice in that period, it is required to deliver a second Receipt Notice. A Confirming Party has five (5) business days after receipt of such Second Notice to submit a Dispute Notice. Otherwise, the Claim Notice is deemed authorized by the Confirming Parties and Escrow Agent shall disburse the Escrow Funds (or portion thereof requested).

Pursuant to Section 108(b) of the of the Bankruptcy Code (11 U.S.C. § 108), if an agreement fixes a time period within which the debtor "may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure or perform, as the case may be, before the later of—(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) 60 days after the order for relief."

PLEASE TAKE NOTICE that Section 108(b) operates to toll the time periods in the Escrow Agreement under which the Debtors are required to submit a Dispute Notice after receipt of the original or second Receipt Notice, as such time periods were not expired prior to October 22, 2025.

PLEASE TAKE FURTHER NOTICE that Debtors hereby instruct Escrow Agent to refrain from disbursing any Escrow Funds whether or not it is in receipt of a Claim Notice or Dispute Notice unless and until it receives joint written instructions to do so from all Parties to the Escrow Agreement.



November 3, 2025
Page Three

Debtors reserve all rights, remedies, and cause of action under the Settlement Agreement and Escrow Agreement and waive none. We are available to discuss if you have any questions.

Sincerely,

**DLA Piper LLP (US)**

**Proposed Special Corporate and Litigation Counsel to the Debtors**

Neal Kronley

NK


CC:

Pual Rahimian – paul@parkviewfinancial.com
Ted Jung – ted@parkviewfinancial.com
Stuart Brown – stuart.brown@us.dlapiper.com
Alberto Smeke Saba – as@cscre.us
Salomon Smeke Saba – ss@cscre.us
Roberto Salame – rsalame@vedderprice.com
Alan Tantleff – alan.tantleff@fticonsulting.com
Rick Wynne – richard.wynne@hoganlovells.com

# Exhibit C



November 14, 2025

**BY E-MAIL AND FEDERAL EXPRESS OVERNIGHT DELIVERY**

**FIRST AMERICAN TITLE INSURANCE COMPANY**
666 Third Avenue
New York, New York 10017
Attention: Andrew Jaeger
Email: ajaeger@firstam.com
Reference Number: 1272624

   Re:   Claim Notice – Reference Number 1272624

Dear Mr. Jaeger:

This letter is being sent on behalf of Salomon Smeke Saba and Alberto Smeke Saba, each a natural person (individually and collectively, as the context may require, the "Guarantor"), in connection with that certain Escrow Agreement dated August 7th, 2025, made by and among PARKVIEW FINANCIAL REIT, LP, a Delaware limited partnership, as administrative agent (in such capacity, together with its successors and assigns, "Administrative Agent") for itself and the other lenders from time to time party to the Loan Documents (as such term is defined in that certain Building Loan Agreement, dated as of May 4, 2022, as amended, by and among Borrower, Administrative Agent and the Lenders) (collectively, together with their successors and assigns, "Lenders"), Hudson 1702, LLC and Hudson 1701/1706, LLC, each a Delaware limited liability company (collectively, "Borrower"), CSC HUDSON LLC, a Delaware limited liability company having an office at c/o CSC RE, 459 Columbus Avenue, Unit #1082, New York, New York 10024 ("Holdings"), and Guarantor (Guarantor, together with Holdings, individually and collectively as the context may require, "Guarantor Parties"), and FIRST AMERICAN TITLE INSURANCE COMPANY, as escrow agent (the "Escrow Agent"; and, together with each of Administrative Agent and the Guarantor Parties, each, a "Party").

Please be advised that the Guarantor is entitled to receive the remainder of the Escrow Funds (i.e., $1,637,500.00). Please distribute the Escrow Funds to the Guarantor pursuant to the wiring instructions attached hereto as Exhibit A..

Nothing contained herein shall be deemed or construed as a waiver, release, modification, compromise, admission, or limitation of any of the Guarantor's rights, claims, remedies, or defenses, whether legal or equitable, all of which are expressly preserved and fully reserved.

          Sincerely,

          Vedder Price P.C.

          By:    /s/ Robert Salame
                 Robert Salame

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, Vedder Price Pte. Ltd., which operates in Singapore, and Vedder Price (FL) LLP, which operates in Florida.
VP/#72893490.1



**EXHIBIT A**

- Bank: JP Morgan Chase Bank, N.A
- Account Number: 519737297
- Routing Number: 021000021
- Account Address: 6 Saint Johns Ln, New York, NY, 10013-2115

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, Vedder Price Pte. Ltd., which operates in Singapore, and Vedder Price (FL) LLP, which operates in Florida.
VP/#72893490.1

## Exhibit 6

**December 9 First American Letter**

**DENTONS**

**Elizabeth Teutenberg Ferrick**

elizabeth.ferrick@dentons.com
D     +1 314-259-5910

Dentons US LLP
101 South Hanley Road
Suite 600
St. Louis, MO  63105-3435
United States

dentons.com

December 9, 2025

DLA Piper LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, New York 10020
Attention: Neal E. Kronley, Esq.
*neal.kronley@us.dlapiper.com*

Re:     **August 7, 2025 Escrow Agreement**

Dear Mr. Kronley:

The undersigned is counsel to First American Title Insurance Company, as escrow agent (the "Escrow Agent") pursuant to that certain Escrow Agreement dated August 7, 2025 (the "Escrow Agreement"), by and among Parkview Financial REIT, LP ("Administrative Agent" or "Lender"), Hudson 1701/1706, LLC and Hudson 1702, LLC (collectively, "Borrower"), CSC Hudson LLC ("Holdings"), Alberto Smeke Saba and Salomon Smeke Saba (collectively, "Guarantor"), and the Escrow Agent. As you know, the Escrow Agent is in receipt of: (i) the November 3, 2025 letter from you as Proposed Special Corporate and Litigation Counsel in the case before the Bankruptcy Court (as hereinafter defined) of the Borrower (the "DLA Letter"); and (ii) the November 14, 2025 letter from Robert Salame of Vedder Price P.C. on behalf of Guarantor (the "Vedder Letter").

The DLA Letter initially notified Escrow Agent that the Borrower filed voluntary petitions (the "Bankruptcy Petition") for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). Presumably as a result of the Bankruptcy Petition, the DLA Letter demanded that the Escrow Agent "refrain from disbursing any Escrow Funds . . . unless and until it receives joint written instructions to do so from all Parties to the Escrow Agreement." Conversely, the Vedder Letter demands that the Escrow Agent release the Escrow Funds in the amount of one million six hundred thirty-seven thousand five hundred dollars ($1,637,500.00) to Guarantor pursuant to the Escrow Agreement.

