# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>HUDSON 1701/1706, LLC, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 25-11853 (KBO)<br><br>(Jointly Administered) |
| FIRST AMERICAN TITLE INSURANCE COMPANY, solely as Escrow Agent and not in its individual capacity,<br><br>Plaintiff,<br><br>v.<br><br>HUDSON 1701/1706, LLC, HUDSON 1702, LLC, ALBERTO SMEKE SABA, SALOMON SMEKE SABA, CSC HUDSON LLC and PARKVIEW FINANCIAL REIT, LP,<br><br>Defendants.<br><br>ALBERTO SMEKE SABA, SALOMON SMEKE SABA and CSC HUDSON LLC,<br><br>Defendants-Counterplaintiffs,<br><br>v.<br><br>FIRST AMERICAN TITLE INSURANCE COMPANY, solely as Escrow Agent and not in its individual capacity,<br><br>Plaintiff-Counterdefendant. | Adv. No. 25-52468 (KBO) |

**ALBERTO SMEKE SABA, SALOMON SMEKE SABA AND CSC HUDSON LLC'S ANSWER TO COMPLAINT FOR INTERPLEADER WITH AFFIRMATIVE DEFENSES AND COUNTERCLAIM**

Defendants Alberto Smeke Saba, Salomon Smeke Saba and CSC Hudson LLC (together, the "Guarantor Parties") by and through their undersigned counsel, and for their Answer with

Affirmative Defenses and Counterclaim to the above-captioned plaintiff's ("Plaintiff") *Complaint for Interpleader* [Adv. Pro. Dkt. No. 1] (the "Complaint"), state as follows:

## THE PARTIES

1. Guarantor Parties are without sufficient information or belief to either admit or deny the allegations in paragraph 1 and on that basis deny.

2. Guarantor Parties admit that Hudson 1701/1706, LLC is a Delaware limited liability company with an address located at 11440 San Vicente Boulevard, 2nd Floor, Los Angeles, California 90049. Guarantor Parties are without sufficient information or belief to either admit or deny the remaining allegations in paragraph 2 and on that basis deny.

3. Guarantor Parties admit that Hudson 1702, LLC is a Delaware limited liability company with an address located at 11440 San Vicente Boulevard, 2nd Floor, Los Angeles, California 90049. Guarantor Parties are without sufficient information or belief to either admit or deny the remaining allegations in paragraph 3 and on that basis deny.

4. Admitted.

5. Denied.

6. Guarantor Parties admit that CSC Hudson LLC is a Delaware limited liability company with an address located at 459 Columbus Avenue, Unit #1082, New York, New York 10024, but deny the remaining allegations in paragraph 2.

7. Admitted.

## JURISDICTION AND VENUE

8. Paragraph 8 consists of conclusions of law to which no response is required. To the extent there are any factual allegations they are denied.

9. Paragraph 9 consists of conclusions of law to which no response is required. To the extent there are any factual allegations they are denied.

10. Paragraph 10 consists of conclusions of law to which no response is required. To the extent there are any factual allegations they are denied.

11. Paragraph 11 consists of conclusions of law to which no response is required. To the extent there are any factual allegations they are denied.

## BACKGROUND

**A.    The Settlement and Escrow Agreements**

12. Admitted.

13. Admitted.

14. Admitted.

15. Admitted.

16. Guarantor Parties are without sufficient information or belief to either admit or deny the allegations in paragraph 16 and on that basis deny.

17. The allegations in paragraph 17 are Plaintiff's characterizations of the Escrow Agreement (as defined below) annexed as Exhibit B to its Complaint. Guarantor Parties refer the Court to Exhibit B of the Complaint for its true and accurate content. Guarantor Parties deny the allegations set forth in paragraph 17 to the extent they are inconsistent with or mischaracterize Exhibit B to the Complaint.

