# **EXHIBIT 8**

**From:** Kronley, Neal <neal.kronley@us.dlapiper.com>
**Sent:** Thursday, June 5, 2025 9:22 PM
**To:** Salame, Robert <rsalame@vedderprice.com>; Shepherd, Gerald <Gerald.Shepherd@us.dlapiper.com>
**Cc:** Ashley Doukas <ADoukas@adstach.com>; Danielle Ash <dash@adstach.com>; Paul Rahimian <paul@parkviewfinancial.com>; Ted Jung <ted@parkviewfinancial.com>; Salo Smeke <ss@cscre.us>; Max Bartmann <bartmann@mspcm.com>; Gibson, John <John.Gibson@us.dlapiper.com>; Max Nipon <nipon@mspcm.com>; Edwin Tang <edwin@tangstudiollc.com>; Alberto Smeke <as@cscre.us>; YuhTyng Patka <YPatka@adstach.com>; Leonidas Milas <Leonidas@parkviewfinancial.com>; Keaton Dickinson <keaton@parkviewfinancial.com>; dcabrera@borahgoldstein.com; Roche, Caleb <Caleb.Roche@us.dlapiper.com>
**Subject:** [EXT] Hudson Hotel

Bobby,

CSC has not satisfied the conditions of Section 3.3(a) of the Financial Agreement to earn the J-1 Conversion Fee and require Parkview to fund the Escrow Account. The Financial Agreement provides that the Guarantors earn the $12.5M J-1 Conversion Fee "if the Department of Buildings and each other applicable agency enter into applicable required documentation confirming the granting and effectiveness of the J-1 Unit Zoning conversion on or before May 30, 2025 (the "Outside J-1 Hurdle Date"). The Outside J-1 Hurdle Date has been extended to June 15, 2025. To date, neither the DOB nor any other agency has entered into applicable required documentation confirming the granting and effectiveness of the J-1 Unit Zoning conversion.

The present circumstances are driven by a number of considerations, including CSC misleading Parkview that it would achieve the J-1 Conversion by purchasing a light and air easement. Unknown to Parkview, CSC had no intention to do so and only disclosed its alternative proposal after the Financial Agreement was executed. Had CSC not mislead Parkview about its intentions, then Parkview would have structured the incentives differently such that the J-1 Conversion Fee would be earned only after the effectiveness of the Cure Approval and Lifting of the Stop Work Order

The circumstances are also aggravated by CSC's breach of, and refusal to honor, the Financial Agreement's covenants with respect to the filing of the Cure application and providing drafts of the Cure application to both Parkview and MSP prior to submission of such documents, as set forth in Sections 3.3(e) and (b) of the Financial Agreement. Please see the enclosed Notice of Event of Default concerning the Financial Agreement based on the Guarantors failure to "submit to HPD, the IH Unit and each other applicable agency, on or before May 30, 2025 (the "HPD Submission Date"), all materials necessary to achieve the Cure Approval and Lifting of Stop Work Order," as such terms are defined in the Financing Agreement. Section 2.3 of the Financing Agreement stipulates that "Time is of the Essence with respect to each and every term and condition set forth in this Agreement." Section 3.3(e) requires CSC to provide drafts of such submissions to

Parkview and MSP prior to submission of such documents, and CSC has failed to comply with that obligation as well.

CSC's failure to submit the Cure Application by the deadline raises the significant possibility that CSC will not earn the incentive fees by the April 2026 deadline.  In that event, an incentive fees would flow from the Escrow Account to MSP.  Parkview would thus, in effect, provide a payment in kind to MSP, despite already funding all project costs including increased Ground Rent payments, and not realize any benefit from these funds while MSP would get a windfall.  Parkview will separately address this last point with MSP.

We expect that both CSC and MSP will point to our May 21 email, where we expressed a willingness to fund the J-1 Conversion Fee upon the satisfaction of certain conditions.  For the avoidance of any doubt, that email does not modify the Financial Agreement in any respect and, in all events, Parkview is not willing to fund the J-1 Conversion Fee for CSC and MSP's benefit in light of the foregoing considerations, including CSC's breach of the Financial Agreement—except under the terms and conditions of the Financial Agreement.

We also anticipate that CSC and MSP may claim, erroneously, that Parkview's actions are taken because it lacks the funds to pay the J-1 Conversion Fee, even though Parkview is funding 100% of the project costs and ground rent payments.  To address this misconception, Parkview is willing to place the J-1 Conversion Fee into a separate account of Parkview and provide MSP and CSC with evidence of the funds in the account and periodic confirmation that such funds remain in the account.  Parkview remains willing to fund the J-1 Conversion Fee into the Escrow Account once the conditions to Parkview's obligation to do so under the terms of the Financial Agreement are satisfied

Parkview continues to reserve all rights and waive none.

**Neal Kronley**
Of Counsel

T  +1 212 335 4584
F  +1 917 778 8584
M  +1 917 757 5283
neal.kronley@us.dlapiper.com

**DLA Piper LLP (US)**
dlapiper.com