**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| HUDSON 1701/1706, LLC, *et al.*,[1] | |
| Debtors. | Case Nos. 25-11853(KBO) |
| | (Jointly Administered) |
| FIRST AMERICAN TITILE INSURANCE COMPANY, solely as Escrow Agent and not in its individual capacity, | |
| Plaintiff, | |
| v. | Adv. Proc. No. 25-52468 (KBO) |
| HUDSON 1701/1706, LLC, HUDSON 1702, LLC, ALBERTO SMEKE SABA, SALOMON SMEKE SABA, CSC HUDSON LLC, and PARKVIEW FINANCIAL REIT, LP, | |
| Defendants. | |
| HUDSON 1701/1706, LLC, a Delaware limited liability company; and HUDSON 1702, LLC, a Delaware limited liability company, | |
| Cross-Claimants, | |
| v. | |
| CSC HUDSON LLC; ALBERTO SMEKE SABA; and SALOMON SMEKE SABA, | |
| Cross-Defendants. | |

---

[1]      A list of the Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Hudson 1701/1706, LLC (0281) and Hudson 1702, LLC (0190).  The Debtors' mailing address is c/o FTI Consulting, Inc. Attn.: Alan Tantleff, 1166 Avenue of the Americas, 15th Floor, New York, NY 10036.

**DEFENDANTS HUDSON 1701/1706, LLC AND HUDSON 1702, LLC'S**
**ANSWER TO THE INTERPLEADER COMPLAINT AND CROSS-CLAIMS**

**ANSWER**

Defendants Hudson 1701/1706, LLC ("Hudson 1701/1706") and Hudson 1702, LLC ("Hudson 1702," and with Hudson 1701/1706, the "Debtors") answer the complaint of the plaintiff, First American Title Insurance Company ("First American" or the "Plaintiff"), dated December 18, 2025 (the "Complaint"), as follows:

Except as otherwise expressly admitted herein, the Debtors deny each and every allegation in the Complaint, including without limitation any allegations contained in its prayer for relief, headings, and subheadings.  In accordance with Federal Rule of Civil Procedure 8(b)(5), to the extent the Debtors lack knowledge or information sufficient to form a belief as to the truth of an allegation, that allegation is deemed to be denied.  The Debtors expressly reserve the right to amend their Answer to the full extent provided for under applicable law.

Specifically responding to the allegations contained in the Complaint, and subject to and without waiving the other defenses stated herein, the Debtors state as follows:

1.      In response to paragraph 1 of the Complaint, the Debtors deny knowledge or information sufficient to form a belief as to the truth or falsity of the Plaintiff's allegations therein.

2.      In response to paragraph 2 of the Complaint, the Debtors admit that Hudson 1701/1706 is a Delaware limited liability company with offices at 1166 Avenue of the Americas, 15th Floor, New York, NY 10036, and that the sole member of Hudson 1701/1706 is PV Hudson LLC ("PV Hudson"), a Delaware limited liability company.

3.      In response to paragraph 3 of the Complaint, the Debtors admit that Hudson 1702 is a Delaware limited liability company with offices at 1166 Avenue of the Americas, 15th Floor, New York, NY 10036, and that the sole member of Hudson 1702 is PV Hudson.

4.      In response to paragraph 4 of the Complaint, the Debtors deny knowledge or information sufficient to form a belief as to the truth or falsity of the Plaintiff's allegations therein.

5.      In response to paragraph 5 of the Complaint, the Debtors deny knowledge or information sufficient to form a belief as to the truth or falsity of the Plaintiff's allegations therein.

6.      In response to paragraph 6 of the Complaint, the Debtors deny knowledge or information sufficient to form a belief as to the truth or falsity of the Plaintiff's allegations therein.

7.      In response to paragraph 7 of the Complaint, Debtors admit that Parkview Financial REIT, LP is a Delaware limited partnership with an address at 11440 San Vicente Boulevard, 2nd Floor, Los Angeles, California 90049.

