# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>HUDSON 1701/1706, LLC, *et al.*,[1]<br><br>    Debtors. | Chapter 11<br><br>Case No. 25-11853 (KBO)<br><br>(Jointly Administered) |
| FIRST AMERICAN TITLE INSURANCE COMPANY, solely as Escrow Agent and not in its individual capacity,<br><br>    Plaintiff,<br><br>v.<br><br>HUDSON 1701/1706, LLC, HUDSON 1702, LLC, ALBERTO SMEKE SABA, SALOMON SMEKE SABA, CSC HUDSON LLC, and PARKVIEW FINANCIAL REIT, LP,<br><br>    Defendants. | Adv. No. 25-52468 (KBO)<br><br><br><br>RE: D.I. 12, 13, 15, 16, 17, 18, 20, 25, 28, 33, 39 |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO AUTHORIZE DEPOSIT OF INTERPLEADER FUNDS INTO THE REGISTRY OF THE COURT AND TO <u>DISCHARGE PLAINTIFF FROM THE INTERPLEADER ACTION</u>**

---

[1] Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Hudson 1701/1706, LLC (0281) and Hudson 1702, LLC (0190).

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 2

ARGUMENT .................................................................................................................... 4

    A.    First American's Motion Follows Accepted Interpleader Procedure and Should Not Be Denied as "Duplicative" Merely Because it Resolves First American's Involvement in the Interpleader Action. ............................................. 4

    B.    Guarantors' Counterclaims Provide No Basis to Deny First American a Discharge. ........................................................................................................ 6

        i.    Guarantors' Asserted Counterclaims Only Assert Injury That Requires a Determination as to Which Defendant is Entitled to the Escrow Funds. ................................................................................. 6

        ii.    Regardless, Guarantors' Asserted Counterclaims Do Not Preclude First American's Request for Discharge Because They Do Not Sufficiently Allege First American Failed to Act in Accordance With the Escrow Agreement. ................................................................ 8

        iii.    Guarantors Released Their Asserted Counterclaims Under the Escrow Agreement ................................................................................ 10

    C.    All Attorneys' Fees Associated With This Objection Should be Allocated to Guarantors Due to Their Irresponsible Tactics. .............................................. 11

CONCLUSION ................................................................................................................ 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Constellation Servs. Int'l, Inc. v. Anderson*,
 No. CV 23-762-GBW-LDH, 2025 WL 2174700 (D. Del. July 31, 2025) ...............................4

*In re Heckler Land Dev. Corp.*,
 15 B.R. 856 (Bankr. E.D. Pa. 1981) ..................................................................................9

*Prudential Ins. Co. of Am. v. Hovis*,
 553 F.3d 258 (3d Cir. 2009).................................................................................4, 6, 7

*Septembertide Pub., B.V. v. Stein & Day, Inc.*,
 884 F.2d 675 (2d Cir. 1989).................................................................................13

*Sun Life Assur. Co. of Can. v. Bew*,
 530 F. Supp. 2d 773 (E.D. Va. 2007) .................................................................11

**Statutes**

28 United States Code
 § 1927....................................................................................................................13
 § 2361......................................................................................................................5

**Rules and Regulations**

Federal Rules of Bankruptcy Procedure
 Rule 7065 ...............................................................................................................5

Federal Rules of Civil Procedure
 Rule 11 ..................................................................................................................13
 Rule 16 ..................................................................................................................13
 Rule 65 ....................................................................................................................5

**Other Authorities**

Daniel E. Witte, *Managing Irresponsible Actors in Federal Interpleader Actions*,
 50 Tort Trial & Ins. Prac. L.J. 1 (2014) ....................................................... *passim*