In response to the DLA Letter and the Vedder Letter, the Escrow Agent delivered a letter dated December 4, 2025 (the "Escrow Agent Letter") wherein the Escrow Agent indicated that, based on the Escrow Agent's review, the DLA Letter and Vedder Letter present conflicting directions for the Escrow Funds (as such term is defined in the Escrow Agreement) pursuant to Section 4(d)(i) of the Escrow Agreement. The Escrow Agent Letter further indicated that the Escrow Agent shall not release any Escrow Funds until the Escrow Agent has received joint written instructions as stated in Section 4(c) of the Escrow Agreement; provided, however, as also stated in Section 4(d)(i), the Escrow Agent may release the Escrow Funds upon receipt of a final unappealable order of a court of competent jurisdiction authorizing the disbursement and may deposit the Escrow Funds in a court of competent jurisdiction in New York.

**DENTONS**

Neal E. Kronley, Esq.
**December 9, 2025**
Page 2

dentons.com

On December 5, 2025, counsel for the Escrow Agent received a call from Robert Salame of Vedder Price P.C. in which counsel reiterated the Guarantor's demand for the turnover of the Escrow Funds and, despite calling attention to the Escrow Agreement in a recent filing with the Bankruptcy Court, counsel to the Guarantor took the position that the Borrower has no interest in the Escrow Funds. However, the DLA Letter states that the Borrower is a party to the Escrow Agreement, and that, as result, the Borrower has standing to request that the Escrow Agent refrain from disbursing the Escrow Funds. In addition, given the Bankruptcy Petition, the DLA Letter states that Section 108(b) of the Bankruptcy Code "operates to toll the time periods in the Escrow Agreement," and thereby suggests the Borrower has contractual rights within the ambit of Section 108(b).

Escrow Agent believes that the DLA Letter—which invokes Section 108(b) of the Bankruptcy Code as grounds to extend its time to provide notice under the Escrow Agreement related to disbursement of the Escrow Funds—and the Vedder Letter—which demands disbursement of the Escrow Funds to Guarantor—present conflicting directions for the Escrow Funds pursuant to Section 4(d)(i) of the Escrow Agreement and that a dispute under the Escrow Agreement exists. Nevertheless, the Escrow Agent requests that you, as Proposed Special Corporate and Litigation Counsel to the Borrower, state in writing for all recipients Borrower's position concerning the disposition of the Escrow Funds post-filing of the Bankruptcy Petition and the possibility of resolving the dispute among the Guarantor and the Borrower within the parameters of the Escrow Agreement, including: (i) the consummation of a joint written direction from the Guarantor and the Administrative Agent as permitted pursuant to Section 4(c) of the Escrow Agreement with the consent of the Borrower; or (ii) the initiation of a proceeding before the Bankruptcy Court as a court of competent jurisdiction requesting resolution of the dispute, as soon as possible, pursuant to Section 4(d)(i) of the Escrow Agreement. Please be advised that if such a mutual resolution is not sought within a commercially reasonable time as the Escrow Agent deems necessary in its sole discretion, the Escrow Agent reserves all rights to seek redress in a court of competent jurisdiction, including the right to seek relief from the Bankruptcy Court regarding the dispute.

Please note that this letter is submitted for informational purposes only pursuant to the terms of the Escrow Agreement and is not intended as a demand for payment or an attempt to collect a debt. Moreover, this letter does not constitute an admission on the part of the Escrow Agent that the Escrow Funds are: (i) due and owing to any party, (ii) subject to the automatic stay by virtue of the Bankruptcy Petition or (iii) deemed property of the estate of the Borrower under the provisions of the Bankruptcy Code. The Escrow Agent is simply providing this information to you solely in the ordinary course of business and to comply with the Escrow Agent's ministerial duties under Section 7(b)(i) of the Escrow Agreement.

Very truly yours,

Dentons US LLP
Counsel for First American Title Insurance
Company

Elizabeth Teutenberg Ferrick

**DENTONS**

Neal E. Kronley, Esq.
**December 9, 2025**
Page 3

dentons.com

cc:     Vedder Price P.C.
        1633 Broadway, 31st Floor
        New York, New York 10019
        Attention: Robert Salame, Esq.
        *rsalame@vedderprice.com*

        Dentons US LLP
        1221 Avenue of the Americas
        New York, New York 10020
        Attention: Lynn P. Harrison III
        *lynn.harrisoniii@dentons.com*

**Puyat Jacinto & Santos ► Link Legal ► Zaanouni Law Firm & Associates ► LuatViet ► For more information on the firms that have come together to form Dentons, go to dentons.com/legacyfirms**

**Exhibit 7**

**December 11 Vedder Email**

**Wall, Olivia R.**

| | |
|---|---|
| **From:** | Salame, Robert <rsalame@vedderprice.com> |
| **Sent:** | Thursday, December 11, 2025 8:04 PM |
| **To:** | Kronley, Neal |
| **Cc:** | Rownd, David; Schein, Michael L.; Wall, Olivia R.; Ferrick, Elizabeth Teutenberg; Harrison, III, Lynn P. |
| **Subject:** | RE: [EXT] 12.9.2025 Escrow Agent Letter |
| | |
| **Importance:** | High |

<span style="color:red">**[WARNING: EXTERNAL SENDER]**</span>

Neal,

As you know, the Borrower is **not** a "Party" as defined in the Escrow Agreement and holds no cognizable interest in the escrowed principal. The contractual conditions for release have been indisputably satisfied. DLA's letter is an obvious attempt to manufacture delay on behalf of Parkview, which has no contractual or legal basis to impede release of the funds. The fact that Borrower, through DLA under the guise of bankruptcy law, has injected itself into this issue solely to advance Parkview's interests underscores the seriousness of the conflicts concerns we have already raised.

Absent an immediate resolution, we will bring this matter to the attention of the bankruptcy court and seek appropriate relief.

Best,
Robert Salame

**Robert Salame,** Shareholder

**Vedder**Price

T +1 212 407 6941
M +1 917 494 9925
1633 Broadway, 31st Floor, New York, New York 10019
web | email | offices | biography

**From:** Wall, Olivia R. <olivia.wall@dentons.com>
**Sent:** Tuesday, December 9, 2025 12:56 PM
**To:** neal.kronley@us.dlapiper.com
**Cc:** Salame, Robert <rsalame@vedderprice.com>; Ferrick, Elizabeth Teutenberg <elizabeth.ferrick@dentons.com>; Harrison, III, Lynn P. <lynn.harrisoniii@dentons.com>
**Subject:** [EXT] 12.9.2025 Escrow Agent Letter

Please see attached.