**B.    Commencement of the Chapter 11 Cases and Purported Claim Notice**

18. Admitted.

19. Admitted.

20. The allegations in paragraph 20 are Plaintiff's characterizations of the November 3 DLA Letter (as defined below) annexed as Exhibit C to its Complaint. Guarantor Parties refer the Court to Exhibit C of the Complaint for its true and accurate content. Guarantor

Parties deny the allegations set forth in paragraph 20 to the extent they are inconsistent with or mischaracterize Exhibit C to the Complaint.

21. Admitted.

22. Guarantor Parties admit that on November 14, 2025 a Claim Notice (as defined below) was sent to Plaintiff as required under section 4(d) of the Escrow Agreement (as defined below) and refer the Court to Exhibit D of the Complaint for its true and accurate content. Guarantor Parties deny the allegations set forth in paragraph 22 to the extent they are inconsistent with or mischaracterize Exhibit D to the Complaint.

**C.    First American's Response to the Conflicting Demands**

23. Guarantor Parties admit the existence of the December 4 First American Letter (as defined below) and refer the Court to Exhibit E of the Complaint for its true and accurate content. Guarantor Parties deny the allegations set forth in paragraph 23 to the extent they are inconsistent with or mischaracterize Exhibit E to the Complaint.

24. The allegations in paragraph 24 are Plaintiff's characterizations of Exhibit E to the Complaint. Guarantor Parties refer the Court to Exhibit E of the Complaint for its true and accurate content. Guarantor Parties deny the allegations set forth in paragraph 24 to the extent they are inconsistent with or mischaracterize Exhibit E to the Complaint.

25. Admitted.

26. The allegations in paragraph 26 are Plaintiff's characterizations of Exhibit F to its Complaint. Guarantor Parties refer the Court to Exhibit F of the Complaint for its true and accurate content. Guarantor Parties deny the allegations set forth in paragraph 26 to the extent they are inconsistent with or mischaracterize Exhibit F to the Complaint.

27. Admitted.

28. The allegations in paragraph 28 are Plaintiff's characterizations of Exhibit G to its Complaint. Guarantor Parties refer the Court to Exhibit G of the Complaint for its true and accurate content. Guarantor Parties deny the allegations set forth in paragraph 28 to the extent they are inconsistent with or mischaracterize Exhibit G to the Complaint.

**D.     Competing Dispute Notices from Parkview and Guarantor Parties**

29. Admitted.

30. The allegations in paragraph 30 are Plaintiff's characterizations of Exhibit H to its Complaint. Guarantor Parties refer the Court to Exhibit H of the Complaint for its true and accurate content. Guarantor Parties deny the allegations set forth in paragraph 30 to the extent they are inconsistent with or mischaracterize Exhibit H to the Complaint.

31. Admitted.

32. The allegations in paragraph 32 are Plaintiff's characterizations of Exhibit I to its Complaint. Guarantor Parties refer the Court to Exhibit I of the Complaint for its true and accurate content. Guarantor Parties deny the allegations set forth in paragraph 32 to the extent they are inconsistent with or mischaracterize Exhibit I to the Complaint.

33. Admitted.

34. The allegations in paragraph 34 are Plaintiff's characterizations of Exhibit J to its Complaint. Guarantor Parties refer the Court to Exhibit J of the Complaint for its true and accurate content. Guarantor Parties deny the allegations set forth in paragraph 34 to the extent they are inconsistent with or mischaracterize Exhibit J to the Complaint.

35. Admitted.

36. Guarantor Parties admit that on December 16, 2025 they demanded a release of the escrowed funds from Plaintiff. The remaining allegations in paragraph 36 are Plaintiff's characterizations of Exhibit K to its Complaint. Guarantor Parties refer the Court to Exhibit K of

the Complaint for its true and accurate content. Guarantor Parties deny the allegations set forth in paragraph 36 to the extent they are inconsistent with or mischaracterize Exhibit K to the Complaint.