8.      The Debtors admit the allegations in paragraph 8 of the Complaint.

9.      The Debtors admit the allegations in paragraph 9 of the Complaint.

10.     The Debtors admit the allegations in paragraph 10 of the Complaint.

11.     The Debtors admit the allegations in paragraph 11 of the Complaint.

12.     The Debtors admit the allegations in paragraph 12 of the Complaint.

13.     The Debtors admit the allegations in paragraph 13 of the Complaint.

14.     The Debtors admit the allegations in paragraph 14 of the Complaint.

15.     The Debtors admit the allegations in paragraph 15 of the Complaint.

16.     In response to paragraph 16 of the Complaint, the Debtors admit that the remaining Escrow Funds have been and continue to be held by First American in an escrow account, but state that the allegations that so holding the Escrow Funds was in accordance with the terms of the Escrow Agreement are a conclusion of law and legal argument, not averments of fact, to which no response is required.

17.     In response to the allegations in paragraph 17 of the Complaint, the Debtors admits

that the Escrow Agreement contains the quoted language in paragraph 17. The Debtors respectfully refer the Court to the Escrow Agreement (Complaint Ex. B) for the true and complete contents thereof, and deny any allegation inconsistent with the full terms thereof.

18.     The Debtors admit the allegations in paragraph 18 of the Complaint.

19.     The Debtors admit the allegations in paragraph 19 of the Complaint.

20.     In response to paragraph 20 of the Complaint, the Debtors respectfully refer the Court to the "November 3 DLA Letter" (Complaint Ex. C) for the true and complete contents thereof, and deny any allegations inconsistent with the full language thereof.

21.     The Debtors admit the allegations in paragraph 21 of the Complaint.

22.     In response to the allegations in paragraph 22 of the Complaint, the Debtors respectfully refer the Court to the "November 14 Vedder Letter" ("11/14 Letter") (Complaint Ex. D) for the true and complete contents thereof, and deny the allegations of paragraph 22 and the 11/14 Letter.

23.     In response to the allegations in paragraph 23 of the Complaint, the Debtors admit that on December 4, 2025, First American wrote a letter to the Lender, the Debtors, Holdings, and Guarantors. The remaining allegations in paragraph 23 of the Complaint are conclusions of law and legal argument, not averments of fact, to which no response is required.

24.     In response to the allegations in paragraph 24 of the Complaint, the Debtors respectfully refer the Court to the "December 4 First American Letter" (Complaint Ex. E) for the true and complete contents thereof, and deny any allegation inconsistent with the full language thereof.

25.     The Debtors admit the allegations in paragraph 25 of the Complaint.

26.     In response to the allegations in paragraph 26 of the Complaint, the Debtors

respectfully refer the Court to the "December 9 First American Letter" (Complaint Ex. F) for the true and complete contents thereof, and deny any allegation inconsistent with the full language thereof.

27.     In response to the allegations in paragraph 27 of the Complaint, the Debtors respectfully refer the Court to the "December 11 Vedder Email" ("12/11 Letter") (Complaint Ex. G) for the true and complete contents thereof, and deny the allegations of paragraph 27 and the 12/11 Letter.

28.     In response to the allegations in paragraph 28 of the Complaint, the Debtors respectfully refer the Court to the 12/11 Letter for the true and complete contents thereof, and deny the allegations of paragraph 28 and the  12/11 Letter.

29.     The Debtors admit the allegations in paragraph 29 of the Complaint.

30.     In response to the allegations in paragraph 30 of the Complaint, the Debtors respectfully refer the Court to the "December 12 Hogan Letter" (Complaint Ex. H) for the true and complete contents thereof, and deny any allegation inconsistent with the full language thereof.

31.     In response to the allegations in paragraph 31 of the Complaint, the Debtors respectfully refer the Court to the "December 15 DLA Letter" (Complaint Ex. I) for the true and complete contents thereof, and deny any allegation inconsistent with the full language thereof.

32.     In response to the allegations in paragraph 32 of the Complaint, the Debtors respectfully refer the Court to the "December 15 DLA Letter" (Complaint Ex. I) for the true and complete contents thereof, and deny any allegation inconsistent with the full language thereof.

33.     The Debtors admit the allegations in paragraph 33 of the Complaint.

34.     In response to the allegations in paragraph 34 of the Complaint, the Debtors respectfully refer the Court to the "December 16 Vedder Letter" ("First 12/16 Letter") (Complaint

Ex. J) for the true and complete contents thereof, and deny the allegations of paragraph 34 and the First 12/16 Letter.