**INTRODUCTION**

The Guarantors' Objection to First American's Motion to Deposit (the "Motion")[2] is meritless and should be overruled. *See Objection of Alberto Smeke Saba, Salomon Smeke Saba and CSC Hudson LLC to Plaintiff First American Title Company's Motion to Authorize Deposit of Interpleader Funds into the Registry of Court and to Discharge Plaintiff from Interpleader Action* [Adversary Proceeding Docket No. 15) (the "Objection"). The Debtors support the Motion in its entirety, including First American's request for discharge. *See Joinder to Plaintiff's Motion to Authorize Deposit of Interpleader Funds into the Registry of the Court and to Discharge Plaintiff from the Interpleader Action* [Adversary Proceeding Docket No. 16] (the "Joinder"). The Lender does not oppose the Motion or First American's request for discharge, and has only reserved its rights with respect to same. *See Parkview Financial REIT, LP's Reservation of Rights with Respect to Plaintiff First American Title Insurance Company's Motion to Authorize Deposit of Interpleader Funds Into Registry of Court and to Discharge Plaintiff from Interpleader Action* [Adversary Proceeding Docket No. 17] (the "Reservation of Rights"). Tellingly, only the Guarantors—who have spent months demanding that First American ignore the bona fide dispute over the Escrow Funds, violate the automatic stay, and breach its fiduciary duties to the other defendants—object to First American's proper use of interpleader.

Substantively, the Guarantors' Objection is not supported by any precedent and is in fact directly contradicted by the only binding precedent they rely on in the Objection or memorandum in support of same. Rather, it is premised on a fundamental misunderstanding of federal interpleader procedure and appears to be nothing more than a thinly-veiled attempt to punish First

---

[2]  Capitalized terms used herein but not otherwise defined have the meanings ascribed to them in the *Memorandum of Law in Support of Plaintiff's Motion to Authorize Deposit of Interpleader Funds into the Registry of the Court and to Discharge Plaintiff from the Interpleader Action* (the "Memorandum").

American for refusing to capitulate to their strong-arm tactics. The Guarantors assert that the Motion should be denied because it seeks resolution of issues presented in the underlying interpleader complaint. However, as a matter of well-established procedure, interpleader plaintiffs like First American are discharged from the case at the time of deposit into the court registry, leaving the defendants to litigate over their entitlement to the escrow funds. Interpleader plaintiffs who claim no entitlement to the *res* are not required to remain a party until resolution of the underlying dispute. The Guarantors also assert that their counterclaims against First American prevents its discharge from this case. This argument also lacks merit because, as pled, the Guarantors' asserted claims against First American are dependent on their alleged entitlement to the Escrow Funds. The Guarantors' only alleged injury for which they seek recovery arises from their allegation that they are entitled to the disputed funds. However, the law is clear: if the relief sought in a counterclaim asserted against an interpleader plaintiff is dependent on the determination as to which claimant is entitled to the disputed funds, the counterclaim does not provide a valid basis to deny discharge of the interpleader plaintiff from the action. Regardless, under the express terms of the Escrow Agreement, the Guarantors released their asserted counterclaims against First American. For all of the reasons set forth fully below, this Court should grant the Motion and allocate all legal expenses incurred by First American in connection with this unnecessary motion practice to the Guarantors.

## **BACKGROUND**

As set forth more fully in its Complaint and Motion and supporting Memorandum, between November 3, 2025 and December 16, 2025, First American received numerous competing demands from the Debtors, the Guarantors, Holdings, and the Lender as to the proper disposition of Escrow Funds held in its possession as an escrow agent pursuant to an August 7, 2025 Escrow

Agreement and related Settlement Agreement. *See Complaint for Interpleader* [Adversary Proceeding Docket No. 1] (the "Complaint"), ¶ 12-13; Memorandum, § II(A)-(B). First American, following the requirements set forth in the Escrow Agreement, filed this Interpleader Action and the Motion requesting that the Court authorize deposit of the Escrow Funds into the Court's registry and discharge First American from the Interpleader Action.