Olivia R. Wall
Associate

+1 314 259 5876
olivia.wall@dentons.com   |   Website

Dentons US LLP | 101 S. Hanley Road, Suite 600, St. Louis, MO 63105-3435

**DENTONS**

<span style="color:purple">Our Legacy Firms   |   Client Experience (CX)</span>

Dentons is a global legal practice providing client services worldwide through its member firms and affiliates. This email may be confidential and protected by legal privilege. If you are not the intended recipient, disclosure, copying, distribution and use are prohibited; please notify us immediately and delete this copy from your system. Please see dentons.com for Legal Notices.

---

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, Vedder Price (FL) LLP, which operates in Florida, and Vedder Price Pte. Ltd., which operates in Singapore.

CONFIDENTIALITY NOTE: This e-mail is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this e-mail message is not the intended recipient, or the employee or agent responsible for delivery of the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is prohibited. If you have received this e-mail in error, please notify us immediately by telephone at (312) 609-5038 and also indicate the sender's name. Thank you.

d250106us

**Exhibit 8**

**December 12 Hogan Letter**



Hogan Lovells US LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
T +1 310 785 4600
F +1 310 785 4601
www.hoganlovells.com

December 12, 2025

**By Email**

First American Title Insurance Company
666 Third Avenue
New York, NY 10017
Attention: Mr. Andrew Jaeger
Email: ajaeger@firstam.com

*With a copy to*:
Elizabeth Teutenberg Ferrick, Esq.
Dentons US LLP
101 South Hanley Road, Suite 600
St. Louis, MO 63105-3435
Email: elizabeth.ferrick@dentons.com

**Re:**      ***August 7, 2025 Escrow Agreement – DISPUTE NOTICE***

Dear Escrow Agent:

Hogan Lovells US LLP ("Hogan Lovells") is counsel to Parkview Financial REIT, LP ("Administrative Agent").  This letter refers to (i) that certain escrow agreement dated August 7, 2025 (the "Escrow Agreement"), by and among Parkview Financial REIT, LP ("Administrative Agent" or "Lender"), Hudson 1701/1706, LLC and Hudson 1702, LLC (collectively, "Borrower"), CSC Hudson LLC ("Holdings"), Alberto Smeke Saba and Salomon Smeke Saba (collectively, "Guarantor"), and First American Title Insurance Company, as escrow agent (the "Escrow Agent"), and (ii) that certain settlement agreement, dated August 7, 2025, by and among Parkview, the Debtors, Holdings, and the Guarantors.  Hogan Lovells is in receipt of your letter dated December 9, 2025 and hereby respond thereto.

**Basis for Non-Disbursement of Escrow Funds**

Pursuant to Section 2(e) and 2(f) of the Settlement Agreement, Holdings and the Guarantors were required to deliver to the Administrative Agent, no later than ten (10) days after the Effective Date (i.e., by August 17, 2025), "any and all drawings, plans, warranties, licenses, permits, approvals, registrations and other authorizations and similar or related documentation for the use, development or operation of the Property," and to "cooperate, as reasonably requested by Administrative Agent or Lender, including, without limitation by executing and delivering such instruments or documents, and taking such other action, as the Administrative Agent or Lender may reasonably request."

Hogan Lovells US LLP is a limited liability partnership registered in the state of Delaware.  "Hogan Lovells" is an international legal practice that includes Hogan Lovells US LLP and Hogan Lovells International LLP, with offices in:  Alicante  Amsterdam  Baltimore  Beijing  Berlin  Birmingham  Boston  Brussels  Colorado Springs  Denver  Dubai  Dublin  Dusseldorf  Frankfurt  Hamburg  Hanoi  Ho Chi Minh City  Hong Kong  Houston  London  Los Angeles  Luxembourg  Madrid  Mexico City  Miami  Milan  Minneapolis  Monterrey  Munich  New York  Northern Virginia  Paris  Philadelphia  Riyadh  Rome  San Francisco  São Paulo  Shanghai  Silicon Valley  Singapore  Tokyo  Washington, D.C.  For more information see www.hoganlovells.com.

\\4165-4021-3603  v1

Escrow Agent                                    - 2 -                        December 12, 2025

Despite repeated requests, Holdings and the Guarantors have failed to comply with these obligations, including, without limitation, by:

- their failure to deliver a complete set of required documents and information by August 17, 2025, and continuing to date, including drawings, plans, technical engineering documentation, warranties, licenses, permits, approvals, registrations, and ConEdison utility account information;

- their refusal to provide consent for MG Engineering D.P.C. to release technical engineering drawings, despite requests on October 16, 20, and 22, 2025; and

- their failure to respond to requests for information by the Borrower by the deadlines of October 27, 2025, and October 30, 2025, and continued deficiencies in document production following court intervention on November 3, 2025.

These failures constitute material breaches of Sections 2(e) and 2(f) of the Settlement Agreement. Under Section 2(d) of the Settlement Agreement and Section 4(d)(i) of the Escrow Agreement, the remainder of the Cure Delivery Fee may only be delivered to the Guarantors "provided the Guarantors have not breached this Agreement as determined by a court of competent jurisdiction." As Debtors and Parkview have provided notice of breach, and in light of the ongoing dispute, the Escrow Agent is not authorized to release any funds to Holdings or the Guarantors absent joint written instructions from all parties or a final, unappealable order of a court of competent jurisdiction.

Accordingly, we respectfully request that the Escrow Agent refrain from disbursing any escrow funds to Holdings or the Guarantors until such time as the dispute regarding breach of the Settlement Agreement has been resolved in accordance with the terms of the Escrow Agreement and applicable law.

The Administrative Agent reserves all rights, privileges, and protections, whether arising under contract, statute, common law, or otherwise, including without limitation all attorney–client, work product, joint-defense, and other applicable privileges. By providing the information contained herein, the Administrative Agent does not waive, and expressly preserves, all objections and defenses in this matter, including as to jurisdiction, venue, standing, discovery scope, or any other procedural or substantive issue. Nothing contained in this correspondence shall be deemed or construed as an admission, agreement, or waiver of any kind. This letter is not intended to constitute a demand for payment, an attempt to collect a debt, or any other action that would violate the automatic stay imposed in the Borrower's chapter 11 case.

Please confirm receipt of this letter and advise if you require any further information.