**E.    Uncertainty as to First American's Obligations Under the Escrow Agreement**

37.    The allegations in paragraph 37 are Plaintiff's characterizations of Exhibits A through L to its Complaint. Guarantor Parties refer the Court to Exhibits A through L of the Complaint for their true and accurate content. Guarantor Parties deny the allegations set forth in paragraph 37 to the extent they are inconsistent with or mischaracterize Exhibits A through L to the Complaint.

38.    Paragraph 38 consists of legal conclusions to which no response is required. To the extent there are any factual allegations contained therein they are denied.

39.    Denied.

**F.    Escrow Agent is Entitled to Fees and Expenses**

40.    The allegations in paragraph 40 are Plaintiff's characterizations of Exhibit B to its Complaint. Guarantor Parties refer the Court to Exhibit B of the Complaint for its true and accurate content. Guarantor Parties deny the allegations set forth in paragraph 40 to the extent they are inconsistent with or mischaracterize Exhibit B to the Complaint.

41.    The allegations in paragraph 41 are Plaintiff's characterizations of Exhibit B to its Complaint. Guarantor Parties refer the Court to Exhibit B of the Complaint for its true and accurate content. Guarantor Parties deny the allegations set forth in paragraph 41 to the extent they are inconsistent with or mischaracterize Exhibit B to the Complaint.

## INTERPLEADER IS THE PROPER REMEDY

42.    Paragraph 42 consists of legal conclusions to which no response is required. To the extent there are any factual allegations contained therein, they are denied.

43. Paragraph 43 consists of legal conclusions to which no response is required. To the extent there are any factual allegations contained therein, they are denied.

44. Paragraph 44 consists of legal conclusions to which no response is required. To the extent there are any factual allegations contained therein, they are denied.

45. Paragraph 45 consists of legal conclusions to which no response is required. To the extent there are any factual allegations contained therein, they are denied.

46. The allegations in paragraph 46 are not directed to Guarantor Parties and, therefore, Guarantor Parties deny said allegations and leave Plaintiff to its proof and denies the same.

## AFFIRMATIVE DEFENSES

Guarantor Parties assert the following defenses without assuming any burden of production or proof that it would not otherwise have.

## FIRST DEFENSE

Plaintiff breached its obligations under the Escrow Agreement by, among other things, mistakenly adopting the erroneous positions of the Debtors (as defined below) that they are a Confirming Party (as defined in the Escrow Agreement) and failing to provide timely notices as required under the Escrow Agreement, which frustrated Guarantor Parties' rights under the Escrow Agreement with regard to their entitlement to the Escrow Funds (as defined below).

## SECOND DEFENSE

The Complaint fails, in whole or in part, to state a claim upon which relief may be granted.

## THIRD DEFENSE

The claims in the Complaint are barred by the doctrine of *in pari delicto*.

**FOURTH DEFENSE**

The claims in the Complaint are barred by the doctrine of unclean hands.

**FIFTH DEFENSE**

The claims in the Complaint are barred based on the existence and/or provisions of the Escrow Agreement.

**SIXTH DEFENSE**

The claims in the Complaint are barred by estoppel and waiver.

**SEVENTH DEFENSE**

The claims in the Complaint are barred by breach of contract.

**COUNTERCLAIM AGAINST PLAINTIFF-COUNTERDEFENDANT
FIRST AMERICAN TITLE INSURANCE COMPANY**

Guarantor Parties, by and through their undersigned counsel, bring this Counterclaim against Plaintiff-Counterdefendant First American Title Insurance ("First American") alleging, as follows:

**THE PARTIES**

1. Defendant-Counterplaintiff Alberto Smeke Saba is a citizen of the State of New York.

2. Defendant-Counterplaintiff Salomon Smeke Saba is a citizen of the State of New Jersey.

3. Defendant-Counterplaintiff CSC Hudson LLC is a Delaware limited liability company with an address located at 459 Columbus Avenue, Unit #1082, New York, New York 10024, whose sole member is CSC Holding, LLC, a Delaware limited liability company. The sole members of CSC Holding, LLC are Alberto Smeke Saba and Salomon Smeke Saba.