35.     The Debtors admit the allegations in paragraph 35 of the Complaint.

36.     In response to the allegations in paragraph 36 of the Complaint, the Debtors respectfully refer the Court to the "Second December 16 Vedder Letter" ("Second 12/16 Letter") (Complaint Ex. K) for the true and complete contents thereof, and deny the allegations of paragraph 36 and the Second 12/16 Letter.

37.     In response to the allegations in paragraph 37 of the Complaint, the Debtors respectfully refer the Court to the "December 17 First American Letter" (Complaint Ex. L) for the true and complete contents thereof, and admit that this letter was sent to the Debtors.  The remaining allegations in paragraph 37 constitute conclusions of law and legal argument, not averments of fact, to which no response is required.

38.     The allegations in paragraph 38 of the Complaint constitute conclusions of law and legal argument, not averments of fact, to which no response is required.

39.     The allegations in paragraph 39 of the Complaint constitute conclusions of law and legal argument, not averments of fact, to which no response is required.

40.     The allegations in paragraph 40 of the Complaint constitute conclusions of law and legal argument, not averments of fact, to which no response is required.

41.     The allegations in paragraph 41 of the Complaint constitute conclusions of law and legal argument, not averments of fact, to which no response is required.

42.     The allegations in paragraph 42 of the Complaint constitute conclusions of law and legal argument, not averments of fact, to which no response is required.

43.     The allegations in paragraph 43 of the Complaint constitute conclusions of law and

legal argument, not averments of fact, to which no response is required.

44.     The allegations in paragraph 44 of the Complaint constitute conclusions of law and legal argument, not averments of fact, to which no response is required.

45.     The allegations in paragraph 45 of the Complaint constitute conclusions of law and legal argument, not averments of fact, to which no response is required.

46.     The allegations in paragraph 46 of the Complaint constitute conclusions of law and legal argument, not averments of fact, to which no response is required.

47.     The allegations in the Prayer for Relief constitute conclusions of law and legal argument, not averments of fact, to which no response is required.

## RESERVATION OF RIGHTS

The Debtors reserve the right to assert any affirmative defenses, as well as any additional counterclaims and/or additional crossclaims, that may become apparent after discovery or otherwise.

## CROSS-CLAIMS

The Debtors allege the following cross-claims against Defendants Alberto Smeke Saba, Salomon Smeke Saba, and CSC Hudson, LLC (collectively, the "Smekes" or "Cross-Defendants") as follows:

## JURISDICTION AND VENUE

1.     The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to:  (a)  28 U.S.C. § 1334(b), including, but not limited to, this matter arising under title 11 and arising in and being related to the instant chapter 11 cases (the "Chapter 11 Cases"); and (b) 28 U.S.C. § 1335.

2.      The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has authority to hear and determine this matter pursuant to 28 U.S.C. § 157(a) and the Amended Standing Order of Reference of the United States District Court for the District of Delaware dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3.      Venue is proper pursuant to 28 U.S.C. § 1409.

4.      Pursuant to Fed. R. Bankr. P. 7008(a) and Rule 7008-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, the Debtors consent to the Court's entry of a final judgment or order with respect to this adversary proceeding if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## FACTS

### I.      Background

5.      The Debtors were formed in March 2022 to operate and redevelop the former Hudson Hotel in New York, New York (the "Hudson")[2] situated on the real property known as 353 West 57th Street Condominium (the "Real Property").  The Hudson redevelopment was intended to create 440 new, residential rental units, available at market rates, as well as commercial space and a penthouse, on the Real Property (the "Project").

6.      Also in 2022, the Debtors and Parkview Financial REIT LP (the "Prepetition Lender") entered into a series of agreements (collectively, the "Construction Loan") that provided the Debtors with $207 million in financing for construction and completion of the Project.   As

---

[2] As used herein, the term "Hudson" refers, collectively, to Condominium Units 1701, 1702, and 1706 in the Real Property.

security for the Construction Loan, the Debtors provided the Prepetition Lender with, among other things, a security interest in the equity of the Debtors.

7.      From March 2022 to July 2025, the Smekes controlled and managed the Debtors. Although construction began in 2022, in late 2023, the New York City Department of Housing Preservation and Development ("HPD") found probable cause that existing rent-stabilized, single room occupancy tenants had been harassed at the Property and issued a stop-work order.   That stop-work order, which is still in place, halted all further progress on the Project.