Since that time, the Guarantors have persistently sought to clog the discharge. The Guarantors filed an Objection to the Motion and hearing notice therein on January 6, 2026. *See* Objection [Adversary Proceeding Docket No. 15]. When First American filed an emergency motion on January 9, 2026 to adjourn the hearing, *see Emergency Motion to Adjourn Hearing on Plaintiff's Motion to Authorize Deposit of Interpleader Funds and Reservation of Rights* [Adversary Proceeding Docket No. 20] (the "Adjournment Motion"), Guarantors objected to the adjournment, despite objecting to the hearing merely days earlier. *See Objection of Alberto Smeke Saba, Salomon Smeke Saba and CSC Hudson LLC to Plaintiff's Emergency Motion to Adjourn Interpleader Motion* [Adversary Proceeding Docket No. 25] (the "Adjournment Objection"); s*ee also Order Granting First American Title Insurance Company's Emergency Motion to Adjourn Hearing on Plaintiff's Motion to Authorize Deposit of Interpleader Funds and Reservation of Rights* (Adversary Proceeding Docket No. 28] (the "Order Granting Adjournment Motion"). Now, following the Court's approval of an agreed briefing schedule between the Guarantors and First American, the Guarantors have filed a supporting memorandum to their Objection [Adversary Proceeding Docket No. 39] (the "Objection Memorandum") and *Answer to the Complaint*, which purportedly asserts counterclaims against First American [Adversary Proceeding Docket No. 42] (the "Guarantors' Answer").

3

**ARGUMENT**

A.     **First American's Motion Follows Accepted Interpleader Procedure and Should Not Be Denied as "Duplicative" Merely Because it Resolves First American's Involvement in the Interpleader Action.**

Guarantors' only substantive argument is that the relief requested in the Motion is duplicative of the relief sought in the Complaint, and as such, is somehow "an improper attempt to sidestep the adjudication of the merits[.]" Objection Memorandum, Page 5. Guarantors' argument is frivolous and, on its face, appears to be nothing more than a thinly-veiled attempt to punish First American for not acquiescing to Guarantors' efforts to strong-arm First American into: (1) taking actions that would contravene the terms of the Escrow Agreement that are triggered when a dispute arises over the Escrow Funds and; (2) violating the automatic stay.

Regardless of Guarantors' motivation, their argument is specious and, at a bare minimum, evidences a fundamental misunderstanding of the procedures followed in federal interpleader actions. "The purpose of the interpleader device is to allow 'a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under [its] control a procedure to settle the controversy and satisfy his obligation in a single proceeding.'" *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, at 262 (3d Cir. 2009) (quoting 7 Charles Allen Wright & Arthur R. Miller, Federal Practice & Procedure § 1704 (3d ed. 2001), at 540–41); *see also Constellation Servs. Int'l, Inc. v. Anderson*, No. CV 23-762-GBW-LDH, 2025 WL 2174700, at *1 (D. Del. July 31, 2025) (same).

As the Court is well aware, "[f]ederal interpleaders are an essential tool for fiduciaries who confront legal uncertainty involving safeguarded property subject to potentially conflicting claims from multiple third parties." Daniel E. Witte, *Managing Irresponsible Actors in Federal Interpleader Actions*, 50 Tort Trial & Ins. Prac. L.J. 1, at *2 (2014). Generally, at the time of filing, "the plaintiff must by motion post bond or make deposit as is required by the court . . . The plaintiff

4

also files a motion, often simultaneously with submitting deposit or posting bond, to be discharged from the case before Stage II of the case commences." *Id*. at *10. (Stage II of interpleader actions involves litigating which defendants are entitled to the safeguarded property). "Discharge is essentially a dismissal of the interpleader plaintiff from the case but carries the additional and attendant implication of discharge from any liability." *Id*. at *11. "Discharge is routinely and properly granted to plaintiffs" *before* Stage II. *Id*. Additionally, "the plaintiff is also routinely granted an award of costs and fees incurred for all of the legal work required to prepare and participate in an interpleader action [because it]. . . has been forced to incur costs and fees in order to prepare the legal case for the court's adjudication that only involves a disagreement among claimants." *Id*.