Very truly yours,



David P. Simonds
Partner
David.Simonds@hoganlovells.com
D (310) 785-4647

## Exhibit 9

**December 15 DLA Letter**



**DLA Piper LLP (US)**
1251 Avenue of the Americas
27th Floor
New York, New York 10020-1104
www.dlapiper.com

Neal Kronley
Neal.Kronley@us.dlapiper.com
T  212.335.4584
F  917.778.8584

December 15, 2025

*VIA EMAIL*

Robert Salame
Vedder Price P.C.
1633 Broadway, 31st Floor
New York, New York 10019
rsalame@vedderprice.com

Elizabeth Teutenberg Ferrick
Dentons US LLP
101 South Hanley Road, Suite 600
St. Louis, MO 63105-3435
elizabeth.ferrick@dentons.com

Re:    **Dispute Notice and Correspondence regarding Escrow Agreement dated August 7, 2025
(the "Escrow Agreement"), by and among Parkview Financial REIT, LP ("Administrative
Agent" or "Lender"), Hudson 1701/1706, LLC and Hudson 1702, LLC (collectively,
"Debtors"), CSC Hudson LLC ("Holdings"), Alberto Smeke Saba and Salomon Smeke
Saba (collectively, "Guarantor"),**

Dear Counsel:

This firm serves as proposed special litigation and corporate counsel to Debtors.

We write in response to the email from Vedder Price, counsel to Holdings and Guarantor, dated December 11, 2025, and the correspondence from First American Title Insurance Company, dated December 9, 2025, as escrow agent (the "Escrow Agent") pursuant to the Escrow Agreement.

As an initial matter, Debtors are unquestionably a party to the Escrow Agreement as indicated by the signature page and being identified as a party in the first paragraph. Holdings' and Guarantor's statement to the contrary is patently wrong and contrary to the broader terms of the Escrow Agreement.

Regarding the Escrow Account, and as we advised the Escrow Agent on November 3, 2025, Section 108(b) of the Bankruptcy Code operates to toll the time periods in the Escrow Agreement under which the Debtors are required to submit a Dispute Notice after receipt of the original or second Receipt Notice, as such time periods were not expired prior to the October 22, 2025 petition date. Holdings and Guarantor are aware of this fact and their efforts to interfere with the Debtors' rights constitutes a violation of the automatic stay and, if not immediately ceased, require the Debtors to take protective action before the Bankruptcy Court.



December 15, 2025
Page Two

Finally, counsel to Holdings and Guarantor suggest that this firm represents Parkview, or is acting on behalf of Parkview is a misrepresentation and a pretextual effort to advance the arguments of Holdings and the Guarantor in the Bankruptcy Court. As stated in its retention application, DLA Piper terminated its representation of Parkview with respect to the Hudson project prior to the petition date and as you are well aware Parkview's interests are represented by Hogan Lovells. In any event, you have placed this issue before the Bankruptcy Court and DLA Piper will respond in that Court. DLA Piper disputes each characterization, but this is not the place to argue on these points.

In any event, we have added Parkview's counsel, Hogan Lovells, to this communication, and we understand that they have separately responded on behalf of Parkview. We demand that counsel to Holdings and Guarantor include all relevant parties going forward, and that any *ex parte* communications between the Escrow Agent, Holdings and Guarantor cease and desist.

Debtors reserve all rights, remedies, and cause of action, and waive none.

Sincerely,

**DLA Piper LLP (US)**

**Proposed Special Corporate and Litigation
Counsel to the Debtors**

Neal Kronley

Copy to

**DLA Piper LLP (US)**
Stuart Brown
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801

and

**Chipman Brown Cicero & Cole, LLP**
William E. Chipman Jr.
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801

and



December 15, 2025
Page Three

**Hogan Lovells US LLP**
Richard Wynne
David P. Simonds
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067

David Rownd (drownd@vedderprice.com)
Michael Schein (mschein@vedderprice.com)
Olivia R. Wall (olivia.wall@dentons.com)
Lynn P. Harrison III (lynn.harrisoniii@dentons.com)

**Exhibit 10**

**December 16 Vedder Letter**



December 16, 2025

**BY E-MAIL**

**DLA Piper LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
Attn: Neal Kronley
Email: neal.kronley@us.dlapiper.com

   Re: Response to December 15 Letter

Dear Mr. Kronley:

   This letter is being sent in response to your December 15, 2025 correspondence. Your letter is inaccurate and reflects either (i) a fundamental confusion regarding your client's role under the Escrow Agreement, a confusion that is difficult to reconcile with your direct involvement in drafting that agreement while representing Parkview's interests, or (ii) an effort to mislead the Escrow Agent. Either scenario is unacceptable, and the record must be corrected.

**Debtors Are Not a "Party" or a "Confirming Party" to the Escrow Agreement and Have No Dispute Rights Thereunder**

   Your assertion that the Debtors are "unquestionably a party" to the Escrow Agreement is patently false. While the Debtors are signatories to the Escrow Agreement, such agreement expressly defines the term "**Party**" and the Debtors are not included in that definition. More specifically, the definition of Party provides:

*". . . Alberto Smeke Saba and Salomon Smeke Saba, each a natural person (individually and collectively, as the context may require, and jointly and severally, 'Guarantor'; and together with Holdings, individually and collectively as the context may require, 'Guarantor Parties'), and FIRST AMERICAN TITLE INSURANCE COMPANY, as escrow agent (the 'Escrow Agent'; and, together with each of Administrative Agent and the Guarantor Parties, each, a '**Party')**."* (emphasis added)

Furthermore, as defined therein, only a "Party" can be a "Confirming Party" and that definition is dispositive. The Debtors are not Guarantor Parties, they are not the Administrative Agent, and they are not the Escrow Agent. They are therefore neither a "Party" nor a "Confirming Party" under the Escrow Agreement and possess no contractual rights to object, delay, dispute, or otherwise interfere with the release of the Escrowed Funds (excluding any interest thereon). Thus, neither the inclusion of the Debtors' signatures on the agreement, nor generalized references in the preamble alter this result; operative rights and obligations are governed by the defined terms therein. You know this, having been directly involved in the drafting of the Escrow Agreement while representing Parkview.

**Section 108(b) Is Inapplicable as a Matter of Law**

   Because the Debtors are neither a "Party" nor a "Confirming Party," they have no decision-making authority and no applicable time periods under the Escrow Agreement. Accordingly, there is nothing for Section 108(b) of the Bankruptcy Code to toll.

Vedder Price P.C. is affiliated with Vedder Price Ltd, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, Vedder Price Pte. Ltd., which operates in Singapore, and Vedder Price (FL) LLP, which operates in Florida.
VP/#73041638.2



Section 108(b) applies only where the debtor is required to take an act within a specified time period under applicable non-bankruptcy law or contract. The Escrow Agreement imposes no such obligations or deadlines on the Debtors because they are not a "Confirming Party". .

**Debtors' Objections Are a Pretext for Parkview's Interests**

The reality is straightforward. The Escrow Funds (excluding interest thereon) will not be disbursed to the Debtors under any scenario. The only party with a cognizable economic interest in delaying or blocking such release is Parkview. Debtors' "push back" appears to be another disguised effort to advance Parkview's position through conflicted counsel.