4. Upon information and belief, Plaintiff-Counterdefendant First American is a national provider of title insurance organized and existing under the laws of the United States, with its main office, as set forth in its articles of association, located in the State of California.

## JURISDICTION AND VENUE

5. The United States Bankruptcy Court for the District of Delaware (this "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

7. This is a core proceeding pursuant to 28 U.S.C. § 157(B)(2). The statutory and legal predicates for the relief sought in this Counterclaim include 11 U.S.C. § 105 and Bankruptcy Rule 7001.

8. Guarantor Parties consent to entry of a final order or judgment by this Court in the Counterclaim.

## FACTS

**A.   The Settlement Agreement and Escrow Agreement**

9. On April 10, 2025, Parkview Financial REIT, LP ("Parkview"), Hudson 1701/1706, LLC and Hudson 1702, LLC (together, the "Debtors"), and Guarantor Parties entered into that certain Agreement dated as of April 10, 2025 and commonly referred to as the Financial Agreement (the "Financial Agreement"). A true and correct copy of the Financial Agreement is attached hereto as **Exhibit 1**.

10. At the time of execution of the Financial Agreement by the parties thereto, the Debtors were indirectly owned and controlled by Guarantor Parties.

11. Pursuant to the Financial Agreement, Parkview was required to make payment to Guarantor Parties in the amount of $12,500,000 (the "J-1 Incentive Payment") upon achievement of a particular milestone (the "J-1 Milestone"). Financial Agreement, §3.3

12. On May 19, 2025, Debtors and Guarantor Parties, through their counsel, informed Parkview via email communication that the J-1 Milestone was achieved and requested the J-1 Incentive Payment. A true and correct copy of such email communication is attached hereto as **Exhibit 2**.

13. On May 21, 2025, Parkview, for the first time, introduced new conditions to the payment of the J-1 Incentive Payment. Specifically, Parkview's counsel set forth in an email communication three (3) new conditions (the "New Payment Conditions") to the J-1 Incentive Payment. A true and correct copy of such email communication is attached hereto as **Exhibit 3**.

14. On May 21, 2025, Debtors and Guarantor Parties, via email communication from their counsel, provided evidence and confirmed that two (2) of the New Payment Conditions were satisfied. A true and correct copy of such email communication is attached hereto as **Exhibit 4**.

15. On May 22, 2025, Parkview counsel confirmed in an email communication that the two (2) New Payment Conditions were satisfied. A true and correct copy of such email communication is attached hereto as **Exhibit 5**.

16. On May 30, 2025, Debtors and Guarantor Parties, via email communication from their counsel, provided evidence and confirmed that the third (3) and final New Payment Condition was satisfied and demanded the J-1 Incentive Payment. A true and correct copy of such email communication is attached hereto as **Exhibit 6**.

17. On June 4th and 5th, 2025, Debtors and Guarantor Parties, via email communications from counsel, followed up with Parkview in regards to payment of the J-1 Incentive Payment. True and correct copies of such email communications are attached hereto as **Exhibit 7**.

18. On June 5, 2025, Parkview, via email communication from its counsel, notified Debtors and Guarantor Parties that Parkview would not make the J-1 Incentive Payment and that the Debtors and Guarantor Parties could no longer rely on prior email communications confirming that the New Payment Conditions had been satisfied. A true and correct copy of such email communication is attached hereto as **Exhibit 8**.

19. On June 6, 2025, Debtors and Guarantor Parties, via email communication from their counsel, protested the bad faith actions by Parkview and again demanded payment. A true and correct copy of such email communication is attached hereto as **Exhibit 9**.

20. Following Parkview's failure to make the J-1 Incentive Payment, Debtors, Guarantor Parties and Parkview began negotiation of a new settlement agreement, which, among other things, required an upfront payment prior to completion of the incentives set forth in the Financial Agreement given the prior bad acts of Parkview.