8.      In 2025, the Prepetition Lender exercised its rights in connection with the Construction Loan and scheduled a foreclosure sale under the New York Uniform Commercial Code (the "UCC Sale") of the equity interests in the Debtors.   That UCC Sale was conducted on July 25, 2025, wherein the Prepetition Lender obtained the equity interests in the Debtors in exchange for a credit bid – replacing the Smekes as managers of the Debtors and the Project.

9.      Prepetition Lender now manages the Debtors through its affiliate, PV Hudson.

II.      **The Settlement and Escrow Agreements**

10.     On August 7, 2025, the Debtors, the Prepetition Lender, and the Smekes entered into a Settlement and Release Agreement (the "Settlement Agreement") (Complaint Ex. A) in an attempt to settle their respective claims.  The Settlement Agreement created the Escrow Agreement referenced in the Complaint (Complaint Ex. B) and appointed First American as Escrow Agent.

11.     Pursuant to Section 2(c) of the Settlement Agreement, the Prepetition Lender deposited an amount equal to $4,637,500.00 (the "Escrow Funds") into an escrow account with First American.

12.      In August 2025, and pursuant to Section 2(d) of the Settlement Agreement, $3,000,000 of the Escrow Funds was released from the escrow account to the Smekes.  Section

2(d) then provided that the remaining Escrow Funds would be distributed to the Smekes at a later date.  Under the terms of the Settlement Agreement, the Smekes could receive and retain the Escrow Funds only if they did not breach their obligations under that Agreement.

### III.   The Smekes' Breach of the Settlement Agreement

13.     The Settlement Agreement was meant to facilitate the cure of the Project's stop-work order through the filing of an application with the HPD (the "Cure Application").  Given the importance of expeditiously filing the Cure Application, the Settlement Agreement provided that the Smekes would cooperate with the Debtors and the Prepetition Lender in the filing of the Cure Application by providing necessary documentation and approvals.

14.     For example, pursuant to Section 2(e) of the Settlement Agreement, and within ten (10) days after execution of that Agreement, the Smekes were required to deliver to the Prepetition Lender "any and all drawings, plans, warranties, licenses, permits, approvals, registrations and other authorizations and similar or related documentation for the use, development or operation of the Property."  The Settlement Agreement was executed on August 7, 2025, and the Smekes were therefore obligated to deliver these documents by no later than August 17, 2025 (the "Document Delivery Date").

15.     Pursuant to Section 2(f) of the Settlement Agreement, the Smekes were also required to "cooperate, as reasonably requested by [the Prepetition Lender], including, without limitation by executing and delivering such instruments or documents, and taking such other action, as [the Prepetition Lender] may reasonably request, in connection with the transactions contemplated by this Agreement including, without limitation, obtaining the Cure Approval and Lifting of the Stop Work Order."

16.     The Smekes have breached and continue to breach their obligations under Section 2(e) and (f) of the Settlement Agreement.  While the Smekes provided the Debtors and the Prepetition Lender with some documentation required under the Settlement Agreement, the Smekes failed to provide a full set of documentation and other information by the Document Delivery Date.  In fact, over six months later, the Smekes have still not provided all documentation required by the Settlement Agreement.

17.     The Smekes also failed to cooperate with the Debtors and the Prepetition Lender. As just one example, the Smekes refused to provide consent for the Project engineer, MG Engineering D.P.C. ("MGE"), to turn over to the Debtors technical engineering drawings ("MGE Drawings") already prepared for the Project.

18.     The Smekes' breaches of the Settlement Agreement caused a substantial delay in submission of the Cure Application.  In fact, the Debtors were unable to submit that Application to the HPD until December 23, 2025 – over four months after the parties entered into the Settlement Agreement.  As the result of their breaches, the Smekes forfeited the right to retain the Escrow Funds they have received in the past and have no right to receive the remaining Escrow Funds in the escrow account.

## IV.    Communications With First American

19.     On November 14, 2025, counsel for the Smekes wrote a letter to First American asserting that the Smekes were entitled to the remaining Escrow Funds in the amount of $1,637,500.00 (Complaint Ex. D).