Likewise, granting injunctive relief in properly filed interpleader actions is commonplace and unexceptional. Indeed, federal courts are statutorily empowered to grant injunctions in interpleader actions without undertaking the conventional injunction analysis. *See* 28 U.S.C. § 2361 (The "district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment."); Fed. R. Civ. P. 65(e)(2) (providing that the typical rules regarding injunctions "do not modify… 28 U.S.C. § 2361, which relates to preliminary injunctions in actions of interpleader or in the nature of interpleader"); *see also* Fed. R. Bankr. P. 7065 ("Fed. R. Civ. P. 65 applies in an adversary proceeding.").

Here, First American followed the appropriate interpleader procedures outlined above. The Guarantors' argument that following this procedure is somehow duplicative or extraordinary at best[3] belies the Guarantors' misunderstanding of the mechanics of interpleader. Relatedly, the

---

[3] It also evidences the vexatious nature of the Guarantors' Objection to the Motion. The Guarantors seem to understand the two-step nature of interpleader actions and that interpleader plaintiffs routinely seek discharges at

5

Guarantors' assertions that injunctive relief is somehow extraordinary or improper are unfounded. Rather, the relief requested in any motion to deposit *necessarily* will reach the merits of discharging the interpleader plaintiff. As such, the Guarantors' sole substantive argument opposing the Motion provides no basis for the Court to deny the requested relief.

    **B.**    **Guarantors' Counterclaims Provide No Basis to Deny First American a Discharge.**

        *i.*    <u>*Guarantors' Asserted Counterclaims Only Assert Injury That Requires a Determination as to Which Defendant is Entitled to the Escrow Funds.*</u>

Guarantors also contend that the Motion should be denied because their counterclaims allege First American is liable to them for failing to disburse the Escrow Funds and such liability must be determined before it can be discharged. However, this argument is refuted by *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258 (3d Cir. 2009), the only in-circuit case cited in Guarantors' Objection Memorandum.

In *Hovis*, the Third Circuit held that, "where a stakeholder is allowed to bring an interpleader action, rather than choosing between adverse claimants, its failure to choose between the adverse claimants (rather than bringing an interpleader action) cannot itself be a breach of a legal duty." *Hovis*, 553 F.3d at 265. In other words, if the relief sought in a counterclaim against an interpleader plaintiff is dependent on the determination as to which claimant is entitled to the disputed funds, the counterclaim does not provide a valid basis to deny discharge of the interpleader plaintiff from the action. In that regard, the Third Circuit in *Hovis* found that "none of the counterclaims is truly independent of who was entitled to the life insurance proceeds, which is the issue the interpleader action was brought to settle." *Id*. at 264-65. Indeed, the Third Circuit

---

the outset of interpleader actions. *See* Objection Memorandum at Pages 6-7 ("The Third Circuit in *Hovis* goes on to explain that '[t]he typical interpleader action proceeds in two distinct stages,' specifically the court must determine: (1) 'whether the interpleader complaint was properly brought and whether to discharge the stakeholder from further liability to the claimants'; and (2) 'the respective rights of the claimants to the interpleaded funds.'") (citing *Hovis*, 553 F.3d at 262).

noted that "[w]e are quite certain that if [Prudential] had immediately paid . . . Hovis the proceeds of Shall's life insurance policy, . . . Hovis would not have brought an action against [Prudential] based on any of the causes of action that were counterclaimed in the instant case." *Id.* at 264 (quoting *Prudential Ins. Co. of Am. v. Hovis*, No. 4:06-CV-2020, 2007 WL 3125084, at *4 (M.D. Pa. Oct. 23, 2007)).