Your denial that DLA Piper is acting on behalf of Parkview rings hollow in light of your prior representation of Parkview on the Hudson project, your continued advocacy of positions that appear to serve only Parkview's interests, ongoing coordination with Hogan Lovells (which we will separately address), your direct role in negotiating the settlement and escrow mechanics at issue, and the substance of the arguments you now advance – arguments that benefit only Parkview and not the Debtors' estates. Simply pointing to Hogan Lovells' current appearance does not erase this history or cure the conflict concerns already raised and preserved.

**Improper Accusations Regarding the Escrow Agent**

Finally, your demand that "ex parte communications" cease is misplaced. Communications between the Escrow Agent and the actual "Parties" to the Escrow Agreement concerning the performance of the Escrow Agent's duties are neither improper nor ex parte.

All rights, remedies, objections, and defenses are expressly reserved, including with respect to conflicts of interest and any harm caused by continued delay. Nothing herein constitutes a waiver of any position previously asserted or to be asserted.

Please feel free to reach out to me directly by phone at 212.407.6941 or by email at rsalame@vedderprice.com with any questions or concerns.

Sincerely,

Vedder Price P.C.

By: ___/s/ Robert Salame_____
        Robert Salame

**Chipman Brown Cicero & Cole, LLP**
William E. Chipman Jr.
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801

and

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, Vedder Price Pte. Ltd., which operates in Singapore, and Vedder Price (FL) LLP, which operates in Florida.
VP/#73041638.2



**Hogan Lovells US LLP**
Richard Wynne
David P. Simonds
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067

David Rownd (drownd@vedderprice.com)
Michael Schein (mschein@vedderprice.com)
Olivia R. Wall (olivia.wall@dentons.com)
Lynn P. Harrison III (lynn.harrisoniii@dentons.com)
Elizabeth Teutenberg Ferrick (elizabeth.ferrick@dentons.com)

1633 Broadway, 31st Floor  | New York, New York 10019  |  T +1 212 407 7700  |  F +1 212 407 7799

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, Vedder Price Pte. Ltd., which operates in Singapore, and Vedder Price (FL) LLP, which operates in Florida.
VP/#73041638.2

## Exhibit 11

**Second December 16 Vedder Letter**



December 16, 2025

**BY E-MAIL**

Hogan Lovells US LLP
David P. Simonds
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067

Re:    <u>Response to December 12 Letter</u>

Dear Mr. Simonds:

This letter is sent in response to your December 12, 2025 correspondence on behalf of Parkview Financial REIT, LP, as Administrative Agent. Your letter materially misstates both the governing contractual framework and the factual record, and it advances objections to escrow release that have no basis in the Settlement Agreement, the Escrow Agreement, or applicable law. The continued refusal to release the escrowed funds is improper and must cease immediately.

Accordingly, demand is hereby made that the escrowed funds be released immediately. Please confirm in writing by no later than 5:00 p.m. (Eastern) on December 18, 2025 that Parkview has withdrawn all objections and that the Escrow Agent has been authorized to release the escrow in accordance with the Escrow Agreement. If Parkview does not confirm by 5:00 p.m. (Eastern) on December 18, 2025 that the escrow will be released immediately, our client will have no choice but to seek appropriate relief from the Bankruptcy Court, including relief compelling release of the escrow and addressing the improper and coordinated interference that has caused needless delay, expense, and prejudice.

**Demand for Immediate Release of Escrow Funds**

The escrow release provisions are clear, unambiguous, and mechanical. The Escrow Agreement provides that, absent a determination by a court of competent jurisdiction that the Guarantors breached the Settlement Agreement, the remaining Cure Delivery Fee must be released to the Guarantors within five (5) business days of the earlier of: (x) receipt of the Cure Approval and lifting of the Stop Work Order and the granting of all required governmental approvals; or (y) ninety (90) days after the Effective Date.

The Effective Date of the Settlement Agreement is August 7, 2025. Ninety (90) days have long since elapsed. There has been no determination, judicial or otherwise, that the Guarantors breached the Settlement Agreement. That ends the analysis. Under the plain language of the Escrow Agreement, the escrowed funds (excluding interest thereon) must be released.

Your attempt to condition release on alleged "deficiencies," ongoing "communications," or unilateral assertions of noncompliance finds no support anywhere in the governing agreements. The escrow release mechanism does not permit Parkview to withhold funds based on self-help allegations or post hoc disputes. Only a previously and timely issued court determination of breach suffices, and none exists.

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, Vedder Price Pte. Ltd., which operates in Singapore, and Vedder Price (FL) LLP, which operates in Florida.
VP/#73041638.2



## Alleged Noncompliance Under Sections 2(e) and 2(f) Is Irrelevant and Incorrect

Further, your reliance on Sections 2(e) and 2(f) of the Settlement Agreement is misplaced.

First, Section 2(e) has been satisfied. Your conclusory assertions to the contrary do not create a breach, nor do they substitute for the timely judicial determination required to pause the escrow release. In fact, Parkview had never once alleged, prior to your letter, that it had not received the related information.

Second, Section 2(f) does not apply. By its express terms, Section 2(f) requires reasonable cooperation as requested by the Administrative Agent or Lender, and only in connection with the specific transactions contemplated by the Settlement Agreement, including obtaining the Cure Approval, lifting the Stop Work Order, and completing the J-1 Unit Zoning Conversion. No such cooperation was requested by Parkview or the Administrative Agent. Instead, the communications you reference were made by DLA Piper on behalf of the Borrower/Debtor – not on behalf of Parkview – and were not made in connection with furthering the transactions contemplated by the Settlement Agreement. Moreover, DLA Piper has repeatedly and expressly disclaimed acting on behalf of Parkview in response to our conflicts objections. Parkview cannot now opportunistically recast Borrower-driven requests as Administrative Agent demands in an effort to invoke Section 2(f).

Even if Section 2(f) were implicated (and it is not), the absence of any court finding of breach is dispositive. Allegations, particularly those advanced by conflicted counsel, relating to an entity that has no bearing on Section 2(f) or the Settlement Agreement, do not suspend the escrow release.

## Coordination With DLA Piper and Resulting Confusion

Your letter underscores the very conflict-driven confusion we have raised repeatedly. You attribute alleged failures to respond to the Borrower while simultaneously purporting to act on behalf of Administrative Agent. For example, you reference a supposed offer to meet and confer when no such offer was made to Parkview; the meet-and-confer invitation was extended to DLA Piper in connection with its Rule 2004 motion on behalf of the Borrower/Debtor, a motion which Parkview is not a party to and has no standing in.

This coordinated but inconsistent positioning between Hogan Lovells and DLA Piper highlights the impropriety of the ongoing obstruction. Parkview cannot benefit from DLA's efforts while simultaneously disavowing DLA's role as its counsel when convenient.