21. Notwithstanding such ongoing settlement discussions among the parties, Parkview commenced an action against Guarantor Parties on June 1, 2025 (the "Parkview Action").

22. In connection with the Parkview Action, Parkview sought a preliminary injunction compelling Guarantor Parties to perform the incentives under the Financial Services Agreement, while at the same time taking the position that Parkview did not need to make the related incentive payments.

23. On July 16, 2025, the Supreme Court of the State of New York, New York Commercial Division, denied Parkview's request for injunctive relief. Following such denial, settlement discussions continued among the Debtors, Guarantor Parties and Parkview.

24. On July 25, 2025, Parkview obtained full control over the Debtors.

25. On August 7, 2025, Parkview, the Debtors and Guarantor Parties entered into that certain Settlement and Release Agreement (the "<u>Settlement Agreement</u>"). *See* Complaint, Exhibit A.

26. Given the prior bad faith conduct of Parkview in respect of the Financial Agreement, the precedent agreement to the Settlement Agreement, Guarantor Parties required all amounts payable by Parkview under the Settlement Agreement to be held in an escrow account and administered by an escrow agent.

27. On August 7, 2025, in conjunction with the Settlement Agreement, Debtors, Guarantor Parties, Parkview, and First American entered into that certain Escrow Agreement (the "<u>Escrow Agreement</u>"), under which First American acts as the Escrow Agent (as defined therein). *See* Complaint, Exhibit B.

28. While the Debtors are signatories to the Escrow Agreement, because they are not entitled to the any of the escrowed fund, such agreement deliberately expressly defines the term "Party" and the Debtors are not included in that definition. More specifically, the definition of "Party" provides:

> ". . . Alberto Smeke Saba and Salomon Smeke Saba, each a natural person (individually and collectively, as the context may require, and jointly and severally, 'Guarantor'; and together with Holdings, individually and collectively as the context may require, 'Guarantor Parties'), and FIRST AMERICAN TITLE INSURANCE COMPANY, as escrow agent <u>*(the 'Escrow Agent'; and, together with each of Administrative Agent and the Guarantor Parties, each, a 'Party')."*</u>

*See* Complaint, Exhibit B (emphasis added).

29. Pursuant to the Settlement Agreement, Parkview was required to deposit the sum of $4,637,500.00 to an account maintained by First American (the "Escrow Funds").

30. On August 12, 2025, Carl Dulay, the Vice President and Controller of Parkview, confirmed via an email communication that the wire of the Escrow Funds had been sent to First American. A true and correct copy of such email communication is attached hereto as **Exhibit 10**.

31. Upon execution of the Settlement Agreement, First American delivered $3,000,000.00 of the Escrow Funds to Guarantor Parties in accordance with section 4(b) of the Escrow Agreement.

32. Section 4 of the Escrow Agreement provides the conditions upon which First American may disburse the Escrow Funds. Section 4(c) of the Escrow Agreement provides that First American shall disburse the Escrow Funds, or a portion thereof, upon receipt of a joint written direction signed by Parkview and Guarantor Parties. Section 4(d) of the Escrow Agreement also allows Guarantor Parties to submit a Claim Notice (as defined therein) to First American asserting their entitlement to the Escrow Funds and in response First American must send a Receipt Notice (as defined therein) to the other Parties (each a "Confirming Party") within one (1) business day of receiving the Claim Notice. In relevant part, section 4(d) provides:

> If Guarantor is entitled to receive the remainder of the Escrow Funds or a portion thereof pursuant to the Settlement Agreement, Guarantor (in such capacity, the "Requesting Party") may provide written notice to Escrow Agent that Guarantor is entitled to receive the Escrow Funds or a portion thereof pursuant to the Settlement Agreement (such notice the "Claim Notice") and that the Escrow Funds (or portions thereof) be distributed in accordance with the instructions given in such Claim Notice. *Escrow Agent shall provide written notice (the "Receipt Notice") to the other Parties (each, a "Confirming Party") of its receipt of such Claim Notice (together with a copy of the Claim Notice) no later than one (1) business day after its receipt of such Claim Notice*, provided such written notice may be delivered to the Parties via email in accordance with Section 9(b).