20.     On December 12, 2025, counsel for the Prepetition Lender wrote a letter to First American, notifying it that the Smekes had failed to comply with their material obligations under the Settlement Agreement and directing First American not to disburse the remaining monies in

the Escrow Account (Complaint Ex. H).  On December 15, 2025, counsel for the Debtors likewise

wrote a letter to First American stating that the Smekes' request for the remaining monies in the

Escrow Account was, among other things, a violation of the automatic stay in the Chapter 11 Cases

(Complaint Ex. I).

21.     In light of the conflicting instructions from the parties, First American refused to

disburse the remaining Escrow Funds and instead initiated this interpleader action.

**COUNT I**

**Breach of Contract**

22.     The Debtors restate and incorporate by reference the above paragraphs 1 through

21 as if set forth fully herein.

23.     On August 7, 2025, the Debtors, the Prepetition Lender, and the Cross-Defendants

entered into the Settlement Agreement, which is valid and enforceable.

24.     The Debtors and the Prepetition Lender have substantially performed their

obligations under the Settlement Agreement.

25.     The Cross-Defendants have breached the Settlement Agreement by, among other

things, failing to:  (i) provide complete documentation necessary for the Cure Application pursuant

to Section 2(e), (ii) provide the consents necessary for the release of the MGE Drawings pursuant

to Section 2(f), and (iii) otherwise cooperate with the Debtors and the Prepetition Lender in their

efforts to expeditiously file the Cure Application.

26.     Because of the Cross-Defendants' breaches, the Cross-Defendants are not entitled

to any of the Escrow Funds, including the remaining Escrow Funds in the Escrow Account, and

the Debtors are entitled to a judgment equal to the Escrow Funds, or no less than $4.637,500.00.

## COUNT II

### Declaratory Judgment – Escrow Funds

27.     The Debtors restate and incorporate by reference the above paragraphs 1 through 26 as if set forth fully herein.

28.     Pursuant to Section 2 of the Settlement Agreement, the Cross-Defendants are not entitled to any of the Escrow Funds if they are in breach of the Settlement Agreement.

29.     The Cross-Defendants have breached and continue to breach the Settlement Agreement.

30.     Accordingly, pursuant to the Declaratory Judgment act, 28 U.S.C. §§ 2201-02 and Bankruptcy Code section 105, the Debtors are entitled to a declaratory judgment that the Cross-Defendants are not entitled to any of the Escrow Funds, including the remaining Escrow Funds.

### PRAYER FOR RELIEF

WHEREFORE, the Debtors/Cross-Claimants respectfully request that the Court enter judgment against the Cross-Defendants and grant the following relief:

(a)     On the First Cause of Action, a judgment against the Cross-Defendants, jointly and severally, for the full amount of the Escrow Funds, or no less than $4,637,500.00;

(b)     On the Second Cause of Action, an order of the Court directing that the Cross-Defendants have no rights to any of the Escrow Funds;

(c)     Reimbursement of costs and expenses, including attorneys' fees, incurred by the Debtors in prosecuting these cross-claims;

(c)     Prejudgment interest at the maximum legal rate; and

(d)     An award of such other relief as this Court may deem just and proper.

- 13 -

DATED:  Wilmington, Delaware
        February 3, 2026

CHIPMAN BROWN CICERO & COLE, LLP

*/s/ William E. Chipman, Jr.*
William E. Chipman, Jr. (No. 3818)
Mark D. Olivere (No. 4291)
Aaron J. Bach (No. 7364)
Alison R. Maser (No. 7430)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:    (302) 295-0191
Email:         chipman@chipmanbrown.com
               olivere@chipmanbrown.com
               bach@chipmanbrown.com
               maser@chipmanbrown.com

*Counsel for Debtors and Debtors in Possession*


BOIES SCHILLER FLEXNER LLP
Robert Gordon (admitted *pro hac vice*)
Michael M. Fay (admitted *pro hac vice*)
Jenny H. Kim (admitted *pro hac vice*)
55 Hudson Yards
New York, New York  10001
Telephone:    (212) 446-2300
Email:         rgordon@bsfllp.com
               mfay@bsfllp.com
               jkim@bsfllp.com

*Proposed Counsel for Debtors and Debtors in Possession*