Likewise, it is evident in the instant case that the Guarantors' asserted counterclaims are not independent of the determination as to which claimant is entitled to the disputed funds and would not have been brought had First American acquiesced to the Guarantors' demands for the Escrow Funds. In fact, the Guarantors' counterclaims do not even purport to be independent of the determination of entitlement to the funds. To be sure, the Guarantors' respective prayers for relief request that the Escrow Funds be turned over to them, clearly demonstrating that the counterclaims would not have been brought had First American immediately remitted the Escrow Funds to the Guarantors. *See* Guarantors' Answer, Count I Prayer for Relief ("Guarantor Parties respectfully request that this Court order First American to release to Guarantor Parties the Escrow Funds in the amount of $1,637,500.00…"); *id*. at Count II Prayer for Relief ("Guarantor Parties respectfully request that this Court direct First American to release the Escrow Funds in the amount of $1,637,500.00…"). Similarly, the remainder of the counterclaims section of the Guarantors' Answer is replete with allegations that they are entitled to the funds.[4] The Guarantors' counterclaims are substantially identical to those rejected by the court in *Hovis*. Ultimately, the

---

[4] *See* Guarantors' Answer, ¶ 48 ("[First American] refused to release the Escrow Funds to Guarantor Parties in response to the later issued November 14 Claim Notice."); *id*. at ¶ 49 ("First American's resulting December 9 Letter adopting the Debtors' erroneous positions caused confusion amongst the parties and frustrated Guarantor Parties' rights to receive the Escrow Funds."); *id*. at ¶¶ 51-52 ("Despite multiple written notices and demands for release of the Escrow Funds from Guarantor Parties, First American impermissibly refused to turn over the Escrow Funds to Guarantor Parties. The above-stated actions constitute a breach of the Escrow Agreement."); *id*. at ¶ 53 ("Guarantor Parties have suffered damages in the amount of the unreturned Escrowed Funds…"); *id*. at ¶ 59 ("Guarantor Parties have suffered and continue to suffer damages, including, without limitation the improper restraint of the Escrow Funds…").

7

Guarantors' counterclaims do not seek to subject First American to liability for any conduct apart from its failure to resolve the dispute over the Escrow Funds in the Guarantors' favor.

Based on the foregoing, the Guarantors' asserted counterclaims are frivolous and provide no basis to deny First American a discharge. Accordingly, the Court should grant the Motion.

> ii. *Regardless, Guarantors' Asserted Counterclaims Do Not Preclude First American's Request for Discharge Because They Do Not Sufficiently Allege First American Failed to Act in Accordance With the Escrow Agreement.*

The Guarantors' counterclaims are predicated on their contention that the November 14 Vedder Letter is a Claim Notice, within the meaning of the Escrow Agreement. In relevant part, the Escrow Agreement provides that:

> If Guarantor is entitled to receive the remainder of the Escrow Funds or a portion thereof pursuant to the *Settlement Agreement*, Guarantor (in such capacity, the "Requesting Party") may provide written notice to Escrow Agent that Guarantor is entitled to receive the Escrow Funds or a portion thereof pursuant to the Settlement Agreement (such notice the "Claim Notice")…

Escrow Agreement, Section 4(d) (emphasis added).

Notably, the November 14 Vedder Letter makes no reference to the Settlement Agreement, let alone assert that the Guarantors are entitled to receive the Escrow Funds pursuant to same. Accordingly, the November 14 Vedder Letter does not (and cannot) constitute a Claim Notice, and First American's receipt of same did not trigger First American's obligations relevant to receipt of a Claim Notice under the Escrow Agreement.

Yet, even if the November 14 Vedder Letter did constitute a Claim Notice, First American still did not violate the Escrow Agreement. Specifically, the Guarantors argue that the Debtors are not parties to the Escrow Agreement, such that they were not entitled to dispute the Guarantors' purported Claim Notice. In relevant part, the Escrow Agreement provides that the "Escrow Agent shall provide written notice (the 'Receipt Notice') to the *other Parties* (each, a 'Confirming Party') of its receipt of such Claim Notice (together with a copy of the Claim Notice) no later than one (1)

8

business day after its receipt of such Claim Notice[.]" Escrow Agreement, Section 4(d) (emphasis added). Notably, the Escrow Agreement does not define the term "Parties." *See generally* Escrow Agreement.