## Miscellaneous Allegations Do Not Justify Withholding Escrow

Your reference to Con Edison access is both irrelevant and incorrect. The Settlement Agreement does not require such access, and in any event Parkview has paid Con Edison directly since 2024. This allegation, like others in your letter, appears designed to manufacture leverage rather than enforce contractual rights.

As set forth above, no court has found a breach of the Settlement Agreement and the ninety-day period has expired. Accordingly, the escrow release conditions have been satisfied and there is no

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, Vedder Price Pte. Ltd., which operates in Singapore, and Vedder Price (FL) LLP, which operates in Florida.
VP/#73041638.2



legitimate basis, contractual or otherwise, to continue withholding the escrowed funds (excluding interest thereon).

All rights, remedies, objections, and defenses are expressly reserved. Nothing herein constitutes a waiver of any position previously asserted or to be asserted.

Please feel free to reach out to me directly by phone at 212.407.6941 or by email at rsalame@vedderprice.com with any questions or concerns.

Sincerely,

Vedder Price P.C.

By:  ____/s/ Robert Salame_____
Robert Salame

**Chipman Brown Cicero & Cole, LLP**
William E. Chipman Jr.
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801

and

Richard Wynne (richard.wynne@hoganlovells.com)
David Rownd (drownd@vedderprice.com)
Michael Schein (mschein@vedderprice.com)
Olivia R. Wall (olivia.wall@dentons.com)
Lynn P. Harrison III (lynn.harrisoniii@dentons.com)
Elizabeth Teutenberg Ferrick (elizabeth.ferrick@dentons.com)
Neal Kronley (neal.kronley@us.dlapiper.com)
Stuart Brown (stuart.brown@us.dlapiper.com)
David Riley (david.riley@us.dlapiper.com)

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, Vedder Price Pte. Ltd., which operates in Singapore, and Vedder Price (FL) LLP, which operates in Florida.
VP/#73041638.2

## Exhibit 12

**December 17 First American Letter**



**Elizabeth Teutenberg Ferrick**

elizabeth.ferrick@dentons.com
D    +1 314-259-5910

Dentons US LLP
101 South Hanley Road
Suite 600
St. Louis, MO  63105-3435
United States

dentons.com

December 17, 2025

Parkview Financial REIT, LP
11440 San Vicente Boulevard, 2nd Floor
Los Angeles, CA 90049
Attention: Paul Rahimian and Ted Jung

Hudson 1702, LLC
Hudson 1701/1706, LLC
c/o Parkview Financial REIT, LP
11440 San Vicente Boulevard, 2nd Floor
Los Angeles, CA 90049
Attention: Paul Rahimian and Ted Jung

CSC Hudson LLC
459 Columbus Avenue, Unit #1082
New York, New York 10024
Attention: Alberto Smeke Saba and Salomon Smeke Saba

Alberto Smeke Saba
Salomon Smeke Saba
459 Columbus Avenue, Unit #1082
New York, New York 10024
Attention: Alberto Smeke Saba and Salomon Smeke Saba

Re:    **Copies of Dispute Notices Pursuant to August 7, 2025 Escrow Agreement**

Dear Messrs. Rahimian, Jung, Smeke Saba, and Smeke Saba:

Reference is made to (i) that certain Escrow Agreement dated August 7, 2025 (the "Escrow Agreement"), by and among Parkview Financial REIT, LP ("Administrative Agent" or "Lender"), Hudson 1701/1706, LLC and Hudson 1702, LLC (collectively, "Borrower"), CSC Hudson LLC ("Holdings"), Alberto Smeke Saba and Salomon Smeke Saba (collectively, "Guarantor"), and First American Title Insurance Company ("Escrow Agent"); (ii) Dispute Notice dated December 12, 2025 from David P. Simonds of Hogan Lovells US LLP on behalf of Administrative Agent (the "Administrative Agent Dispute Notice"); and (iii) Dispute Notice dated December 15, 2025 from Neal Kronley of DLA Piper LLP (US) on behalf of Borrower ("Borrower Dispute Notice").

**Puyat Jacinto & Santos ► Link Legal ► Zaanouni Law Firm & Associates ► LuatViet ►** For more information on the firms that have come together to form Dentons, go to dentons.com/legacyfirms



Messrs. Rahimian, Jung, Smeke Saba and Smeke Saba
**December 17, 2025**
Page 2

dentons.com

Pursuant to Section 4(d)(i) of the Escrow Agreement:

> If Escrow Agent receives a Dispute Notice within such ten (10) business day period (or the additional five (5) business day period following delivery of a second Receipt Notice), Escrow Agent shall deliver a copy of such Dispute Notice to each of the other Parties and shall retain the Escrow Funds in the Escrow Account pending receipt of a joint written direction signed by each of Administrative Agent and Guarantor authorizing the disbursement of the Escrow Funds, or a copy of a final decision of an arbitrator or final unappealable order of a court of competent jurisdiction with respect to distribution of the Escrow Funds.

Copies of the Administrative Agent Dispute Notice and Borrower Dispute Notice are attached hereto in accordance with Section 4(d)(i) of the Escrow Agreement.

Please note that this letter is submitted for informational purposes only pursuant to the terms of the Escrow Agreement and is not intended as a demand for payment or an attempt to collect a debt. Moreover, this letter does not constitute an admission on the part of the Escrow Agent that the Escrow Funds are: (i) due and owing to any party, (ii) subject to the automatic stay by virtue of the Borrower's voluntary petition under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* ("Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware; (iii) deemed property of the estate of the Borrower under the provisions of the Bankruptcy Code. The Escrow Agent is simply providing this information to you solely in the ordinary course of business and to comply with the Escrow Agent's ministerial duties under Section 7(b)(i) of the Escrow Agreement.