*See* Complaint, Exhibit B at § 4(d). (emphasis added).

33. If a Confirming Party to the Escrow Agreement disputes that the Requesting Party is entitled to receive the Escrow Funds, Section 4(d)(i) requires the timely submission by a Confirming Party of a Dispute Notice (as defined therein) to First American. In relevant part, upon timely receipt of a Dispute Notice, Section 4(d)(i) provides that:

> Escrow Agent shall deliver a copy of such Dispute Notice to each of the other Parties and shall retain the Escrow Funds in the Escrow Account pending receipt of a joint written direction signed by each of Administrative Agent and Guarantor authorizing the disbursement of the Escrow Funds, or a copy of a final decision of an arbitrator or final unappealable order of a court of competent jurisdiction with respect to distribution of the Escrow Funds.

*Id.* at § 4(d)(i).

**B.     The Claim Notice and Resulting Correspondence**

34. On October 22, 2025 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief in this Court under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code"). After the Petition Date, First American, Guarantor Parties, the Debtors, and Parkview engaged in numerous correspondence regarding Guarantor Parties' request for the release of the remaining Escrow Funds to them pursuant to the terms of the Escrow Agreement.

35. On November 3, 2025, the Debtors sent First American a letter improperly asserting themselves as a Confirming Party and arguing that Section 108 of the Bankruptcy Code operated to toll the Debtors' time periods in the Escrow Agreement (the "November 3 DLA Letter"). *See* Complaint, Exhibit C.

36. On November 14, 2025, understanding that the Debtors are not a Confirming Party, nor have standing to claim any right to the Escrow Funds (other than the interest earned thereon pursuant to Section 2 of the Escrow Agreement), counsel for Guarantor Parties sent First American a Claim Notice demanding that First American release the remaining Escrow Funds in

- 14 -

the amount of $1,637,500.00 to Guarantor Parties (the "November 14 Claim Notice").  *See* Complaint, Exhibit D.

37. On December 4, 2025 and in response to the November 3 DLA Letter and the November 14 Claim Notice, First American sent a letter to Guarantor Parties, Parkview, and the Debtors (the "December 4 First American Letter").  *See* Complaint, Exhibit E.

38. The December 4 First American Letter advised that First American "shall not release any Escrow Funds until Escrow Agent has received joint written instructions as stated in Section 4(c) of the Escrow Agreement; provided, however, as also stated in Section 4(d)(i), Escrow Agent may release the Escrow Funds upon receipt of a court order and may deposit the funds in a court of competent jurisdiction in New York." *Id*.

39. Upon information and belief, the First American never sent a Receipt Notice to the Confirming Parties within one (1) business day of receipt of Guarantor Parties' November 14 Claim Notice as required by Section 4(d) of the Escrow Agreement.

40. On December 9, 2025, First American wrote a letter to the Debtors (the "December 9 First American Letter") twenty-six (26) days after the November 14 Claim Notice.  *See* Complaint, Exhibit F.  Pursuant to the December 9 First American Letter, First American requested that the Debtors and Guarantor Parties send First American a joint agreement as to the resolution of the disbursement of the Escrow Funds.  In response, on December 11, 2025, counsel for Guarantor Parties sent First American an email, *inter alia*, that the Debtors are not Confirming Parties under the Escrow Agreement, have no right to dispute the November 14 Claim Notice and have no interest in the non-interest portion of the Escrow Funds (the "December 11 Vedder Email").  *See* Complaint, Exhibit G.