Under the terms of the Escrow Agreement, the definition of "Parties" in the Settlement Agreement, which includes the Debtors, governs. *See* Escrow Agreement, Recitals Clause ("All initial capitalized terms used, but not defined, in this Agreement shall have the meanings set forth in the Settlement Agreement."). The Settlement Agreement defines "Parties" as "Borrower, Lenders and Guarantor Parties[.]" Settlement Agreement, Recitals Clause. The Settlement Agreement defines "Borrower" as "HUDSON 1702, LLC and HUDSON 1701/1706, LLC"—i.e., the Debtors. *Id*. Accordingly, even if the November 14 Vedder Letter constituted a Claim Notice, the Debtors are parties to the Escrow Agreement[5] and were therefore entitled to dispute the Claim Notice. Indeed, the Debtors preemptively disputed the Guarantors' claim to the Escrow Funds via the November 3 DLA Letter, which, in turn, implicated the automatic stay. *See, e.g.*, *In re Heckler Land Dev. Corp.*, 15 B.R. 856 (Bankr. E.D. Pa. 1981) (escrow fund established to protect a creditor was property of the estate and protected by the automatic stay).

Most importantly, there is no doubt that a bona fide dispute to the Escrow Funds exists. In answer to the interpleader complaint, all defendants admit that First American received numerous competing demands as to the proper disposition of the Escrow Funds from Guarantors, the Lender, and the Debtors. *See* Guarantors' Answer, ¶¶ 21, 27, 33, 35; *Defendants Hudson 1701/1706 LLC and Hudson 1702, LLC's Answer to the Interpleader Complaint and Crossclaims* [Adversary

---

[5] The Debtors are also parties to the Escrow Agreement by virtue of their contingent property interests therein. *See, e.g.*, Escrow Agreement, Section 2 ("All interest and other amounts earned on the Escrow Funds, or portion thereof, shall be paid to Borrower."). Moreover, the Escrow Agreement provides that "[t]his Agreement sets forth the entire understanding and agreement **of the Parties hereto** . . . . No amendment or modification . . . of this Agreement . . . shall be valid unless in writing and executed and delivered **by each of the Parties**." *Id*. at Section 18 (emphasis added). It cannot be reasonably contemplated that the foregoing provision would exclude the Debtors, such that amendment or modification to the Escrow Agreement would be permitted absent their consent.

9

Proceeding Docket No. 43] ("Debtors' Answer"), ¶¶ 19, 31; *Answer to Complaint for Interpleader, Affirmative Defenses, and Crossclaims of Defendant Parkview Financial REIT, LP* [Adversary Proceeding Docket No. 44] ("Lender's Answer"), ¶ 29. The Guarantors' counterclaims are based in whole on First American's failure to immediately release the Escrow Funds to them upon receipt of the November 14 Vedder Letter. But, under the terms of the Escrow Agreement, such action would have been improper because of the admitted existence of a dispute over the funds (as well as the pendency of the Chapter 11 Cases). In fact, such an action by First American would have exposed it to claims by the Debtors and the Lender. First American is an innocent, third party escrow agent with contractual obligations to all parties to the Escrow Agreement when confronted with a conflict over the ownership or disbursement of the Escrow Funds.

Based on the foregoing, the Guarantors' asserted counterclaims are frivolous and provide no basis to deny First American a discharge. Accordingly, the Court should grant the Motion.

      iii.    <u>Guarantors Released Their Asserted Counterclaims Under the Escrow Agreement</u>

The Escrow Agreement releases First American from liability in various circumstances. In relevant part, the Escrow Agreement provides:

> The Parties hereby release Escrow Agent and its officers, managers, employees and agents (each an 'Escrow Agent Party'), for any liability, damage, loss, cost or expense incurred by such Escrow Agent Party to the extent resulting from (i) any action taken or not taken in good faith upon advice of Escrow Agent's counsel given with respect to any questions relating to its obligations under this agreement…

Escrow Agreement, Section 7(a). Relatedly, "[i]t is agreed by and among the Parties that . . . Escrow Agent shall incur no liability whatever except for willful misconduct (including, without limitation, willful disregard of the terms of this Agreement) or gross negligence, as long as Escrow Agent has acted in good faith[.]" *Id*. at Section 7(b)(i).