Very truly yours,

Dentons US LLP
Counsel for First American Title Insurance Company

Elizabeth Teutenberg Ferrick

Attachments



dentons.com

cc:    Vedder Price P.C.
       1633 Broadway, 31st Floor
       New York, New York 10019
       Attention: Robert Salame, Esq.
       rsalame@vedderprice.com

       DLA Piper LLP (US)
       1251 Avenue of the Americas, 27th Floor
       New York, New York 10020
       Attention: Neal E. Kronley, Esq.
       neal.kronley@us.dlapiper.com

       Hogan Lovells US LLP
       1999 Avenue of the Stars, Suite 1400
       Los Angeles, California 90067
       Attention: David P. Simonds
       david.simonds@hoganlovells.com

       Dentons US LLP
       1221 Avenue of the Americas
       New York, New York 10020
       Attention: Lynn P. Harrison III, Esq.
       lynn.harrisoniii@dentons.com

# Exhibit A



Hogan Lovells US LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
T  +1 310 785 4600
F  +1 310 785 4601
www.hoganlovells.com

December 12, 2025

**By Email**

First American Title Insurance Company
666 Third Avenue
New York, NY 10017
Attention: Mr. Andrew Jaeger
Email: ajaeger@firstam.com

*With a copy to*:
Elizabeth Teutenberg Ferrick, Esq.
Dentons US LLP
101 South Hanley Road, Suite 600
St. Louis, MO 63105-3435
Email: elizabeth.ferrick@dentons.com

Re:      ***August 7, 2025 Escrow Agreement – DISPUTE NOTICE***

Dear Escrow Agent:

Hogan Lovells US LLP ("Hogan Lovells") is counsel to Parkview Financial REIT, LP ("Administrative Agent").  This letter refers to (i) that certain escrow agreement dated August 7, 2025 (the "Escrow Agreement"), by and among Parkview Financial REIT, LP ("Administrative Agent" or "Lender"), Hudson 1701/1706, LLC and Hudson 1702, LLC (collectively, "Borrower"), CSC Hudson LLC ("Holdings"), Alberto Smeke Saba and Salomon Smeke Saba (collectively, "Guarantor"), and First American Title Insurance Company, as escrow agent (the "Escrow Agent"), and (ii) that certain settlement agreement, dated August 7, 2025, by and among Parkview, the Debtors, Holdings, and the Guarantors.  Hogan Lovells is in receipt of your letter dated December 9, 2025 and hereby respond thereto.

**Basis for Non-Disbursement of Escrow Funds**

Pursuant to Section 2(e) and 2(f) of the Settlement Agreement, Holdings and the Guarantors were required to deliver to the Administrative Agent, no later than ten (10) days after the Effective Date (i.e., by August 17, 2025), "any and all drawings, plans, warranties, licenses, permits, approvals, registrations and other authorizations and similar or related documentation for the use, development or operation of the Property," and to "cooperate, as reasonably requested by Administrative Agent or Lender, including, without limitation by executing and delivering such instruments or documents, and taking such other action, as the Administrative Agent or Lender may reasonably request."

Hogan Lovells US LLP is a limited liability partnership registered in the state of Delaware.  "Hogan Lovells" is an international legal practice that includes Hogan Lovells US LLP and Hogan Lovells International LLP, with offices in:  Alicante  Amsterdam  Baltimore  Beijing  Berlin  Birmingham  Boston  Brussels  Colorado Springs  Denver  Dubai  Dublin  Dusseldorf  Frankfurt  Hamburg  Hanoi  Ho Chi Minh City  Hong Kong  Houston  London  Los Angeles  Luxembourg  Madrid  Mexico City  Miami  Milan  Minneapolis  Monterrey  Munich  New York  Northern Virginia  Paris  Philadelphia  Riyadh  Rome  San Francisco  São Paulo  Shanghai  Silicon Valley  Singapore  Tokyo  Washington, D.C.  For more information see www.hoganlovells.com.

\\4165-4021-3603  v1

Escrow Agent                              - 2 -                      December 12, 2025

Despite repeated requests, Holdings and the Guarantors have failed to comply with these obligations, including, without limitation, by:

- their failure to deliver a complete set of required documents and information by August 17, 2025, and continuing to date, including drawings, plans, technical engineering documentation, warranties, licenses, permits, approvals, registrations, and ConEdison utility account information;

- their refusal to provide consent for MG Engineering D.P.C. to release technical engineering drawings, despite requests on October 16, 20, and 22, 2025; and

- their failure to respond to requests for information by the Borrower by the deadlines of October 27, 2025, and October 30, 2025, and continued deficiencies in document production following court intervention on November 3, 2025.

These failures constitute material breaches of Sections 2(e) and 2(f) of the Settlement Agreement. Under Section 2(d) of the Settlement Agreement and Section 4(d)(i) of the Escrow Agreement, the remainder of the Cure Delivery Fee may only be delivered to the Guarantors "provided the Guarantors have not breached this Agreement as determined by a court of competent jurisdiction." As Debtors and Parkview have provided notice of breach, and in light of the ongoing dispute, the Escrow Agent is not authorized to release any funds to Holdings or the Guarantors absent joint written instructions from all parties or a final, unappealable order of a court of competent jurisdiction.

Accordingly, we respectfully request that the Escrow Agent refrain from disbursing any escrow funds to Holdings or the Guarantors until such time as the dispute regarding breach of the Settlement Agreement has been resolved in accordance with the terms of the Escrow Agreement and applicable law.

The Administrative Agent reserves all rights, privileges, and protections, whether arising under contract, statute, common law, or otherwise, including without limitation all attorney–client, work product, joint-defense, and other applicable privileges. By providing the information contained herein, the Administrative Agent does not waive, and expressly preserves, all objections and defenses in this matter, including as to jurisdiction, venue, standing, discovery scope, or any other procedural or substantive issue. Nothing contained in this correspondence shall be deemed or construed as an admission, agreement, or waiver of any kind. This letter is not intended to constitute a demand for payment, an attempt to collect a debt, or any other action that would violate the automatic stay imposed in the Borrower's chapter 11 case.

Please confirm receipt of this letter and advise if you require any further information.


Very truly yours,



David P. Simonds
Partner
David.Simonds@hoganlovells.com
D (310) 785-4647

# Exhibit B



**DLA Piper LLP (US)**
1251 Avenue of the Americas
27th Floor
New York, New York 10020-1104
www.dlapiper.com

Neal Kronley
Neal.Kronley@us.dlapiper.com
T   212.335.4584
F   917.778.8584

December 15, 2025

*Via Email*

Robert Salame
Vedder Price P.C.
1633 Broadway, 31st Floor
New York, New York 10019
rsalame@vedderprice.com

Elizabeth Teutenberg Ferrick
Dentons US LLP
101 South Hanley Road, Suite 600
St. Louis, MO 63105-3435
elizabeth.ferrick@dentons.com

Re:    **Dispute Notice and Correspondence regarding Escrow Agreement dated August 7, 2025 (the "Escrow Agreement"), by and among Parkview Financial REIT, LP ("Administrative Agent" or "Lender"), Hudson 1701/1706, LLC and Hudson 1702, LLC (collectively, "Debtors"), CSC Hudson LLC ("Holdings"), Alberto Smeke Saba and Salomon Smeke Saba (collectively, "Guarantor"),**

Dear Counsel:

This firm serves as proposed special litigation and corporate counsel to Debtors.

We write in response to the email from Vedder Price, counsel to Holdings and Guarantor, dated December 11, 2025, and the correspondence from First American Title Insurance Company, dated December 9, 2025, as escrow agent (the "Escrow Agent") pursuant to the Escrow Agreement.