**C.     The Untimely Dispute Notices**

41.     Twenty-nine (29) days after the November 14 Claim Notice, on December 12, 2025, counsel for Parkview wrote a letter to First American (the "December 12 Hogan Letter"). *See* Complaint, Exhibit H.  The December 12 Hogan Letter notified First American of Parkview's bald allegations that Guarantor Parties had failed to comply with their material obligations under the Settlement Agreement, and in light of such alleged breach directed First American not to disburse any of the Escrow Funds absent joint written instructions from all Parties or a final, unappealable order of a court of competent jurisdiction.  *Id*.

42.     On December 15, 2025, the Debtors, through their counsel, wrote a letter to counsel for First American and counsel for Guarantor Parties in response to the December 9 First American Letter and the December 11 Vedder Email (the "December 15 DLA Letter"). *See* Complaint, Exhibit I.  The December 15 DLA Letter alleged, among other things, that (a) the Debtors are parties to the Escrow Agreement, (b) Section 108(b) of the Bankruptcy Code was implicated, and (c) any *ex parte* communications between First American and Guarantor Parties must cease and desist.  *Id*.

43.     On December 16, 2025, Guarantor Parties, through their counsel, wrote a letter to counsel for the Debtors (the "December 16 Vedder Letter").  *See* Complaint, Exhibit J.  The December 16 Vedder Letter reiterated the position of Guarantor Parties that (a) the Debtors are not Confirming Parties, (b) the Debtors have no right to the non-interest portion of the Escrow Funds, and (c) communications between First American and Guarantor Parties are neither improper nor *ex parte*.  *Id*.

44.     On December 16, 2025, Guarantor Parties, through their counsel also wrote a letter to counsel for Parkview (the "Second December 16 Vedder Letter").  *See* Complaint,

Exhibit K.  The Second December 16 Vedder Letter (a) demands the immediate release of the Escrow Funds, (b) explains that Guarantor Parties have not violated any provisions of the Settlement Agreement or the Escrow Agreement, and (c) states that unless Guarantor Parties receive written confirmation no later than 5:00 p.m. (ET) on December 18, 2025 that Parkview has withdrawn all objections and has authorized First American to release the Escrow Funds, Guarantor Parties will seek appropriate relief from the Bankruptcy Court, including the release of the Escrow Funds.  *Id*.

45. On December 17, 2025, First American sent a letter to the Debtors, Parkview and Guarantor Parties declaring that a dispute exists pursuant to section 4(d)(i) of the Escrow Agreement and that First American will not release the Escrow Funds until it receives a joint written direction from Parkview and Guarantor Parties or instructions from a court of competent jurisdiction ("<u>December 17 First American Letter</u>").  *See* Complaint, Exhibit L.

### **COUNTERCLAIM COUNT 1 – BREACH OF CONTRACT**
(Against Counter-Defendant First American)

46. Guarantor Parties re-allege and incorporate paragraphs 1 to 45 of the Counterclaim as if fully set forth herein.

47. By the Escrow Agreement's definition of a Confirming Party, the Debtors were purposefully excluded.  More specifically, the Escrow Agreement's definition of "Party" provides:

> ". . . Alberto Smeke Saba and Salomon Smeke Saba, each a natural person (individually and collectively, as the context may require, and jointly and severally, 'Guarantor'; and together with Holdings, individually and collectively as the context may require, 'Guarantor Parties'), and FIRST AMERICAN TITLE INSURANCE COMPANY, as escrow agent <u>*(the 'Escrow Agent'; and, together with each of Administrative Agent and the Guarantor Parties, each, a 'Party').*</u>"

*See* Complaint, Exhibit B (emphasis added).

48. Despite this explicit definition, First American wrongfully adopted the Debtors' position in their November 3 DLA Letter that the Debtors are Confirming Parties with rights to the Escrow Funds and impermissibly treated the November 3 DLA Letter as a Dispute Notice when they refused to release the Escrow Funds to Guarantor Parties in response to the later issued November 14 Claim Notice. *See* Complaint, Exhibits C through E.