10

Here, First American has acted in good faith and upon advice from its counsel. First American consulted with its counsel to determine the best course of action after the Debtors filed the Chapter 11 Cases and after First American's receipt of conflicting instructions regarding the Escrow Funds. Mindful of its obligation not to release the Escrow Funds in light of the bona fide dispute, and careful not to violate the automatic stay by releasing funds in which the Debtors claimed an interest, First American engaged in no willful misconduct or gross negligence. It merely exercised the requisite caution incumbent on any similarly situated fiduciary. Based on the foregoing, the Guarantors released their asserted counterclaims pursuant to the Escrow Agreement, and such counterclaims therefore provide no basis to deny First American a discharge. Accordingly, the Court should grant the Motion.

**C.    All Attorneys' Fees Associated With This Objection Should be Allocated to Guarantors Due to Their Irresponsible Tactics.**

Finally, in the interest of equity and fairness, the Court should allocate all attorneys' fees associated with this interpleader action to the Guarantors for irresponsibly depleting the interpleader funds with their dilatory and frivolous objections to First American's proper filing of interpleader. "Unfortunately, '[e]xcessively high awards of attorney's fees defeat the purpose of an interpleader action by essentially diminishing a fund to finance litigation calculated to preserve that very fund for the proper recipient.'" Witte, *Managing Irresponsible Actors in Federal Interpleader Actions*, 50 Tort Trial & Ins. Prac. L.J. 1, at *44 (quoting *Sun Life Assur. Co. of Can. v. Bew*, 530 F. Supp. 2d 773, 777 (E.D. Va. 2007)). Accordingly, in federal court:

> If the plaintiff has been forced to expend a great deal on an interpleader because of an irresponsible defendant other than the successful claimant, the equitable and economically fair course of action is to impose the excessive cost on the irresponsible and unsuccessful defendant. It is not fair to diminish the res to foot the excessive legal bill or to force third-party shareholders or policy owners of the insurer to pay the legal tab. *A defendant has the right to raise relevant issues, but not to force others to bear the cost of pressing points beyond reasonable exploration. Nor should a defendant unfairly clog an interpleader plaintiff's*

11

> *discharge unless there is a plausible basis for alleging that the plaintiff is not entitled to the genuine dispute doctrine.*

*Id.* at *44 (internal citations omitted) (emphasis added).

Here, all attorneys' fees incurred in connection with this Motion should be allocated to the Guarantors. There simply is no good faith basis for the Guarantors to assert that there is no genuine dispute over the Escrow Funds, much less that First American violated a fiduciary duty when it refused to disburse the Escrow Funds to the Guarantors. To the contrary, it is undisputed that prior to initiating this Interpleader Action, First American received letters from all defendants that included contrary instructions related to the disbursement of the Escrow Funds. Answer, ¶¶ 21, 27, 33, 35; Debtors' Answer, ¶¶ 19, 31; Lender's Answer, ¶ 29. There is no dispute that all defendants claim an interest in the Escrow Funds in their answers, crossclaims, and counterclaims. Guarantors' Answer, ¶¶ 48-49, 51-53, 59, Count I Prayer for Relief, Count II Prayer for Relief; Debtors' Answer, ¶ 26, Prayer for Relief ¶ a; Lender's Answer, ¶¶ 8, 83, 92, Prayer for Relief ¶ a. As such, there is no non-frivolous basis for the Guarantors to object to this Motion or to First American's discharge. Tellingly, none of the other defendants filed an objection. At most, the Guarantors should have reserved their right to challenge the amount of attorneys' fees sought by First American, as Parkview did. *See generally* Reservation of Rights.