As an initial matter, Debtors are unquestionably a party to the Escrow Agreement as indicated by the signature page and being identified as a party in the first paragraph. Holdings' and Guarantor's statement to the contrary is patently wrong and contrary to the broader terms of the Escrow Agreement.

Regarding the Escrow Account, and as we advised the Escrow Agent on November 3, 2025, Section 108(b) of the Bankruptcy Code operates to toll the time periods in the Escrow Agreement under which the Debtors are required to submit a Dispute Notice after receipt of the original or second Receipt Notice, as such time periods were not expired prior to the October 22, 2025 petition date. Holdings and Guarantor are aware of this fact and their efforts to interfere with the Debtors' rights constitutes a violation of the automatic stay and, if not immediately ceased, require the Debtors to take protective action before the Bankruptcy Court.



December 15, 2025
Page Two

Finally, counsel to Holdings and Guarantor suggest that this firm represents Parkview, or is acting on behalf of Parkview is a misrepresentation and a pretextual effort to advance the arguments of Holdings and the Guarantor in the Bankruptcy Court. As stated in its retention application, DLA Piper terminated its representation of Parkview with respect to the Hudson project prior to the petition date and as you are well aware Parkview's interests are represented by Hogan Lovells. In any event, you have placed this issue before the Bankruptcy Court and DLA Piper will respond in that Court. DLA Piper disputes each characterization, but this is not the place to argue on these points.

In any event, we have added Parkview's counsel, Hogan Lovells, to this communication, and we understand that they have separately responded on behalf of Parkview. We demand that counsel to Holdings and Guarantor include all relevant parties going forward, and that any *ex parte* communications between the Escrow Agent, Holdings and Guarantor cease and desist.

Debtors reserve all rights, remedies, and cause of action, and waive none.

Sincerely,

**DLA Piper LLP (US)**

**Proposed Special Corporate and Litigation Counsel to the Debtors**

Neal Kronley

Copy to

**DLA Piper LLP (US)**
Stuart Brown
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801

and

**Chipman Brown Cicero & Cole, LLP**
William E. Chipman Jr.
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801

and



December 15, 2025
Page Three

**Hogan Lovells US LLP**
Richard Wynne
David P. Simonds
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067

David Rownd (drownd@vedderprice.com)
Michael Schein (mschein@vedderprice.com)
Olivia R. Wall (olivia.wall@dentons.com)
Lynn P. Harrison III (lynn.harrisoniii@dentons.com)

## Exhibit 13

**December 20 Hogan Letter**



Hogan Lovells US LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
T  +1 310 785 4600
F  +1 310 785 4601
www.hoganlovells.com

December 20, 2025

**By Email**

Robert Salame, Esq.
Vedder Price P.C.
1633 Broadway, 31st Floor
New York, NY 10019

**Re:      Settlement Agreement – Response to December 16 Letter**

Dear Mr. Salame:

As you know, Hogan Lovells US LLP is counsel to Parkview Financial REIT, LP, the Administrative Agent under that certain Settlement Agreement dated August 7, 2025.  I write in response to your letter dated December 16, 2025, regarding the release of escrowed funds under the Settlement Agreement.

**1. Mischaracterization of the Settlement Agreement – "Absent" vs. "Provided"**

Your letter asserts that, "**absent** a determination by a court of competent jurisdiction that the Guarantors breached the Settlement Agreement, the remaining Cure Delivery Fee must be released to the Guarantors." This misrepresents the language and intent of the Settlement Agreement.

Section 2(d) of the Settlement Agreement states that the remainder of the Cure Delivery Fee "shall be delivered to the Guarantors within five (5) business days of the earlier to occur of (x) receipt by Borrower of the Cure Approval and Lifting of the Stop Work Order ... or (y) the date that is ninety (90) days after the Effective Date, **provided** the Guarantors have not breached this Agreement as determined by a court of competent jurisdiction."

The use of "provided" in this context is critical. It establishes a condition precedent to the release of funds: the Guarantors must not have breached the Settlement Agreement, as determined by a court of competent jurisdiction. This means the burden rests with the Guarantors to obtain a court order affirming no breach. The Administrative Agent is not required to prove a breach; rather, the Guarantors have the burden of affirmatively demonstrating compliance. Until such a determination is made, the Administrative Agent is not obligated to authorize the release of escrowed funds.

**2. Communications and Dispute Notice Requirements**

There have been numerous communications (both written and verbal) between the respective business representatives of the Administrative Agent and the Guarantors in which the Administrative Agent has requested (but not received) certain documents, information, and other cooperation pursuant to the Settlement Agreement. Section 4(d)(i) of the Escrow Agreement provides that the

Hogan Lovells US LLP is a limited liability partnership registered in the state of Delaware.  "Hogan Lovells" is an international legal practice that includes Hogan Lovells US LLP and Hogan Lovells International LLP, with offices in:  Alicante  Amsterdam  Baltimore  Beijing  Berlin  Birmingham  Boston  Brussels  Colorado Springs  Denver  Dubai  Dublin  Dusseldorf  Frankfurt  Hamburg  Hanoi  Ho Chi Minh City  Hong Kong  Houston  London  Los Angeles  Luxembourg  Madrid  Mexico City  Miami  Milan  Minneapolis  Monterrey  Munich  New York  Northern Virginia  Paris  Philadelphia  Riyadh  Rome  San Francisco  São Paulo  Shanghai  Silicon Valley  Singapore  Tokyo  Washington, D.C.  For more information see www.hoganlovells.com.

\\4136-9879-9715  v1

Administrative Agent may deliver a "Dispute Notice" if it disputes the Guarantors' entitlement to the escrowed funds. The Agreement does not require the Administrative Agent to enumerate every alleged deficiency in such notice. The purpose of the Dispute Notice is to preserve the Administrative Agent's rights and ensure that any unresolved issues are subject to judicial determination, not to provide an exhaustive list of alleged breaches.

Accordingly, the Administrative Agent's actions have been consistent with the governing agreements, and any assertion to the contrary is unfounded.

### 3. Reservation of Rights

The Administrative Agent expressly reserves all rights, privileges, and protections, whether arising under contract, statute, common law, or otherwise, including without limitation all attorney-client, work product, joint-defense, and other applicable privileges. Nothing contained herein shall be deemed or construed as an admission, agreement, or waiver of any kind. Without limiting the foregoing, the Administrative Agent reserves the right to claim that (i) the Administrative Agent is not (nor is the Borrower) obligated to pay any additional fees under Section 3 of the Settlement Agreement, and (ii) Section 5(b) of the Settlement Agreement—including termination of the referenced guarantees—is null and void.

Please call me if you wish to discuss this further.

Very truly yours,

David P. Simonds
Partner
David.Simonds@hoganlovells.com
D (310) 785-4647