49. First American's resulting December 9 Letter adopting the Debtors' erroneous positions caused confusion amongst the parties and frustrated Guarantor Parties' rights to receive the Escrow Funds.

50. The December 9 First American Letter is further problematic because under Section 4(d) of the Escrow Agreement, First American was required to send a Receipt Notice to all other Confirming Parties within one (1) business day of receiving the November 14 Claim Notice, and instead sent the December 9 First American Letter twenty-six (26) days after the November 14 Claim Notice. *See* Complaint, Exhibit B at § 4(d).

51. Despite multiple written notices and demands for release of the Escrow Funds from Guarantor Parties, First American has impermissibly refused to turn over the Escrow Funds to Guarantor Parties.

52. The above-stated actions constitute a breach of the Escrow Agreement.

53. As a direct and proximate cause of First American's breach of the Escrow Agreement, Guarantor Parties have suffered damages in the amount of the unreturned Escrowed Funds and other and further damages in an amount to be proven at trial.

WHEREFORE, as to Count I of the Counterclaim, Guarantor Parties respectfully request that this Court order First American to release to Guarantor Parties the Escrow Funds in the

amount of $1,637,500.00, plus damages, costs, and attorneys' fees in an amount to be proven at trial, and for such other and further relief as this Court deems necessary and just.

### COUNTERCLAIM COUNT II – BREACH OF FIDUCIARY DUTY
(Against Counter-Defendant First American)

54. Guarantor Parties re-allege and incorporate paragraphs 1 to 45 of the Counterclaim as if fully set forth herein.

55. Based on the provisions contained in the Escrow Agreement, First American as Escrow Agent had a fiduciary duty to act with good faith and care toward Guarantor Parties. Guarantor Parties reposed trust and confidence with First American.

56. First American knew and/or had reason to know that Guarantor Parties placed their trust and confidence in it and relied upon it for its control over the Escrow Funds and accepted this trust and confidence. First American undertook such trust and assumed a duty to responsibly administer the Escrow Funds in accordance with the Escrow Agreement.

57. As a result of the trust, confidence, and dependency placed on it by Guarantor Parties, First American owed a fiduciary duty and a duty of good faith and care to Guarantor Parties in the performance of its duties to responsibly administer the Escrow Funds.

58. First American breached its fiduciary duties to Guarantor Parties by adopting the Debtors' incorrect position that they have an interest in the Escrow Funds and by failing to deliver a Receipt Notice of the November 14 Claim Notice to all Confirming Parties within one (1) business day of their receipt of the November 14 Claim Notice.

59. As a direct and proximate result of First American's breach of its fiduciary duty, Guarantor Parties have suffered and continue to suffer damages, including, without limitation, the improper restraint of the Escrow Funds, and other and further damages in an amount to be proven at trial.

WHEREFORE, as to Count II of the Counterclaim, Guarantor Parties respectfully request that this Court direct First American to release the Escrow Funds in the amount of $1,637,500.00 to Guarantor Parties, plus damages, costs, and attorneys' fees in an amount to be proven at trial, and for such other and further relief as this Court deems necessary and just.

## RESERVATION OF RIGHTS

Guarantor Parties reserve the right to amend their answer to assert additional affirmative defenses, crossclaims or counterclaims.

February 3, 2026
Wilmington, Delaware

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Matthew P. Ward*
Matthew P. Ward, Esq. (Del. Bar No. 4471)
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4320
Facsimile:  (302) 252-4330
Email: matthew.ward@wbd-us.com

-and-

**VEDDER PRICE P.C.**
Michael L. Schein, Esq. (admitted *pro hac vice*)
Robert Salame, Esq.
David Rownd, Esq.
1633 Broadway, 31st Floor
New York, New York 10019
Telephone: (212) 407-7700
Facsimile:  (212) 407-7799
Email: mschein@vedderprice.com
           rsalame@vedderprice.com
           drownd@vedderprice.com

*Counsel to Alberto Smeke Saba, Salomon Smeke Saba, and CSC Hudson LLC*