Indeed, the Guarantors' conduct in response to the interpleader complaint is vexatious (as well as financially unsound).[6] First, the Guarantors objected to the hearing notice, but inexplicably would not agree to adjourn the hearing date, necessitating briefing and a hearing on the issue. *See Adjournment Objection and Order Granting Adjournment*. Further, in contrast to the Lender, who agreed to the relief requested in the Motion and reserved its rights on other issues, by filing

---

[6] While there is irony in the Guarantors' assertion that the Motion "causes needless time and expense to be incurred by the parties for no supportable basis" (Adjournment Objection, Page 2), there is no merit.

12

Guarantors' meritless Objection and counterclaims, Guarantors have necessitated this gratuitous briefing and have needlessly prolonged Stage I of this action. By filing this action, First American has provided Guarantors with an appropriate forum to litigate against the other claimants for their rights to the Escrow Funds, but instead of filing crossclaims against the other claimants, Guarantors opted to instead assert frivolous counterclaims against First American.

In light of Guarantors' vexatious tactics, the Court should exercise its inherent power to assess against the Guarantors all attorneys' fees First American has incurred in connection with this Motion. *See Septembertide Pub., B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 683 (2d Cir. 1989) ("[I]t was Septembertide's unreasonable litigation posture that prevented New Library from following the ordinary interpleader sequence of depositing the funds in court and then being dismissed from the suit… Septembertide's conduct justified the district court in taxing these costs and fees against it, rather than against the interpleader fund.").[7]

## CONCLUSION

For the foregoing reasons, and for the reasons asserted in the Motion and Memorandum, First American respectfully requests that the Court issue an order, *inter alia*, (i) authorizing First American to deposit the Interpleader Funds into the Registry of the Court; (ii) discharging First American from this action; (iii) assess against the Guarantors all attorneys' fees First American

---

[7] It is well recognized that "[t]here are four main sources of power for a court to remedy fees, costs, and expenses from bad actors rather than, or in addition to, a bad actor's normal share of reimbursement from the res. First, courts have "inherent power in order to do substantial justice to assess costs and attorney's fees against offending parties who act in bad faith." Second, under Federal Rule of Civil Procedure 16, courts may impose sanctions on parties or attorneys who fail to appear, participate in good faith, or comply with pretrial orders. Third, under Federal Rule of Civil Procedure 11, "reasonable attorney's fees and other expenses" may be granted for a party's efforts to "harass," "cause unnecessary delay," "needlessly increase the cost of litigation," or make frivolous legal or factual allegations. Fourth, in especially egregious circumstances where abusive attorney conduct is involved" 28 U.S.C. 1927 may also apply. Witte, *Managing Irresponsible Actors in Federal Interpleader Actions*, 50 Tort Trial & Ins. Prac. L.J. 1, at *44-45 (internal citations omitted).

13

has incurred in connection with this Motion; and (iv) granting such other and further relief as the Court deems just and proper.

Dated: February 9, 2026

**BENESCH, FRIEDLANDER,**
    **COPLAN & ARONOFF LLP**

/s/ *Jennifer R. Hoover*
Jennifer R. Hoover, Esq. (DE No. 5111)
Juan E. Martinez, Esq. (DE No. 6863)
1313 North Market Street, Suite 1201
Wilmington, DE 19801
Telephone: (302) 442-7006
Email: jhoover@beneschlaw.com
         jmartinez@beneschlaw.com

-and-

**DENTONS US LLP**

Lynn P. Harrison III, Esq. (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
Email: lynn.harrisoniii@dentons.com

Elizabeth T. Ferrick, Esq. (admitted *pro hac vice*)
101 South Hanley Road
Suite 600
St. Louis, Missouri 63105
Telephone: (314) 259-5910
Email: elizabeth.ferrick@dentons.com

*Counsel to First American Title Insurance Company*

**CERTIFICATE OF SERVICE**

I, Jennifer R. Hoover, Esq., hereby certify that the foregoing was filed and served on February 9, 2026 via CM/ECF on all parties registered to receive notice in this case.

                                                  */s/ Jennifer R. Hoover*
                                                  Jennifer R. Hoover (DE No. 5111)